# Chimicles & Tikellis LLP

## Attorneys At Law

# Firm Resume

HAVERFORD, PA
361 West Lancaster Avenue
Haverford, PA 19041
Voice: 610-642-8500
Toll Free: 866-399-2487
Fax: 610-649-3633

WILMINGTON, DE
P.O. Box 1035
One Rodney Square
Wilmington, DE 19899
Voice: 302-656-2500
Fax: 302-656-9053

# Contents

OUR ATTORNEYS

Partners

Nicholas E. Chimicles                    3
Pamela S. Tikellis                       8
James R. Malone, Jr.                     11
Michael D. Gottsch                       13
Robert J. Kriner, Jr.                    14
Steven A. Schwartz                       16
Kimberly M. Donaldson                    19

Of Counsel

Morris M. Shuster                        21
Denise Davis Schwartzman                 22
Anthony Allen Geyelin                    23
Candice L.H. Hegedus                     24

Associates

Fatema Burkey                            25
Benjamin F. Johns                        25
Kimberly Litman Kimmel                   26
Timothy N. Mathews                       27
Mary Katherine Meermans                  28
A. Zachary Naylor                        29
Joseph G. Sauder                         30
Daniel B. Scott                          32
Scott M. Tucker                          33

PRACTICE AREAS                           34

REPRESENTATIVE CASES                     37

# Our Attorneys-Partners

# Nicholas E. Chimicles



is senior partner and Chairman of the Firm's Executive Committee. Mr. Chimicles is a 1970 graduate of the University of Pennsylvania, where he received a Bachelor of Arts Degree with Honors. Mr. Chimicles graduated in 1973 from the University of Virginia School of Law, where he was a member of the Editorial Board of the University of Virginia Law Review and was the author of several published comments. While attending law school, he co-authored a course and study guide entitled "Student's Course Outline on Securities Regulation," published by the University of Virginia School of Law. Upon graduation from law school, Mr. Chimicles joined a major Philadelphia law firm where he practiced for eight years and specialized in litigation including complex commercial, antitrust and securities fraud cases and served as principal or assistant trial counsel in several matters.

Mr. Chimicles has actively prosecuted major complex litigation, antitrust, securities fraud and breach of fiduciary duty suits. Most recently, Mr. Chimicles was lead trial counsel for a Class of investors in a six-week jury trial of a securities fraud/breach of fiduciary duty case that resulted in a $185 million verdict. *In re Real Estate Associates Limited Partnerships Litigation*, No. CV 98-7035 DDP, was tried in the federal district court in Los Angeles before the Honorable Dean D. Pregerson. On November 15, 2002, the 10 member jury returned a unanimous verdict in favor of the Class (comprising investors in the eight REAL Partnerships) and against the REALs' managing general partner, National Partnership Investments Company ("NAPICO") and the four individual officers and directors of NAPICO. The jury awarded more than $25 million in damages against all five defendants on Count I, the Section 14(a), 1934 Act, proxy fraud claim and more than $67 million in damages against NAPICO on Count II for breach of fiduciary duty. On November 19, 2002, the jury returned a verdict of $92.5 million in punitive damages against NAPICO. This total verdict of $185 million was among the "Top 10 Verdicts of 2002," as reported by the National Law Journal (verdictsearch.com). The Court upheld in all respects the jury's verdict on liability as to both Count I and Count II, upheld in full the jury's award of $92.5 million in compensatory damages, upheld the Class's entitlement to punitive damages (but reduced those damages to $2.6 million based on the application of California law to NAPICO's financial condition), and awarded an additional $25 million in pre-judgment interest. Based on the Court's decisions on the post-trial motions, the judgment entered in favor of the Class on April 28, 2003 totaled over $120 million, $91 million on Count II and $30 million on Count I.

In other federal securities fraud action, he served as a lead counsel in the *Hercu-*

## Our Attorneys-Partners

*les Securities Litigation*, Civil Action No. 90-442 (RRM) (D. Del.) ($18 million recovery); *Scott Paper Securities Litigation*, Civil Action No. 90-6192 (E.D. Pa.) ($8 million recovery); *Sunrise Savings & Loan Securities Litigation*, MDL No. 655 (E.D. Pa.) ($15 million recovery); *Storage Technology Corp. Securities Litigation*, Master File No. 84-F-1981 (D. Colo.) ($18 million recovery); *In re Fiddler's Woods Bondholders Litigation*, Civil Action No. 83-2340 (E.D. Pa.), a bondholders' class action arising out of a default on a $33 million industrial development bond issue (recovery of more than $7 million for the Class); and *Charter Securities Litigation*, Civil Action No. 84-448 Civ-J-12 (M.D. Fla.) (recovery of $7.75 million); *Continental Illinois Securities Litigation*, Civil Action No. 82 C 4712 (N.D. Ill.) involving a twenty-week jury trial conducted by Mr. Chimicles that concluded in July, 1987 (the Class ultimately recovered nearly $40 million).

Mr. Chimicles has been a principal counsel in several major litigations that have resulted in precedent-breaking recoveries for classes of limited partners, in addition to the *Real Estate Associates Limited Partnership Litigation*, discussed above, Mr. Chimicles was a member of the Executive Committee in the *Prudential Limited Partnerships Litigation*, MDL 1005 (S.D.N.Y.), where the Class recovered $130 million in settlement from Prudential, and other defendants. Mr. Chimicles was lead counsel in the *PaineWebber Limited Partnerships Litigation*, 94 Civ. 8547 (S.D.N.Y.) in which a $200 million settlement was approved in mid-1997. As co-lead counsel in several litigations involving ML-Lee Acquisition Fund, L.P., ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. (C.A. No. 92-60, 93-494, 94-422 and 95-724) that were prosecuted in the Delaware Federal District Court. Mr. Chimicles (together with partner Pamela Tikellis and financial specialist Kathleen Chimicles) negotiated settlements that resulted in more than $30 million in cash and other benefits to be paid or made available to investors in the various funds. In litigation involving PLM Equipment Growth and Income Funds IV-VII, Mr. Chimicles (together with financial specialist Kathleen Chimicles) was instrumental in negotiating a settlement reached in 2001 that provides both monetary and equitable relief for the limited partners. In February 2002, the Superior Court of Marin County, California, approved the settlement of a case in which Mr. Chimicles was co-lead counsel, involving five public partnerships sponsored by Phoenix Leasing Incorporated and its affiliates and resulting in entry of a judgment in the amount of $21 million. (*In Re Phoenix Leasing Incorporated Limited Partnership Litigation*, Superior Court of the State of California, County of Marin, Case No. 173739).

Mr. Chimicles has represented limited partners who successfully have sought the liquidation of assets or the reorganization of the partnership. For example, in *In re the Mendik Real Estate Limited Partnership*, N.Y. Supreme Ct. No. 97-600185, Mr. Chimicles, as co-lead counsel, negotiated a settlement which provided for the prompt sale of more than $100 million of the partnership's real estate assets. Additionally, as co-lead counsel, Mr. Chimicles, together with partner Pamela Tikellis, negotiated the settlement of a suit filed against the general partners of Aetna Real

## Our Attorneys-Partners

*Nicholas E. Chimicles cont.*

Estate Associates, L.P., providing for the orderly liquidation of the more than $200 million in that partnership's real estate holdings, the reduction of general partner fees and the payment of a special cash distribution to the limited partners. (*Aetna Real Estate Associates, L.P., Area GP Corporation and Aetna/Area Corporation*, Delaware Chancery Court, New Castle County, Civil Action Nos. 15386-NC and 15393-NC).

Mr. Chimicles has also represented stockholders in suits arising from proposed mergers, acquisitions and hostile takeovers. For example, in *Garlands, Inc. Profit Sharing Plan et al. v. The Pillsbury Company, a Delaware corporation, et al*, State of Minnesota, County of Hennepin, Fourth Judicial District, Court File No. 88-17834, Mr. Chimicles was a lead counsel in a suit brought to compel Pillsbury's board of directors to negotiate in good faith with Grand Metropolitan and persuaded the court to enjoin a proposed spin-off of Burger King. Additionally, Mr. Chimicles has represented shareholders in obtaining enhanced consideration for their stock in takeovers or going private transactions. *Randee L. Shantzer, et al. v. Charter Medical Corp., et al.*, Court of Chancery, State of Delaware, New Castle County, Consolidated Civil Action No. 9530; *In re Interstate Bakeries Corporation Shareholders Litigation*, Court of Chancery, State of Delaware, New Castle County, Consolidate Civil Action No. 9263.

In the antitrust field, Mr. Chimicles has acted as a lead and co-lead counsel in numerous class suits. He was co-lead counsel in the *Travel Agency Commission Antitrust Litigation*, (D. Minn.) in which the Firm represented the American Society of Travel Agents, an Alexandria, Virginia-based association that represents more than 9,000 travel agencies nationwide and worldwide in a suit against seven airlines for Section 1 (Sherman Act) violations involving commission cuts. The case was settled in late 1996 for more than $80 million. Mr. Chimicles was also co-lead counsel in the *Insurance Antitrust Litigation*, Case No. C-88-1688 (N.D. Calif.) which charged commercial general liability insurers, domestic and London-based reinsurers and an insurance service organization with violations of the Sherman and Clayton Acts. The case was settled after an earlier dismissal was reversed by the Ninth Circuit, a decision affirmed by the U.S. Supreme Court. *In re Insurance Antitrust Litigation*, 938 F.2d 919 (9th Cir. 1991); *aff'd sub nom. Hartford Fire Insurance Co. v. California*, 113 S.Ct. 2891 (1993).

As an appellate advocate, Mr. Chimicles has handled cases which have protected the rights of victims of securities fraud in bankruptcy proceedings. In cases that he successfully argued before the Courts of Appeals for the Tenth and Eleventh Circuits, due process and notice principles were extended to protect securities purchasers filing claims in bankruptcy cases, *In re Standard Metals Corp.*, 817 F.2d 625 (10th Cir.), *rev'd in part on rehearing*, 839 F.2d 1383 (1987), and it was established that class proofs of claim are allowable in bankruptcy proceedings, *In re the Charter Company*, 876 F.2d 866 (11th Cir. 1989).

## Our Attorneys-Partners

Mr. Chimicles has also actively prosecuted suits involving public utilities constructing nuclear plants. He was lead counsel in the *Philadelphia Electric Company Securities Litigation*, Master File No. 85-1878 (E.D. Pa.) and a lead counsel in the *Consumers Power Company Derivative Litigation*, Master File No. 84-CV-3788 AA (E.D. Mich.). Mr. Chimicles was co-lead counsel in the stockholder derivative suit arising from mismanagement claims against former officers of Philadelphia Electric Company involved in the closing of the Peach Bottom Nuclear Plant, a suit which Mr. Chimicles was authorized to bring by a PECO board of directors resolution. *In re Philadelphia Electric Company Derivative Litigation*, Case No. 7090, Court of Common Pleas, Philadelphia County, PA. That case resulted in a recovery of $35 million for the utility company in November 1990.

Mr. Chimicles was also a co-lead counsel in a major environmental litigation, *Ashland Oil Spill Litigation*, Master File M-14670 (W.D. Pa.), involving the claims of residents and businesses for damage arising from the largest inland waterway oil spill in history that occurred on January 2, 1988 in Pittsburgh. In 1990, the case was settled upon creation of a claims fund of over $30 million for the class. This and similar environmental suits in which the Firm was involved were the subject of a program, "Toxic Torts May Not Be Hazardous To Your Health: A Lawyer's Guide to Health Survival in Mass Tort Litigation," in which Mr. Chimicles was a principal speaker at this program which was held at the American Bar Association's 1989 Convention in Honolulu.

Mr. Chimicles has acted as special counsel for the City of Philadelphia and the Philadelphia Housing Authority in an action seeking to hold lead pigment manufacturers liable for federally mandated abatement of lead paint in properties owned, managed or operated by the plaintiffs. *City of Philadelphia, et al. v. Lead Industries Ass'n, et al.*, Civil Action No. 90-7064 (E.D. Pa.) and No. 92-1420 (3rd Cir.).

Mr. Chimicles is admitted to practice in the Supreme Court of the United States, numerous federal district and appellate courts, as well as the Supreme Court of Pennsylvania. He is a member of the American Bar Association (Sections of Litigation; Antitrust; and Corporation, Banking and Business Law), the Pennsylvania Bar Association, and the Philadelphia Bar Association (Federal Courts Committee and various subcommittees). Mr. Chimicles has lectured frequently on securities law at the Rutgers University Law School Camden, the Wharton School Graduate Division of the University of Pennsylvania, New York University, the University of Virginia, and for Prentice Hall Law and Business Publications. Mr. Chimicles has addressed numerous law and accounting conferences, including ALI-ABA, Practising Law Institute, the Pennsylvania Bond Counsel Association and the Pennsylvania Institute of Public Accountants, and has also frequently appeared as a speaker in numerous state and national bar association sponsored seminars on topics involving federal securities laws, RICO, class actions, hostile corporate takeovers, and professional ethics. Mr. Chimicles also is a contributor to and member of the advisory boards of various professional publications involving the securities law field. Mr. Chimicles is

# Our Attorneys-Partners

*Nicholas E. Chimicles cont.*

a member of the Board of Overseers of the School of Arts and Sciences of the University of Pennsylvania. He is the past President of the National Association of Securities and Commercial Law Attorneys. Mr. Chimicles is the author of numerous articles including an article co-authored with the Firm's Financial Specialist, Kathleen P. Chimicles nee Balon, published in the *New York Law Journal*, August 26, 1993, entitled "A Realistic Assessment Of The Need For Securities Class Action Litigation Reform;" and *The Securities Case: The Plaintiff's Perspective*, co-authored with Ira N. Richards, published in the Practical Litigator, Vol. 6, No. 6 (Nov. 1995).

## Our Attorneys-Partners

# Pamela S. Tikellis



is a name partner and a member of the Firm's Executive Committee. Ms. Tikellis was born in Lawrence, Kansas and is a 1974 graduate of Manhattanville College, where she received a Bachelor of Arts, and a 1976 graduate of the Graduate Faculty of the New School for Social Research, where she received a Master's in Psychology. Ms. Tikellis graduated in 1982 from Widener University School of Law, where she was the Managing Editor of the Delaware Journal of Corporate Law. Upon graduating from law school, Ms. Tikellis served as a law clerk in the nationally recognized Court of Chancery in Wilmington, Delaware. Before joining the Firm, Ms. Tikellis engaged in significant shareholder litigation practice. In 1987, she opened the Delaware office of the Firm, where she is a resident and has continued to specialize in litigation, including complex transactional cases, both derivative and class, limited partnership litigation, antitrust and securities fraud litigation. She is AV rated by Martindale Hubbell.

Ms. Tikellis has prosecuted class and derivative suits of national importance for over 20 years. Notably, Ms. Tikellis has represented stockholders in numerous suits, primarily in the Court of Chancery in Wilmington, Delaware arising out of mergers and acquisitions and hostile takeovers. Ms. Tikellis served as liaison counsel in the litigation arising out of the Paramount/Viacom merger. She and her co-counsel represented Paramount stockholders in the successful challenge to the merger and were instrumental in eliciting the highest possible value to the stockholders. (Court of Chancery Civil Action No. 13117; Delaware Supreme Court No. 427, 1993). Similarly, Ms. Tikellis served as lead counsel in *Home Shopping Network Shareholders and Securities Litigation*, (C.A. No. 93-406; Court of Chancery, Cons. C.A. No. 12868; Delaware District Court C.A. No. 93-336 (MMS)) obtaining over $15 million in settlement funds for the class of Home Shopping stockholders. More recently, as lead counsel, she actively prosecuted litigation on behalf of Cyprus Amax stockholders arising out of 0 proposed merger with Asarco and helped achieve a merger for Cyprus Amax with Phelps Dodge for greater consideration than was offered by Asarco. (*In re Cyprus Amax Shareholders Litigation*, Court of Chancery, C.A. No. 17383-NC). Ms. Tikellis also acted as one of lead counsel representing a Class of stockholders of First Interstate Bancorp prior to the acquisition of First Interstate by Wells Fargo & Co. The litigation resulted in Wells Fargo's acquisition of First   Interstate for a substantially greater consideration than offered by the First Bank Systems in a battle for the company. (*First Interstate Bancorp Shareholders Litigation*, Cons. C.A. No. 14623).

Ms. Tikellis has actively prosecuted derivative litigation on behalf of companies

## Our Attorneys-Partners

and their stockholders. *Sanders v. Wang*, DE Court of Chancery C.A. No. 16640, was a derivative suit brought on behalf of Computer Associates International, Inc. The suit alleged that the board exceeded its authority under the KESOP by awarding 9.5 million excess shares to the participants. Ms. Tikellis was instrumental in achieving the return from the defendants of over $50 million in stock issued in violation of the Company's plan. This represented a recovery of substantially all of the relief sought by Plaintiffs. Reported decisions include 1998 Del. Ch. LEXIS 207 (Del. Ch. Nov 19, 1998); 1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999); 2001 Del. Ch. LEXIS 82 (Del. Ch. May 24, 2001); 2001 Del. LEXIS 387 (Del. Aug. 22, 2001); 2001 Del. Ch. LEXIS 121 (Del. Ch. Sept. 18, 2001).

In the limited partnership arena, Ms. Tikellis along with partner Nicholas Chimicles has actively and successfully prosecuted several cases including *ML Lee Acquisition Fund L.P.* and *ML-Lee Acquisition Fund II L.P.* and *ML-Lee Acquisition Fund* (Retirement Accounts), (C.A. Nos. 92-60, 93-494, 94-422, and 95-724). The litigation resulted in a negotiated settlement exceeding $30 million in cash and other benefits made available to investors in these funds. In another limited partnership matter, Ms. Tikellis along with partner Nicholas Chimicles was successful in representing limited partners of Aetna Real Estate Associates L.P. This settlement provided for the orderly liquidation of more than $200 million in the partnership's real estate holdings and reduction of general partners' fees and the payment of a special cash distribution to the limited partners (*Aetna Real Estate Associates, L.P.,* Delaware Court of Chancery, C. A. Nos. 15386-NC and 15393-NC).

On the Appellate level, Ms. Tikellis has successfully handled cases before the Delaware Supreme Court resulting in victories for the shareholders and investors. Within the years of 2002 and 2003, Ms. Tikellis argued successfully three appeals in the Delaware Supreme Court. She argued *en banc* to the Delaware Supreme Court in *Saito v. McKesson Corporation*, Civil Action No. 18553. This books and records case was tried by Ms. Tikellis. While the Court of Chancery permitted production of certain documents, the Court imposed severe restrictions. The limitations imposed by the Court of Chancery were appealed successfully by the Plaintiff. Importantly, the documents ultimately received in the books and records *Saito* case resulted in the filing of an amended derivative complaint in the underlying case against McKesson and its directors. The derivative suit was recently settled and the settlement won approval by the Court of Chancery. The settlement provides for a $30 million payment to the Company by the insurance carriers for the directors and the implementation of important corporate governance reforms.

Most recently, in a case argued by Ms. Tikellis, the Delaware Supreme Court overruled the Court of Chancery's determination that accorded the presumption of the business judgment rule to a board's merger recommendation even though 5 of the 7 directors were interested in the transaction. The Supreme Court held that the mere existence of a purportedly disinterested special committee (consisting of the other two board members) did not shield the remaining 5 members from liability. *Krasner*

## Our Attorneys-Partners

*Pamela S. Tikellis cont.*

*v. Moffett*, 826 A.2d 277 (Del. June 18, 2003). Importantly, the Court held that a full record needed to be developed to determine whether the entire fairness standard of review or the business judgment standard of review would apply in the case. The decision has broken new ground in the field of corporate litigation in Delaware. A settlement providing for a $17.5 million fund for the Class was approved by the Court of Chancery on April 20, 2006.

In a case argued by Ms. Tikellis, the Delaware Supreme Court overruled the Court of Chancery's determination that accorded the presumption of the business judgment rule to a board's merger recommendation even though 5 of the 7 directors were interested in the transaction. The Supreme Court held that the mere existence of a purportedly disinterested special committee (consisting of the other two board members) did not shield the remaining 5 members from liability. Krasner v. Moffett, 826 A.2d 277 (Del. June 18, 2003). Importantly, the Court held that a full record needed to be developed to determine whether the entire fairness standard of review or the business judgment standard of review would apply in the case. The decision has broken new ground in the field of corporate litigation in Delaware. A settlement providing for a $17.5 million fund for the Class was approved by the Court of Chancery on April 20, 2006.  Most recently, Ms. Tikellis has been appointed Interim Co-Lead Counsel in an action challenging the $21 billion dollar management-led leveraged buyout of Kinder Morgan, Inc.  In re Kinder Morgan, Inc. Shareholders Litigation, Consol. Case No. 06 C 801 (Kan. Dist. Ct.)

Ms. Tikellis is admitted to practice before all Courts in the State of Delaware and the United States Court of Appeals for the Third Circuit. She is a member of the Delaware Bar Association and the American Bar Association (Litigation and Business Sections). Ms. Tikellis has served as a member of the Board of Bar Examiners of the Supreme Court of the State of Delaware since 1994. She also served as the Chair of the Delaware Bar Association Ethics Committee from 1989 to 1992, and is a director of the Historical Society of the Court of Chancery for the State of Delaware. In addition, Ms. Tikellis is President of the Delaware chapter of the International Network of Boutique Law Firms.

Ms. Tikellis has addressed numerous conferences including ALI-ABA, The Practising Law Institute, the American Bar Association, the Delaware Bar Association, and the Pennsylvania Bar Institution lecturing on corporate governance, merger and acquisitions, hostile takeovers, defense mechanisms and professional ethics. She has participated as a commentator on corporate governance as part of the Institute for Law and Economic Policy's program on Corporate Accountability and recently addressed institutional investors at the OPAL Conference regarding the various tools available in Delaware to protect shareholder rights.  Ms. Tikellis was a member of the faculty of the 7th Annual Colorado Business Law Institute that was held in Vail, Colorado on August 10-12, 2006.  She participated on a panel featuring the Honorable Phillip S. Figa of the United States District Court for the District of Colorado and the Honorable Leland P. Anderson of the Colorado State District Court addressing the topic of fiduciary duties.

Chimicles

## Our Attorneys-Partners



# James R. Malone, Jr.

is a partner in the law firm of Chimicles & Tikellis.  Mr. Malone is admitted to practice before the Supreme Court of Pennsylvania, the Supreme Court of the United States, the United States Courts of Appeal for the First, Third, Fifth, Sixth, Seventh, Ninth and D.C. Circuits and the United States District Courts for the Eastern District of Pennsylvania, the Northern District of California, and the Eastern District of Michigan.  Mr. Malone is a 1984 *cum laude* graduate of the Villanova University School of Law where he was a staff member on the Villanova Law Review and was elected to the Order of the Coif.  Upon graduation from law school, Mr. Malone was associated with a major Philadelphia law firm where he concentrated in bankruptcy and commercial litigation.

Mr. Malone has substantial experience in the securities field.  With his former partner, Oliver Burt, he served as co-lead counsel in *Hoexter v. Simmons*, Civ. No. 89-1069-PHX-RCB (D. Ariz.) in which a $10.8 million settlement was achieved.  In *Serabian v. Amoskeag Bank*, 24 F.3d 357 (1st Cir. 1994), Mr. Malone successfully argued for the reversal of a district court order dismissing a securities complaint in a case involving deceptive financial reporting by a New Hampshire bank holding company.  Mr. Malone served as co-lead counsel in *Winsor v. Holgerson*, No. 89-2507 (PBS) (D. Mass.), a case involving the accounting practices of a failed savings bank, in which a $12.5 million settlement was reached.  Mr. Malone has been active in cases involving public offerings of limited partnerships; he served as lead counsel in *In re Jiffy Lube Insured Income Partners Securities Litigation*. Civil Action No. 10828 (Del. Ch.).  The settlement resulted in limited partnership investors receiving the full amount of their initial investment.  He has also been active in transactional cases, such as limited partnership roll-ups, and in shareholder derivative actions.

In the area of consumer litigation, Mr. Malone was a member of the Executive Committee in *In re Advanta Credit Card Terms Litigation*, MDL Docket No. 1233, a consumer case brought on behalf of credit card holders.  The case resulted in a settlement of $ 7.25 million dollars that also provided for substantial reductions in rates for credit card holders.  Along with his partner, Michael Gottsch, Mr. Malone was active in *Flannick v. First Union Home Equity Bank, N.A.,* No. 98-6080, an action brought under the National Bank Act against a home equity lender, which resulted in a substantial recovery.

In the field of ERISA litigation, Mr. Malone served as co-lead counsel in *In re Unisys Savings Plan Litigation*, 74 F.3d 420 (3d Cir. 1996),  in which he successfully argued for the reversal of a district court order granting summary judgment in an ERISA class action arising out of the failure of the Executive Life Insurance Company.  The

## Our Attorneys-Partners

*James R. Malone , Jr. cont.*

case was the first appellate decision addressing Section 404(c) of ERISA and the liability of fiduciaries in certain individual account plans. Mr. Malone served as counsel in *Corcoran v. Bell Atlantic Corporation*, 97-cv-510 (E.D. Pa.) an ERISA class action challenging the conversion of a defined benefit pension plan into a cash balance plan. The case involved issues relating to the calculation of accrued benefits under ERISA's vesting standards and the elimination of early retirement benefits. He is currently active in *In re Lucent Death Benefits ERISA Litigation,* No. 2:03-5017(WGB)(D.N.J.), which challenges Lucent's elimination of spousal death benefits for retirees that were funded as part of a defined benefit pension plan, and in *Charles v. Pepco Holdings, Inc.,* No. 05-702-SLR (D. Del.), a class action challenging the conversion of a traditional pension plan to a cash balance plan.

Mr. Malone has been involved in a variety of different antitrust actions in both state and federal court. He was active in indirect purchaser actions arising out of price-fixing in the market for sorbates pending in Tennessee and Wisconsin; the resolution of these cases resulted in substantial recoveries by indirect purchasers. Mr. Malone was also active in *In re Microsoft Antitrust Litig.,* MDL No. 1332, and in *In re Buspirone Antitrust Litigation*, MDL No. 1413, where he served in a variety of roles. Mr. Malone is currently active in *In re Plavix Indirect Purchaser Antitrust Litigation*, No. 06-226 (S.D. Ohio), and in *In re Intel Corp. Microprocessor Litigation*, MDL No. 1717 (D. Del.), among others.

Mr. Malone served as co-lead counsel in *Gerson v. Pennsylvania Life & Health Insurance Guaranty Association*, April Term 1994, No. 3468, an insurance insolvency class action brought under the Pennsylvania Life & Health Insurance Guaranty Association Act. In June 1998, the Philadelphia Court of Common Pleas granted summary judgment in favor of the plaintiff class in the amount of $16.5 million dollars. Mr. Malone successfully argued the resulting appeal and successfully opposed the defendant's petition for allocatur before the Supreme Court of Pennsylvania.

Mr. Malone is a member of The Philadelphia Bar Association, and is a trustee of the Philadelphia Bar Foundation, which raises funds for grants to legal services organizations in the metropolitan Philadelphia area.

# Our Attorneys-Partners

## Michael D. Gottsch

is a partner in the Firm's Haverford office. Mr. Gottsch is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey and the United States Courts of Appeals for the Third and Ninth Circuits. He is a graduate of Temple University School of Law (J.D. 1983) and Marquette University (B.S. 1977). From 1986 to 1987 he served as a Law Clerk to the Honorable Joseph H. Rodriguez, Judge of the United States District Court for the District of New Jersey.

Mr. Gottsch has concentrated his practice in the fields of Antitrust and Consumer Protection law. As a partner in the firm, recent cases in which he has served in the role of lead or co-lead counsel are: *McParland v. Keystone Health Plan Central*, Civil Action No. 98-SU-00770-01 (Common Pleas Court York County) (case successfully resolved on behalf of a class of approximately 15,000 senior citizens who enrolled in Keystone's "Senior Blue" program); *Flannick v. First Union Home Equity Bank, N.A.*, Civil Action No. 98-CV-6080 (E.D. Pa.) (case successfully resolved on behalf of a class of approximately 32,000 home equity borrowers from First Union Home Equity Bank); and *GFS of Madison, Inc. v. Rhone-Poulenc, S.A.*, Case No. 00-CV-1143 (Cir. Ct. Dane County, Wis.) ("Methionine antitrust litigation") (action pending). Mr. Gottsch has assisted in the firm's pro bono efforts in the area of immigration asylum appeals. He is the treasurer of the Committee to Support the Antitrust Laws ("COSAL"), a Washington, D.C. based organization committed to supporting diligent enforcement of the federal and state antitrust laws. In June 2006, Law & Politics and the publishers of Philadelphia Magazine named Mr. Gottsch a Pennsylvania Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Pennsylvania, as chosen by their peers and through the independent research of Law & Politics.

# Our Attorneys-Partners



# Robert J. Kriner, Jr.

is a Partner in the Firm's Wilmington, Delaware office. He is admitted to practice before the Supreme Court of Delaware and the United States District Court for the District of Delaware. Mr. Kriner is a 1983 graduate of the University of Delaware with a degree in chemistry, and a 1988 graduate of the Delaware Law School of Widener University, where he was managing editor of *The Delaware Journal of Corporate Law.* From 1988 to 1989, Mr. Kriner served as law clerk to the Honorable James L. Latchum, Senior Judge of the United States District Court for the District of Delaware. Following his clerkship and until joining the Firm, Mr. Kriner was an associate with a major Wilmington, Delaware law firm, practicing in the areas of corporate and general litigation.

Mr. Kriner's practice focuses primarily on business litigation on behalf of investors. Mr. Kriner has prosecuted actions, including class and derivative actions, on behalf of stockholders, limited partners and other investors with claims relating to mergers and acquisitions, hostile acquisition proposals, the enforcement of fiduciary duties, the election of directors, and the enforcement of statutory rights of investors such as the right to inspect books and records. Mr. Kriner prosecuted the *Home Shopping Network, McKesson* and *Moffett* matters along with Partner Pamela Tikellis. In addition, Mr. Kriner represented holders of Series B stock of Litton Industries in *Myers and Koehler v. Litton Industries, Inc., et al.,* C.A. No. 18947-NC in connection with the short form merger cash out of the Series B stock in 2001. The short form merger price was $35 per share. Mr. Kriner negotiated a settlement of the claims which provided an additional $1.84 per share to the Series B holders.

Mr. Kriner also was on the trial team in *Gelfman, et al. v. Weeden Investors, L.P., et al.,* C.A. No. 18519-NC, which was tried in the Delaware Court of Chancery and resulted in a judgment in favor of the limited partners represented by Mr. Kriner. In *Weeden,* the limited partners represented by Mr. Kriner asserted that dilution and a cash out of their interests at a book value of $4.20 per Unit was unfair and in violation of the Partnership Agreement and the General Partner's fiduciary duties. After trial, the Court agreed, concluding the value of the interests was $20.92 per Unit, 4.98 times that paid on the cash out plan, and awarded damages to the limited partners.

Mr. Kriner represented the public limited partners in *I.G. Holdings, Inc., et al. v. Hallwood Realty LLC, et al.,* C.A. No. 20283-NC, in an action challenging the defensive response of the General Partner of Hallwood Partners LP to a premium tender offer by an affiliate of Carl Icahn in 2003. Mr. Kriner led the litigation on behalf of

## *Our Attorneys-Partners*

*Robert J. Kriner, Jr. cont.*

the public limited partners through expedited injunction proceedings and an expedited trial which led to the General Partner's agreement to auction and sell the Partnership. The sale of the Partnership resulted in a per unit price of $136.70 to the limited partners, as compared to the trading range for the Units of $60 - $80 prior to the litigation.

Recently, Mr. Kriner was one of the co-lead counsel in actions brought on behalf of the public stockholders of Chiron Corporation challenging the buyout of Chiron by its 42% parent, Novartis AG. Novartis initially proposed a buyout at $40 per share and thereafter entered into a merger agreement to acquire Chiron for $45 per share. Mr. Kriner and his co-counsel moved preliminarily to enjoin the merger pending a proper process to maximize value and full disclosure to the stockholders. After completion of briefing on the injunction motion, an agreement in principle was reached for a settlement of this litigation which includes, among other things, an increase in the merger price to $48 per share, or an aggregate increase of over $330 million for the public stockholders.

Mr. Kriner is an associate member of the Board of Bar Examiners of the Supreme Court of the State of Delaware.

## Our Attorneys-Partners



# Steven A. Schwartz

a Partner in the Firm's Haverford office, is admitted to practice before the United States Supreme Court, the Supreme Court of Pennsylvania, the United States District Courts for the Eastern and Western Districts of Pennsylvania and the Eastern District of Michigan, and the United States Court of Appeals for the Third Circuit. He is a graduate of the Duke University School of Law (J.D. 1987) where he served as a senior editor of *Law & Contemporary Problems*. He is a 1984 *cum laude* graduate of the University of Pennsylvania, where he received a B.A. in political science. Mr. Schwartz previously practiced at Schnader, Harrison, Segal & Lewis, LLP, a major Philadelphia firm, concentrating in complex civil litigation.

Mr. Schwartz has actively prosecuted complex class actions in a wide variety of contexts. Most recently, he served as co-lead counsel for a certified national class of employees of Siemens Medical Solutions whose 1998 Incentive Compensation was retroactively reduced by 30% by Siemens. The Philadelphia Court of Common Pleas granted Plaintiffs' motion for summary judgment as to liability, and a few days before trial was scheduled to begin, Siemens agreed to pay Class members a net recovery of the full amount that their incentive compensation was reduced (approximately $10.1 million), and pay all counsel fees and expenses in addition to the Class members' recovery.

Similarly, in connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, Mr. Schwartz represents various Health and Welfare Funds (including the Pennsylvania Employees Benefit Trust Fund, the Philadelphia Firefighters Union, and the American Federation of State, County and Municipal Workers District Council 47) and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this is the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties recently reached a settlement in which Bayer agreed to pay class members a net recovery that approximated the maximum damages (including pre-judgment interest) suffered by class members.

In the securities litigation field, as lead or co-lead counsel, Mr. Schwartz has obtained significant recoveries for defrauded investors. In *In re Coin Fund Litigation*, (Superior Court of the State of California for the County of Los Angeles), Mr.

# Our Attorneys-Partners

*Steven A. Schwartz cont.*

Schwartz served as plaintiffs' co-lead counsel and successfully obtained a settlement in excess of $35 million on behalf of limited partners, which represented a 100% net recovery of their initial investments. Mr. Schwartz also served as Plaintiffs co-lead counsel in *In re Veritas Software Corp. Derivative Litigation* (Superior Court of the State of California for the County of Santa Clara). In early 2005, the Court approved a settlement in which Veritas agreed to extensive corporate governance changes, including requiring that 75% of the members of Veritas' Board of Directors would be independent directors, and that all reporting 16b officers and directors of the Company would be prohibited from engaging in any sales of Veritas' stock except pursuant to a newly-enacted 10b5- 1 Trading Plan. Mr. Schwartz currently serves as Plaintiffs' co-lead counsel in the *Pennexx Securities Litigation*, (E.D. Pa.) and liaison counsel in *In re DVI Securities Litigation*, (E.D. Pa.).

In the consumer protection field, Mr. Schwartz served as plaintiffs' co-lead counsel in *Wolens, et al. v. American Airlines, Inc.* In that class action, plaintiffs alleged that American Airlines breached its contracts with members of its AAdvantage frequent flyer program when it retroactively increased the number of frequent flyer miles needed to claim certain frequent flyer miles travel awards. In a landmark decision, the United States Supreme Court held that plaintiffs' claims were not preempted by the Federal Aviation Act. 513 U.S. 219 (1995). The parties ultimately reached a settlement in which American agreed to provide Class members with mileage certificates that represent, for practical purposes, the full extent of class members' alleged damages, which the Court valued at between $ 95.6 million to $141.6 million. Mr. Schwartz also represented a national Class of owners of wood clad doors and windows manufactured by Marvin Windows that prematurely rotted due to a defective wood preservative. (Minn. 4th Judicial Dist.). Even though the windows were between 12 and 16 years old, the parties reached a national settlement providing Class members with the opportunity to obtain replacement windows with minimum net discounts of between 45 % and 58 %.

In the environmental field, Mr. Schwartz played a significant role as part of a large team of plaintiffs' counsel who prosecuted the claims of fisherman, property owners, and Native Americans who were injured as a result of the Exxon Valdez oil spill. The trial of that case resulted in a jury verdict in excess of $5.3 billion. Appellate proceedings in the 9th Circuit Court of Appeals are still ongoing.

Mr. Schwartz has also developed an expertise in representing the interests of providers of medical services whose bills have been denied for payment by insurers. Mr. Schwartz represented a certified class of Pennsylvania physicians and chiropractors who were not paid by Nationwide Mutual Insurance Company for physical therapy/physical medicine services provided to its insureds. Nationwide agreed to pay Class members approximately 130% of their bills. Mr. Schwartz is currently representing certified classes of medical providers seeking interest for overdue bills for treatment provided to insureds of SEPTA and Progressive Insurance Company.

## Our Attorneys-Partners

*Steven A. Schwartz cont.*

In the product liability field, Mr. Schwartz served as a member of the Plaintiffs' Steering Committee for medical monitoring claims in *In re Pennsylvania Diet Drugs Litigation*, (Phila. C.C.P.). To settle that case, American Home Products agreed to pay for an extensive medical monitoring program for all Pennsylvania residents who ingested fenfluramine and dexfenfloramine, the "fen" of the "fen phen" diet drug combination.

# Our Attorneys-Partners

## Kimberly M. Donaldson



is a Partner in the Firm's Haverford office. Ms. Donaldson concentrates her practice on the prosecution of securities fraud class action litigation, shareholder derivative actions and breach of fiduciary duty class action lawsuits. She is also a member of the Firm's Client Development Group and works closely with the Firm's institutional clients.

Ms. Donaldson is a 1999 *cum laude* graduate of Villanova University School of Law and is a 1996 graduate of Boston University, where she received a B.A. in Political Science, and interned with the Massachusetts Office of the Attorney General, Public Protection Bureau. Ms. Donaldson is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, and various Federal Appellate and District Courts. Ms. Donaldson's pro bono activities include serving as a volunteer attorney with the Support Center for Child Advocates, a Philadelphia-based, nonprofit organization that provides legal and social services to abused and neglected children.

In 2006, Law & Politics and the publishers of Philadelphia Magazine included Ms. Donaldson as a Pennsylvania Rising Star, as listed in the "Pennsylvania Rising Stars Super Lawyers" publication. Only 2.5 percent of the total lawyers in Pennsylvania are listed in *Rising Stars*.

Also, together with the Firm's Partners, Ms. Donaldson has assisted, or is currently assisting, in the prosecution of several federal securities fraud cases, breach of fiduciary duty suits and corporate derivative actions, including the following:

*Wells Real Estate Investment Trust Inc. (Wells REIT),* Case No. 07-cv-637 (USDC D.MD.), The Firm filed this class action in 2007 asserting federal securities law claims under the 1933 Securities Act involving a $4.0 Billion real estate investment trust whose stock is not listed on a national stock exchange. This pending action alleges that the Company and its officers and directors violated the federal securities laws and breached their fiduciary duties by entering into and presenting for a vote by Wells REIT shareholders a Merger between Wells REIT and its affiliate whereby the affiliates would improperly receive $175 million worth of consideration.

*CNL Hotels & Resorts Inc. Federal Securities Litigation*, Case No. 04-cv-1231 (M.D. Fla.). The Firm is lead trial counsel in this settled action filed in 2004 asserting federal securities law claims under the 1933 Securities Act involving a $3.0 Billion real estate investment trust whose stock is not listed on a national stock exchange. The Litigation was settled by: (1) the establishment of a $35,000,000 Cash Settlement Fund for the benefit of the Purchaser Class; and, (2) by CNL entering into revised agreements in connection with a proposed Merger between CNL and its affiliate which Plaintiffs estimate reduced the amount to have been paid by CNL

## Our Attorneys-Partners

*Kimberly M. Donaldson cont.*

and its stockholders in connection with the merger by over $225 Million. On August 1, 2006, the Federal District Court in Orlando, Florida granted final approval of the Settlement of the CNL Litigation, noting that "Plaintiffs' counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result." The Court also concluded that, "a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."

*In re Real Estate Associates Limited Partnerships Litigation*, No. CV 98-7035 DDP (CD. Cal.). The Firm was Lead Trial Counsel in this class action asserting federal securities law claims and claims for state law breaches of fiduciary duty. As the principal trial assistant to Mr. Chimicles, Ms. Donaldson was an integral member of the trial team that obtained the *first* plaintiffs' jury verdict in a federal securities fraud/breach of fiduciary duty lawsuit tried to a jury in the past ten years. The total verdict of $185 million (including $92.5 million in punitive damages) was among the "Top 10" Verdicts of 2002 and stands as the *first* and *largest jury verdict* in favor of plaintiffs in a case brought under the federal securities laws since their amendment in 1995. The *Real Estate Associates* judgment was settled by an agreement approved by the Court in November 2003 for $83 million, which represented *full recovery* for the Class (and an amount in excess of the damages calculated by Plaintiffs' expert). Please refer to Mr. Chimicles' bio for additional information.

*In re Discovery Laboratories Securities Litigation*, No. 06-1820 (E.D. Pa). The Firm is Lead Counsel in this pending securities class action brought on behalf of shareholders who purchased common stock of Discovery Labs during the class period. Discovery Labs is a development stage biotechnology company, which is focused upon proprietary surfactant technology.

*Lewis, et al. v. CNL Income Funds, et al*, District Court of Dallas County, Texas. The Firm is co-lead counsel in this pending action filed in 2005 on behalf of limited partners in 18 Florida limited partnerships who were requested to approve a $1.6 Billion three-way merger involving their limited partnerships. Among other things, the Complaint alleges that the General Partners breached their fiduciary duties by approving a Merger that provided the Limited Partners with inadequate consideration, and by disseminating a misleading Proxy on which the Limited Partners were asked to cast their vote on the Merger.

*Pennexx Securities Litigation*, No. 2:03-CV-4318 (E.D. Pa.) The Firm is co-lead counsel in this pending securities fraud class action lawsuit filed in 2003 on behalf of public investors in Pennexx Foods, Inc. ("Pennexx"). Certain of the District Court's rulings on Defendants' Motions to Dismiss are currently being appealed to the Third Circuit Court of Appeals.

Together with the Firm's Partners, Ms. Donaldson has also assisted in the prosecution of actions involving health and welfare issues, including actions to recover excessive charges due to fraud and other misconduct by health service providers, and antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct.

# Our Attorneys-Of Counsel

## Morris M. Shuster

Of Counsel, is admitted to practice before the United States Supreme Court, United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, the Supreme Court of Pennsylvania, and all other Pennsylvania Appellate and trial courts.

Mr. Shuster is a graduate of the Wharton School, University of Pennsylvania (B.S. in Economics, 1951), and of the University of Pennsylvania Law School (J.D., 1954). Prior to joining the Firm, Mr. Shuster was an active civil litigator as an associate and partner in a major Philadelphia litigation firm, as a named-partner in his own firm, and as special litigation counsel to a large Philadelphia, full-service firm. Over the last 20 years, he has concentrated his practice in consumer class actions against banks and insurance companies. He has been successful in obtaining multi-million dollar recoveries in these cases.

Mr. Shuster is currently a faculty member at the University of Pennsylvania Law School where he teaches Trial Advocacy. In 1981, he was a full-time faculty member at the University of Pennsylvania Law School and taught a course in The Lawyering Process. He also has been a guest lecturer on various legal subjects at the University of Pennsylvania Law School, Medical School, and Dental School, and at Drexel University. He is a member of the Advisory Committee for the Public Service Program at the University of Pennsylvania Law School where he developed the mentor/student pro bono project.

Mr. Shuster is a past president of The Philadelphia Trial Lawyers' Association. He was appointed by the Third Circuit Court of Appeals as Chairperson of the Bankruptcy Judge Search Committee. He was appointed by the District Court for the Eastern District of Pennsylvania as Chairperson of a Panel to consider the reappointment of a U.S. Magistrate.

In the Philadelphia Bar Association, Mr. Shuster has served as a member of the Board of Governors, Committee on Judicial Selection and Reform, Committee on Civil Legislation/Legislative Liaison, Committee on Civil Judicial Procedure (state courts) and Chairperson of the Judicial Commission. He is listed in *Who's Who in American Law,* Pennsylvania Super Lawyers, and received an "av" rating from Martindale - Hubbell.

## Our Attorneys-Of Counsel

# Denise Davis Schwartzman



Of Counsel, is admitted to practice in Pennsylvania, Florida, Texas and the District of Columbia. She is admitted to practice before all the State Courts in these jurisdictions and is admitted to the United States Courts of Appeals for the Third, Fifth, Eleventh and District of Columbia Circuits as well as United States District Courts within each Circuit. Ms. Schwartzman is a graduate of The Law School of the University of Pennsylvania (L.L.B. 1969) and Temple University (A.B. 1966). She holds a Master of Laws in Taxation from the Villanova University Law School. Ms. Schwartzman has practiced extensively at the trial and appellate levels before Federal and State Courts and before various administrative agencies.

Ms. Schwartzman was appellate counsel on the brief in *In re Charter Company*, 876 F.2d 866 (11th Cir. 1989), a case which established that class proofs of claim are allowable in bankruptcy proceedings, served on the trial team in *Ashland Oil Spill Litigation*, Master file M-14670 (W.D. Pa), *In re Sunrise Securities Litigation*, MDL No. 685 (E.D.Pa.) and represented our firm on the Litigation Committee in *Prudential Securities Incorporated Limited Partnership Litigation*, MDL 1005 (S.D.N.Y.). Ms. Schwartzman represented the Firm on the plaintiffs' co-lead counsel committee in *Spitzer v. Abdelhak*, No. 98-CV-6475 (E.D.Pa.), a civil RICO action which recovered damages on behalf of the physicians and research scientists of the now defunct Allegheny Health Education and Research Foundation (AHERF), a major health care provider in the Delaware Valley and is a senior member of the trial team for the Firm in *In re Mutual Funds Investment Litigation,* MDL 1586, a complex coordinated derivative action alleging violations of the Investment Company Act and the Investment Advisers Act by the investment advisers to eighteen mutual fund families. Prior to relocating to Philadelphia, she was associated with a major law firm in San Antonio, Texas.

## Our Attorneys-Of Counsel



# Anthony Allen Geyelin

Of Counsel, is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania.

Mr. Geyelin is a graduate of the University of Virginia (B.A. in English, 1968) and the Villanova University School of Law (J.D. 1974 *cum laude*), where he was a member of the Moot Court Board, an Associate Editor of the *Villanova Law Review*, and a recipient of the Obert Corporate Law Award. After graduation from law school Mr. Geyelin was an associate in the business department of a major Philadelphia law firm before accepting an appointment as Chief Counsel to the Pennsylvania Insurance Department in Harrisburg, an office he held from 1981 through 1983. Mr. Geyelin served as Pennsylvania's Acting Insurance Commissioner in 1983 and 1984. In 1985 Mr. Geyelin accepted the position as chief inside counsel for Academy Insurance Group, Inc. in Valley Forge, Pennsylvania and Atlanta, Georgia, serving as General Counsel and Secretary of the publicly traded holding company and its operating subsidiaries. In 1994 Mr. Geyelin was appointed Secretary and General Counsel of Penn-America Insurance Company in Hatboro, Pennsylvania, and in 1995 assumed the same offices with Penn-America Group, Inc., the publicly traded parent company. From 1997 until joining the Firm Mr. Geyelin was in private practice, concentrating on general business, insurance regulatory and litigation support matters.

# Our Attorneys-Of Counsel

# Candice L.H. Hegedus



Of Counsel, is admitted to practice before the Supreme Court of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, and the United States Court of Appeals for the Third Circuit.  She is a graduate of Villanova University School of Law (J.D. 1979) and Muhlenberg College (B.A. 1974 *cum laude*). Prior to joining the Firm, she practiced with major Philadelphia litigation firms. The focus of her practice is complex litigation, including securities fraud and limited partnership cases behalf of shareholders and antitrust matters. Ms. Hegedus was a member of the team who litigated *In re Real Estate Associates Limited Partnership Litigation*, No. CV-98-7035 (Federal District Court, Los Angeles), a case brought for violation of federal securities laws. Following a six-week trial in November 2002, the jury returned a $185 million plaintiffs' verdict, the first verdict awarding substantial monetary damages since the passage of the Private Securities Litigation Act of 1995.

# Our Attorneys-Associates



# Fatema E.F. Burkey

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She graduated from Washington University School of Law (J.D. 2003) and received her undergraduate degree in French and English from Georgetown University (B.S. 1998 *cum laude*). While in law school, Ms. Burkey served as Associate Editor of the *Washington University Law Quarterly* and authored, *Prosecutor v. Aleksovski: A Critical Analysis of the ICTY Appeals Chamber's Abandonment of Witness Protection Measures*, 82 Wash. U. L.Q. 297-318 (2004).



# Benjamin F. Johns

an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. His entire practice is devoted to litigation, with an emphasis on antitrust, securities, and consumer fraud class actions. Mr. Johns is a member of the Firm's Case Initiation Team, and is responsible for identifying and assessing potential new cases.

Mr. Johns has presented oral argument before the Judicial Panel on Multidistrict Litigation. *In re Long-Distance Telephone Service Federal Excise Tax Refund Litig.*, 469 F.Supp.2d 1348 (J.P.M.L. 2006). He is also actively involved in the *In re Insurance Brokerage Antitrust Litigation* (MDL 1663), which involves allegations of bid rigging and steering against numerous insurance brokers and insurers. In February of 2007, the District Court for the District of New Jersey approved a settlement with an insurer defendant which provides a benefit to the plaintiffs and class members valued at over $121 million. The court subsequently granted final approval to another settlement with a broker defendant valued at $28 million.

In the securities field, Mr. Johns actively participated in *In re Recoton Corp. Sec. Litig.*, a class action alleging violations of the Securities Exchange Act of 1934 against former officers and directors of a now-bankrupt company for allegedly making materially false and misleading statements regarding the accounting and management of its inventories. The court in this case recently approved an all-cash settlement of $3 million.

Mr. Johns is a graduate of the Penn State Dickinson School of Law (J.D. 2005), and the Penn State Harrisburg School of Business Administration (M.B.A. 2004, *Beta*

## Our Attorneys-Associates

*Benjamin F. Johns, cont.*

*Gamma Sigma).* While attending law school, he was a member of the Woolsack Honor Society and Irving R. Kaufman Securities Moot Court Team. Prior to law school, Mr. Johns attended Washington and Lee University (B.S. 2002, *cum laude*), where he played college basketball and spent a semester studying abroad in Osaka, Japan. Outside of the office, Mr. Johns volunteers as an advisor to a high school mock trial team, and coaches in the Narberth Summer Basketball League. He is a member of the Philadelphia Bar Association, the Antitrust Division of the American Bar Association, and the American Association for Justice.

## Kimberly Litman Kimmel

Kimberly Litman Kimmel, an associate in the Haverford office, concentrates her practice on the prosecution of securities fraud class action litigation, shareholder derivative actions and breach of fiduciary duty class action lawsuits. Ms. Kimmel is a graduate of the Temple University Beasley School of Law (J.D. 2003) and the University of Maryland, College Park (B.A. 2000). While in law school, she served as Executive Editor of the *Temple Political & Civil Rights Law Review* and as a law clerk to Senior District Judge Kenneth L. Ryskamp of the United States District Court for the Southern District of Florida. Ms. Kimmel is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey, and the United States Court of Appeals for the Third Circuit.

Ms. Kimmel's pro bono activities include serving as a volunteer attorney with the Philadelphia Volunteers for the Indigent Program (Philly VIP), a non-profit organization that provides legal services to low-income clients who reside in Philadelphia or have legal problems in Philadelphia.

Together with the Firm's Partners, Ms. Kimmel has assisted, or is currently assisting, in the prosecution of several federal securities fraud cases, breach of fiduciary duty suits and corporate derivative actions, including the following:

*Wells Real Estate Investment Trust Inc. (Wells REIT),* Case No. 07-cv-00862-CAP (N.D. Ga.), The Firm is co-lead counsel in this pending class and derivative action filed in 2007 asserting federal securities law claims under the 1934 Securities Exchange Act involving a $4.0 Billion real estate investment trust whose stock is not listed on a national stock exchange. This pending action alleges that the Company and its officers and directors violated the federal securities laws and breached their fiduciary duties by entering into and presenting for a vote by Wells REIT share-

## Our Attorneys-Associates

*Kimberly Litman Kimmel, cont.*

holders a Merger between Wells REIT and its affiliate whereby the affiliates would improperly receive $175 million worth of consideration.

*In re Discovery Laboratories Securities Litigation*, No. 06-1820 (E.D. Pa). The Firm is Lead Counsel in this pending securities class action brought on behalf of shareholders who purchased common stock of Discovery Labs during the class period. Discovery Labs is a development stage biotechnology company, which is focused upon proprietary surfactant technology.

*Lewis, et al. v. CNL Income Funds, et al*, No. 07-cv-1245-Orl-28UAM (M.D. Fla.). The Firm is co-counsel in this pending action filed in 2007 on behalf of limited partners in 18 Florida limited partnerships who were requested to approve a $1.6 Billion three-way merger involving their limited partnerships. The Complaint alleges that the General Partners breached their fiduciary duties by approving a Merger that provided the Limited Partners with inadequate consideration, and by disseminating a misleading Proxy on which the Limited Partners were asked to cast their vote on the Merger.

## Timothy N. Mathews

an associate in the Haverford office, is a graduate of Rutgers School of Law-Camden (J.D. *magna cum laude* 2003) and Rutgers University-Camden (B.A. *summa cum laude* 2000). While attending law school, Mr. Mathews was a Teaching Assistant for the Legal Research and Writing Program and received the 1L Legal Writing Award. He was also Lead Marketing Editor of the Rutgers Journal of Law & Religion and one of the top 10 oralists in the 2003 Judge John R. Brown Admiralty Moot Court competition.

Mr. Mathews' practice includes the representation of investors in complex antitrust, securities, ERISA, and shareholder derivative litigation. He is an active member of the Firm's litigation team in *In re Mutual Funds Investment Litigation* (MDL 04-1586), a multidistrict litigation alleging claims related to late trading and market timing of mutual funds in eighteen mutual fund families and involving hundreds of parties. Mr. Mathews also directs the Summer Associate program for the Haverford office and coordinates the fall hiring process for the firm.

Mr. Mathews is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey, and the United States Court of Appeals for the Ninth Circuit.

# Our Attorneys-Associates

*Timothy N. Matthews, cont.*

Mr. Mathews has an active role in the following actions:

*McWilliams v. Long Beach*, *Granados v. County of Los Angeles*, *Ardon v. City of Los Angeles*, Superior Court of California for the County of Los Angeles. In these cases Plaintiffs challenge the imposition of a utility users tax imposed by local government entities on certain telephone services which are excluded from taxation under the federal telephone excise tax. Plaintiffs seek a refund of the taxes on behalf of a class of taxpayers, as well as injunctive and declaratory relief.

*Volitis v. Blue Cross*, Eastern District of Pennsylvania. This pending ERISA action challenges the methodology applied by Blue Cross to calculate plan participants' co-insurance payments. Plaintiff alleges that Blue Cross requires participants to pay more than the designated coinsurance percentage by ignoring discounts Blue Cross receives from hospitals and other facility providers when calculating participants' coinsurance responsibilities.

*In re Live Concert Antirust*, MDL 1745. Plaintiffs in this multidistrict litigation allege that Clear Channel and its affiliates monopolized and attempted to monopolize the markets for live concerts and concert tickets by, inter alia, leveraging their position in radio markets to coerce performers to use their concert promotion services.

*Title Insurance Cases*, Eastern District of Pennsylvania. In these cases plaintiffs allege that Title Insurers and their agents overcharged homeowners for title insurance policies by failing to give refinance and reiusse rate discounts as required.

*International Fibercom Insurance Actions*, District of Arizona. These related cases involve an insurance coverage dispute and bad faith claims arising out of a securities lawsuit which the firm previously litigated to a final judgment.

## Mary Katherine Meermans



an associate in the Haverford office, graduated *cum laude* from the Law School of University of Pennsylvania in 1982. She served as a law clerk to the Honorable Paul M. Chalfin, Philadelphia Court of Common Pleas, from September 1982 to January 1984, and to the Honorable Phyllis W. Beck from January 1984 to October 1984. She is a member of the Pennsylvania Bar.

# Our Attorneys-Associates

# A. Zachary Naylor



an associate in the Wilmington office, is a graduate of the Widener University School of Law (J.D., 2003 *magna cum laude*), the University of Delaware (B.A. in Economics and Political Science, 2000) and Salesianum School. While at Widener, he served as Wolcott Law Clerk to the Honorable Joseph T. Walsh of the Supreme Court of Delaware. He was also a Managing Editor of the *Delaware Journal of Corporate Law*, meriting the Russell R. Levin Memorial Award for outstanding service and dedication to that publication. Mr. Naylor is admitted to practice before the Supreme Court of Delaware, the United States District Court for the District of Delaware and the United States Court of Appeals for the Third Circuit.

Together with the Firm's Partners, Mr. Naylor has assisted in the prosecution of numerous shareholder and unitholder class and derivative actions arising pursuant to Delaware law, including;

*In re Freeport McMoRan Sulphur Inc. Shareholder Litigation*, C.A. No. 16729-NC (Del. Ch.) This Action challenged the fairness of the terms and process of a 1998 merger between Freeport-McMoRan Sulphur Inc. and McMoRan Oil & Gas, Co. *See e.g.* 2005 WL 1653923 (Del. Ch. June 30, 2005) and 2005 WL 225040 (Del. Ch. Jan. 26, 2005). A settlement providing for a $17.5 million fund for the Class was approved by the Court of Chancery on April 20, 2006.

*IG Holdings, Inc. et.al. v. Hallwood Realty, LLC*, C.A. No. 20283-NC (Del. Ch.)This Action challenged the response of a Partnership's general partner to a tender offer and the eventual allocation of merger consideration between the general partner and limited partners. Ultimately, as a result of the litigation, the limited partners received a premium price for their units, protected by a floor.

*Saito, et.al. v. McCall, et.al.,* C.A. No. 17132-NC (Del. Ch.) This Action involved derivative litigation on behalf of McKesson HBOC arising from alleged oversight violations by certain board members. The Court approved a settlement including a $30 million fund for the Company's behalf, mechanisms to protect the independent prosecution of certain realigned claims, and other corporate governance benefits. The settlement represents a historically large achievement for cases of this type and was characterized by the Court of Chancery as "strikingly good" particularly in light of the "onerous path" presented by Delaware law for derivative Plaintiffs.

*In re Chiron Shareholder Deal Litigation*, Consol. Case No. RG05-230567 (Cal). & *In re Chiron Corporation Shareholder Litigation*, C.A. No. 1602-N (Del. Ch.)These Actions sought to enjoin the proposed acquisition of shares of Chiron Corporation not

# Our Attorneys-Associates

*A. Zachary Naylor cont.*

already held by its 42% stockholder, Novartis AG. The Actions also sought to invalidate certain contractual provisions that effectively prevent Chiron board members from effectively discharging their unremitting fiduciary duties in accordance with Delaware law.  Following briefing on a motion for preliminary injunction, a settlement was reached pursuant to which Novartis increased the offered merger consideration by $330 million.

*Gelfman et.al. v. Weeden Investors, L.P., et.al., C.A. No. 18519 (Del. Ch.)*  This Action alleged that the corporate general partner (and its board of directors) of a limited partnership violated contractual and fiduciary duties owed to limited partners. Following a trial on the merits, Plaintiffs prevailed on a substantial portion of their claims resulting in a judgment in favor of Plaintiffs. *See e.g.* 859 A.2d 89 (Del. 2004).

# Joseph G. Sauder

an associate in the Haverford office, .has concentrated his practice on prosecuting class action litigation, including securities fraud, shareholder derivative actions, consumer protection, ERISA and antitrust cases on behalf of shareholders, consumers and institutional clients. Prior to joining the firm, Mr. Sauder was an associate with a major Philadelphia firm where he concentrated on complex civil litigation. From 1998 to 2003, Mr. Sauder was a prosecutor in the Philadelphia District Attorney's Office where he served as lead counsel in hundreds of criminal trials including over twenty jury trials involving major felonies.

Mr. Sauder received his Bachelor of Science, *magna cum laude* in Finance from Temple University in 1995. He graduated from Temple University School of Law in 1998, where he was a member of *Temple Law Review*.

Mr. Sauder's public service activities include teaching trial advocacy to a local Philadelphia high school team which competed in the State Mock Trial Competition. He is vice president of the Philadelphia District Attorneys' Alumni Association. His *pro bono* activities include serving as a volunteer attorney with the Support Center for Child Advocates, a nonprofit organization that provides legal and social services to abused and neglected children.

Mr. Sauder is a member of the Firm's Client Development Group and works closely with the Firm's institutional clients. He is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania and the District of

## Our Attorneys-Associates

New Jersey.

In 2006, Law & Politics and the publishers of Philadelphia Magazine included Mr. Sauder as a Pennsylvania Rising Star, as listed in the "Pennsylvania Rising Stars Super Lawyers" publication. Only 2.5 percent of the total lawyers in Pennsylvania are listed in Rising Stars.

In August 2007, American Lawyer Media, publisher of *The Legal Intelligencer* and the *Pennsylvania Law Weekly*, named Mr. Sauder as one of the "Lawyers on the Fast Track" a distinction that recognized thirty-five Pennsylvania attorneys under the age of 40 who show outstanding promise in the legal profession and make a significant commitment to their community.

Together with the Firm's Partners, Mr. Sauder has assisted or is assisting in the prosecution of the following actions:

*Charles v. Pepco Holdings Inc.,* No. 05-702 (D.Del) This pending ERISA class action lawsuit filed in September 2005 on behalf of a class consisting of employees who may suffer significantly reduced future benefit accruals as a result of the company converting their pension rights to the Cash Balance Sub-Plan of the Conectiv Retirement Plan.

*In re Volkswagen and Audi Warranty Extension Litigation,* This pending consumer class action on behalf of consumers against Volkswagen involves oil sludge related problems with the Volkswagen and Audi 1.8 litre turbo-charged engines. The action is pending in the United States District Court for the District of Massachusetts.

*In re Textainer Financial Services Corporation, et al.,* Superior Court of California, County of San Francisco. This pending securities class action filed in 2005 arises out of proxy solicitations that were made to holders of limited partnership units issued by the Textainer Partnerships, a California Limited Partnership. The Complaint alleges that the defendants breached their fiduciary duties by approving a sale of the assets that provided the Limited Partners with inadequate consideration and by disseminating a misleading Proxy on which the Limited Partners were asked to cast their vote on the sale. In early 2006 the court denied the defendants' demurrer and certified the class.

*Cook v. Rockwell International and the Dow Chemical Company*, No. 90-cv-00181 (D. Co.) Mr. Sauder assisted with the trial of this environmental case involving the Rocky Flats Nuclear Weapons Plant. The case sought property damages (compensatory and punitive) for a class of approximately 15,000 persons owning parcels downwind of Rocky Flats, which is located about 16 miles northwest of downtown Denver, Colorado. In February 2006 a jury returned a verdict of $554 million on behalf the class. It includes an award of $200 million in punitive damages.

## Our Attorneys-Associates

# Daniel B. Scott



an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third and Sixth Circuits and the United States District Courts for the District of New Jersey, Eastern District of Pennsylvania and Eastern District of Michigan. He is a graduate of Emory University School of Law (J.D. 2001, Atlanta Law Fellow) and Pennsylvania State University (B.S. Economics 1991, *with Distinction*, University Scholar). Upon graduation from law school, Mr. Scott was inducted into the Order of Barristers and Order of Emory Advocates, in recognition of his work as a participant and coach on the Emory Law School Philip C. Jessup International Law Moot Court team (1999-2001).

His practice includes the representation of companies, investors and consumers in complex antitrust, securities and consumer protection litigation. In *In re Pennsylvania Baycol Third Party Payor Litigation* (Phila. Ct. Common Pleas), a class action for which Chimicles & Tikellis served as co-lead counsel, Mr. Scott was instrumental in helping obtain partial summary judgment on liability; this was the first judgment to be entered against Bayer in the United States in connection with the withdrawal of Baycol. Mr. Scott also materially assisted in briefing a motion for class certification in that case, resulting in the certification of one of the few national class actions involving third party payors to be certified in a state court. Shortly before trial, the firm reached a settlement with Bayer in which Bayer agreed to pay class members a net recovery that approximates their maximum damages. In *Wong v. T-Mobile USA, Inc.* (E.D. Mich. 2006), a class action for which Chimicles & Tikellis serves as co-lead counsel, Mr. Scott was instrumental in briefing opposition to T-Mobile's motion to compel arbitration. In July 2006, the Court issued an opinion denying T-Mobile's motion, having concluding that the class action waiver contained therein was unenforceable. Mr. Scott's *pro bono* commitments include an effort to obtain asylum for a Colombian bacteriologist who was kidnapped, assaulted and threatened with death by the FARC rebels of Colombia. In this case, Mr. Scott argued and won remand from the Court of Appeals for the Third Circuit on a denial of asylum by the Department of Homeland Security. *Rojas-Contreras v. Att'y Gen'l-,* No. 04-4762, 2006 WL 2052233 (3d Cir. July 24, 2006).

In September 2006, American Lawyer Media, publisher of *The Legal Intelligencer* and the *Pennsylvania Law Weekly*, named Mr. Scott as one of forty-five "Lawyers on the Fast Track" – Pennsylvania attorneys under the age of 40 who show outstanding promise in the legal profession and make a significant commitment to their community. Selection for this award is done by an independent ALM committee comprised

## Our Attorneys-Associates

*Daniel B. Scott, cont.*

of members of the bar.  In 2006, Law & Politics and the publishers of Philadelphia Magazine named Mr. Scott as a Pennsylvania Rising Star, as listed in the "Pennsylvania Rising Stars Super Lawyers" publication.



## Scott M. Tucker

an associate in the Wilmington Office, is admitted to practice before the Supreme Court of Delaware and the U.S. District Court for the District of Delaware. He is a graduate of the Syracuse University College of Law (J.D. 2006, *cum laude*), the Whitman School of Management at Syracuse University (M.B.A. 2006), and SUNY Cortland (B.S. 2002, *cum laude*). While attending law school, Mr. Tucker was a member of the Securities Arbitration Clinic.

# Practice Areas

### Health & Welfare Fund Assets
*C&T Protects Clients' Health & Welfare Fund Assets Through Monitoring Services & Vigorously Pursuing Health & Welfare Litigation.*

At no cost to the client, C&T seeks to protect its clients' health & welfare fund assets against fraud and other wrongdoing by monitoring the health & welfare fund's drug purchases, Pharmacy benefit Managers and other health service providers.  In addition, C&T investigates potential claims and, on a fully-contingent basis, pursues legal action for the client on meritorious claims involving the clients' heath & welfare funds.  These claims could include: the recovery of excessive charges due to misconduct by health service providers; antitrust claims to recover excessive prescription drug charges and other costs due to corporate collusion and misconduct; and, cost-recovery claims where welfare funds have paid for health care treatment resulting from defective or dangerous drugs or medical devices.

### Monitoring Financial Investments
*C&T Protects Clients' Financial Investments Through Securities Fraud Monitoring Services.*

Backed by extensive experience, knowledge of the law and successes in this field, C&T utilizes various information systems and resources (including forensic accountants, financial analysts, seasoned investigators, as well as technology and data collection specialists, who can cut to the core of complex financial and commercial documents and transactions) to provide our institutional clients with a means to actively protect the assets in their equity portfolios.  As part of this no-cost service, for each equity portfolio, C&T monitors relevant financial and market data, pricing, trading, news and the portfolio's losses.  C&T investigates and evaluates potential securities fraud claims and, after full consultation with the client and at the client's direction, C&T will, on a fully-contingent basis, pursue legal action for the client on meritorious securities fraud claims.

### Corporate Transactional
*C&T Protects Shareholders' Interest by Holding Directors Accountable for Breaches of Fiduciary Duties*

Directors and officers of corporations are obligated by law to exercise good faith, loyalty, due care and complete candor in managing the business of the corporation.  Their duty of loyalty to the corporation and its shareholders requires that they act in the best interests of the corporation at all times.  Directors who breach any of these "fiduciary" duties are accountable to the stockholders and to the corporation itself for the harm caused by the breach.  A substantial part of the practice of Chimicles & Tikellis LLP involves representing shareholders in bringing suits for breach of fiduciary duty by corporate directors.

# Practice Areas

### Securities Fraud
*C&T Protects and Recovers Clients' Assets Through the Vigorous Pursuit of Securities Fraud Litigation.*

C&T has been responsible for recovering over $1 billion for institutional and individual investors who have been victims of securities fraud. The prosecution of securities fraud often involves allegations that a publicly traded corporation and its affiliates and/or agents disseminated materially false and misleading statements to investors about the company's financial condition, thereby artificially inflating the price of that stock. Often, once the truth is revealed, those who invested at a time when the company's stock was artificially inflated incur a significant drop in the value of their stock. C&T's securities practice group comprises seasoned attorneys with extensive trial experience who have successfully litigated cases against some of the nation's largest corporations. This group is strengthened by its use of forensic accountants, financial analysts, and seasoned investigators.

### Antitrust
*C&T Enforces Clients' Rights Against Those Who Violated Antitrust Laws.*

C&T successfully prosecutes an array of anticompetitive conduct, including price fixing, tying agreements, illegal boycotts and monopolization. As counsel in major litigation over anticompetitive conduct by the makers of brand-name prescription drugs, C&T has helped clients recover significant amounts of price overcharges for blockbuster drugs such as BuSpar, Coumadin, Cardizem, Relafen, and Paxil.

### Real Estate Investment Trusts
*C&T is a Trail Blazer in Protecting Clients' Investments in Non-Listed Equities.*

C&T represents limited partners and purchaser of stock in limited partnerships and real estate investment trusts (non-listed REITs) which are publicly-registered but not traded on a national stock exchange. These entities operate outside the realm of a public market that responds to market conditions and analysts' scrutiny, so the investors must rely entirely on the accuracy and completeness of the financial and other disclosures provided by the company about its business, its finances, and the value of its securities. C&T prosecutes: (a) securities law violations in the sale of the units or stock; (b) abusive management practices including self-dealing transactions and the payment of excessive fees; (c) unfair transactions involving sales of the entities' assets; and (d) buy-outs of the investors' interests.

# Practice Areas

### *Shareholder Derivative Lawsuits*
*C&T is a Leading Advocate for Prosecuting and Protecting Shareholder Rights through Derivative Lawsuits and Class Actions.*

C&T is at the forefront of persuading courts to recognize that actions taken by directors (or other fiduciaries) of corporations or associations must be in the best interests of the shareholders. Such persons have duties to the investors (and the corporation) to act in good faith and with loyalty, due care and complete candor. Where there is an indication that a director's actions are influenced by self-interest or considerations other than what is best for the shareholders, the director lacks the independence required of a fiduciary and, as a consequence, that director's decisions cannot be honored. A landmark decision by the Supreme Court of Delaware underscored the sanctity of this principal and represented a major victory for C&T's clients.

### *Corporate Governance and Accountability*
*C&T is a Principal Advocate for Sound Corporate Governance and Accountability.*

C&T supports the critical role its investor clients serve as shareholders of publicly held companies. Settlements do not provide exclusively monetary benefits to our clients. In certain instances, they may include long term reforms by a corporate entity for the purpose of advancing the interests of the shareholders and protecting them from future wrongdoing by corporate officers and directors. On behalf of our clients, we take corporate directors' obligations seriously. It's a matter of justice. That's why C&T strives not to only obtain maximum financial recoveries, but also to effect fundamental changes in the way companies operate so that wrongdoing will not reoccur.

# Representative Cases

*CNL Hotels & Resorts Inc. Securities Litigation*, **Case No. 6:04-CV-1231(M.D. FL).**

C&T is Lead Litigation Counsel in CNL Hotels & Resorts Inc. Securities Litigation, representing a Michigan Retirement System, other named plaintiffs and over 100,000 investors in this federal securities law class action that was filed in August 2004 against the nation's second largest hotel real estate investment trust, CNL Hotels, and certain of its affiliates, officers and directors. CNL raised over $3 billion from investors pursuant to what Plaintiffs alleged to be false and misleading offering materials. In addition, in June 2004 CNL proposed an affiliated-transaction that was set to cost the investors and the Company over $300 million ("Merger").

On August 1, 2006, the Federal District Court located in Orlando, Florida granted final approval of the Settlement as fair, reasonable, and adequate, and in rendering its approval of an award of attorneys' fees and costs to Plaintiffs' Counsel, the Court noted that "Plaintiffs' counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result." More than 100,000 class members received notice of the proposed settlement and no substantive objection to the settlement, plan of allocation or fee petition was voiced by any class member.

The Settlement resolves federal securities law and state law claims that were filed against CNL Hotels & Resorts, Inc. (f/k/a CNL Hospitality Properties, Inc.)("CNL Hotels") and other individual and entity defendants ("Settling Defendants") in August, 2004. The Action was filed on behalf of: (a) CNL Hotels shareholders entitled to vote on the proposals presented in CNL Hotels' proxy statement dated June 21, 2004 ("Proxy Class"); and (b) CNL Hotels' shareholders who acquired CNL Hotels shares pursuant to or by means of CNL Hotels' public offerings, registration statements and/or prospectuses between August 16, 2001 and August 16, 2004 ("Purchaser Class").

The Proxy Class claims were settled by (a) CNL Hotels having entered into an Amended Merger Agreement which significantly reduced the amount that CNL Hotels paid to acquire its Advisor, CNL Hospitality Corp., compared to the Original Merger Agreement approved by CNL Hotels' stockholders pursuant to the June 2004 Proxy; (b) CNL Hotels having entered into certain Advisor Fee Reduction Agreements, which significantly reduced certain historic, current, and future advisory fees that CNL Hotels paid its Advisor before the Merger; and (c) the adoption of certain corporate governance provisions by CNL Hotels' Board of Directors. **In approving the Settlement, the Court concluded that in settling the Proxy claims, "a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."** The Purchaser Class claims were settled by Settling Defendants'

## Representative Cases

payment of **$35,000,000**, payable in three annual installments (January 2007 to January 2009).

This is an excellent result in a litigation that presented extremely difficult and complex issues. The Settlement achieves outstanding benefits for CNL Hotels' investors and, importantly, the Company is now well-positioned to pursue its business plan

***In re Chiron Shareholder Deal Litigation*, Case No. RG05-230567 (Cal. Super.) & *In re Chiron Corporation Shareholder Litigation*, C.A. No. 1602-N (Del. Ch.).**
C&T represents stockholders of Chiron Corporation in an action which challenged the proposed acquisition of Chiron Corporation by its 42% stockholder, Novartis AG. Novartis announced a $40 per share merger proposal on September 1, 2005, which was rejected by Chiron on September 5, 2005. On October 31, Chiron announced an agreement to merge with Novartis at a price of $45 per share. C&T was co-lead counsel in the consolidated action brought in the Delaware Court of Chancery. Other similar actions were brought by other Chiron shareholders in the Superior Court of California, Alameda City. The claims in the Delaware and California actions were prosecuted jointly in the Superior Court of California. C&T, together with the other counsel for the stockholders, obtained an order from the California Court granting expedited proceedings in connection with a motion preliminary to enjoin the proposed merger. Following extensive expedited discovery in March and April, 2006, and briefing on the stockholders' motion for injunctive relief, and just days prior to the scheduled hearing on the motion for injunctive relief, C&T, together with Co-lead counsel in the California actions, negotiated an agreement to settle the claims which included, among other things, a further increase in the merger price to $48 per share, or an additional $330 million for the public stockholders of Chiron. On July 25, 2006, the Superior Court of California, Alameda County, granted final approval to the settlement of the litigation.

***Rojas-Contreras v. Att'y Gen'l*, No. 04-4762, 2006 WL 2052233 (3d Cir. July 24, 2006)**.
In this pro bono matter, one of C&T's Associates represented a Colombian bacteriologist who was kidnapped, assaulted and threatened with death by the FARC rebels of Colombia, who thereafter sought asylum in the United States. The Department of Homeland Security denied asylum to the bacteriologist, and C&T represented her in the appeal of that denial. Subsequent to an oral argument before the Court of Appeals for the Third Circuit, C&T won remand on the denial of asylum.

## Representative Cases

***In re Pennsylvania Baycol: Third-Party Payor Litigation*, Case No. 001874, Court of Common Pleas, Philadelphia County**.
In connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, C&T represents various Health and Welfare Funds, including the Pennsylvania Employees Benefit Trust Fund, and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this is the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties reached a settlement (recently approved by the court) in which Bayer agreed to pay class members a net recovery that approximates the maximum damages (including pre-judgment interest) suffered by class members. The class settlement negotiated by C&T represents a net recovery for third party payors that is between double and triple the net recovery pursuant to a non-litigated settlement negotiated by lawyers representing third party payors such as AETNA and CIGNA that was made available to and accepted by numerous other third party payors (including the TRS). C&T had advised its clients to reject that offer and remain in the now settled class action. On June 15, 2006 the court granted final approval of the settlement.

***In re Freeport-McMoran Sulphur, Inc. Shareholder Litigation*, C.A. No. 16729 (Del. Ch.).**
In this shareholder class action, C&T serves as Lead Plaintiffs' Counsel representing investors in a stock-for-stock merger of two widely held public companies, seeking to remedy the inadequate consideration the stockholders of Sulphur received as part of the merger. In June 2005, the Court of Chancery denied defendants' motions for summary judgment, allowing Plaintiffs to try each and every breach of fiduciary duty claim asserted in the Action. In denying defendants' motions for summary judgment the Court held there were material issues of fact regarding certain board member's control over the Board including the Special Committee members and the fairness of the process employed by the Special Committee implicating the duty of entire fairness and raising issues regarding the validity of the Board action authorizing the merger. The decision has broken new ground in the field of corporate litigation in Delaware. Before the trial commenced, Plaintiffs and Defendants agreed in principle to settle the case. The settlement, which was approved in April 2006, provides for a cash fund of $17,500,000.

## Representative Cases

***In re McKesson Derivative Litigation, Saito*, et. al.  v. McCall, et. al., C.A. No. 17132 (Del. Ch.).**
As Lead Counsel in this stockholder derivative action, C&T challenged the actions of the officers, directors and advisors of McKesson and HBOC in proceeding with the merger of the two companies when their managements were allegedly aware of material accounting improprieties at HBOC.  In addition, C&T also brought (under Section 220 of the Delaware Code) a books and records case to discover information about the underlying events. C&T successfully argued in the Delaware Courts for the production of the company's books and records which were used in the preparation of an amended derivative complaint in the derivative case against McKesson and its directors. Seminal opinions have issued from both the Delaware Supreme Court and Chancery Court about Section 220 actions and derivative suits as a result of this lawsuit. Plaintiffs agreed to a settlement of the derivative litigation subject to approval by the Delaware Court of Chancery, pursuant to which the Individual Defendants' insurers will pay $30,000,000 to the Company. In addition, a claims committee comprised of independent directors has been established to prosecute certain of Plaintiffs' claims that will not be released in connection with the proposed settlement. Further, the Company will maintain important governance provisions among other things ensuring the independence of the Board of Directors from management. On February 21, 2006, the Court of Chancery approved the Settlement and signed the Final Judgment and Order and Realignment Order.

***Shared Medical Systems 1998 Incentive Compensation Plan Litigation*, Philadelphia County Court of Common Pleas, Commerce Program, No. 0885.**
Chimicles & Tikellis LLP is lead counsel in this action brought in 2003 in the Philadelphia County Court of Common Pleas. The case was brought on behalf of approximately 1,300 persons who were employees of Defendant Siemens Medical Solutions Health Services Corporation (formerly Shared Medical Systems, Inc.) who had their 1998 incentive compensation plan ("ICP") compensation reduced 30% even though the employees had completed their performance under the 1998 ICP contracts and had earned their incentive compensation based on the targets, goals and quotas in the ICPs.   The Court had scheduled trial to begin on February 4, 2005. On the eve of trial, the Court granted Plaintiffs' motion for summary judgment as to liability on their breach of contract claim.  With the rendering of that summary judgment opinion on liability in favor of Plaintiffs, the parties reached a settlement in which class members will receive a **net recovery of the full amount of the amount that their 1998 ICP compensation was reduced**. On May 5, 2005, the Court approved the settlement, stating that the case "should restore anyone's faith in class actions as a reasonable way of proceeding on reasonable cases."

# Representative Cases

***Gelfman v. Weeden Investors, L.P.,*** **Civ. Action No. 18519-NC (Del. Ch.).**

Chimicles & Tikellis LLP served as class counsel, along with other plaintiffs' firms, in this action against the Weeden Partnership, its General Partner and various individual defendants filed in the Court of Chancery in the State of Delaware. In this Class Action, Plaintiffs alleged that Defendants breached their fiduciary duties to the investors and breached the Partnership Agreement. The Delaware Chancery Court conducted a trial in this action which was concluded in December 2003. Following the trial, the Chancery Court received extensive briefing from the parties and heard oral argument. On June 14, 2004, the Chancery Court issued a memorandum opinion, which was subsequently modified, finding that the Defendants breached their fiduciary duties and the terms of the Partnership Agreement, with respect to the investors, and that Defendants acted in bad faith ("Opinion"). This Opinion from the Chancery Court directed an award of damages to the classes of investors, in addition to other relief. In July 2004, Class Counsel determined that it was in the best interests of the investors to settle the Action for over 90% of the value of the monetary award under the Opinion (over $8 million).

***McParland v. Keystone Health Plan Central,*** **Case No.   98-SU-00770-01 (Pennsylvania Court of Common Pleas, York County).**

Chimicles & Tikellis LLP served as lead counsel in this class action, filed in 1998 in the Court of Common Pleas of York County on behalf of persons who enrolled in Keystone's medicare HMO "SeniorBlue" program based on Keystone's aggressive marketing of prescription coverage, low premiums, and its affiliation with Blue Cross and Blue Shield. The suit asserted claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law and for breach of contract. In July 2004, the Court approved the settlement of this Action providing some class members with case and others with discounts on prescription drugs.

***I.G. Holdings Inc., et. al.  v. Hallwood Realty, LLC,*** **et. al., C.A. No. 20283 (Del. Ch.).**

In the Delaware Court of Chancery, C& T represented the public unitholders of Hallwood Realty L.P.  The action challenged the general partner's refusal to redeem the Partnership's rights plan or to sell the Partnership to maximize value for the public unitholders. Prior to the filing of the action, the Partnership paid no distributions and  Units of the Partnership normally traded in the range of $65 to $85 per unit. The prosecution of the action by C&T caused the sale of the Partnership, ultimately yielding approximately <u>$137 per Unit</u> for the unitholders plus payment of the attorneys' fees of the Class.

# Representative Cases

***ML-Lee Litigation, ML Lee Acquisition Fund L.P.* and *ML-Lee Acquisition Fund II L.P.* and *ML-Lee Acquisition Fund (Retirement Accounts)*, (C.A. Nos. 92-60, 93-494, 94-422, and 95-724), Delaware Federal District Court.**
C&T represented three classes of investors who purchased units in two investment companies, ML-Lee Funds (that were jointly created by Merrill Lynch and Thomas H. Lee). The suits alleged breaches of the federal securities laws, based on the omission of material information and the inclusion of material misrepresentations in the written materials provided to the investors, as well as breaches of fiduciary duty and common law by the general partners in regard to conduct that benefited them at the expense of the limited partners. The complaint included claims under the often-ignored Investment Company Act of 1940, and the case witnessed numerous opinions that are considered seminal under the ICA. The six-year litigation resulted in **$32 million** in cash and other benefits to the investors.

***In re Real Estate Associates Limited Partnership Litigation***, **Case No. CV 98-7035, United States District Court, Central District of California.**
Chimicles & Tikellis LLP achieved national recognition for obtaining, in a federal securities fraud action, the first successful plaintiffs' verdict under the PSLRA. Senior partner Nicholas E. Chimicles was Lead Trial Counsel in the six-week jury trial in federal court in Los Angeles, in October 2002. The jury verdict, in the amount of $185 million (half in compensatory damages; half in punitive damages), was ranked among the top 10 verdicts in the nation for 2002. After the court reduced the punitive damage award because it exceeded California statutory limits, the case settled for $83 million, representing full recovery for the losses of the class. At the final hearing, held in November 2003, the Court praised Counsel for achieving both a verdict and a settlement that "qualif[ied] as an exceptional result" in what the Judge regarded as "a very difficult case…" In addition, the Judge noted the case's "novelty and complexity…and the positive reaction of the class. Certainly, there have been no objections, and I think Plaintiffs' counsel has served the class very well."

*Case Summary:* In August of 1998, over 17,000 investors ("Investor Class") in 8 public Real Estate Associates Limited Partnerships ("REAL Partnerships") were solicited by their corporate managing general partner, defendant National Partnership Investments Corp. ("NAPICO"), and other Defendants via Consent Solicitations filed with the Securities and Exchange Commission ("SEC"), to vote in favor of the sale of the REAL Partnerships' interests in 98 limited partnerships ("Local Partnerships"). In a self-dealing and interested transaction, the Investor Class was asked to consent to the sale of these interests to NAPICO's affiliates ("REIT Transaction"). In short, Plaintiffs alleged that defendants structured and carried out this wrongful and self-dealing transaction based on false and misleading statements, and omissions in the Consent Solicitations, resulting in the Investor Class receiving grossly

# Representative Cases

inadequate consideration for the sale of these interests.  Plaintiffs' expert valued these interests to be worth a minimum of $86,523,500 (which does not include additional consideration owed to the Investor Class), for which the Investor Class was paid only $20,023,859.

Plaintiffs and the Certified Class asserted claims under Section 14 of the Securities Exchange Act of 1934 ("the Exchange Act"), alleging that the defendants caused the Consent Solicitations to contain false or misleading statements of material fact and omissions of material fact that made the statements false or misleading.  In addition, Plaintiffs asserted that Defendants breached their fiduciary duties by using their positions of trust and authority for personal gain at the expense of the Limited Partners.  Moreover, Plaintiffs sought equitable relief for the Limited Partners including, among other things, an injunction under Section 14 of the Exchange Act for violation of the "anti-bundling rules" of the SEC, a declaratory judgment decreeing that defendants were not entitled to indemnification from the REAL Partnerships.

***Trial:***  This landmark case is the <u>first</u> Section 14 – proxy law- securities class action seeking damages, a significant monetary recovery, for investors that has been tried, and ultimately won, before a jury anywhere in the United States since the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Trial began on October 8, 2002 before a federal court jury in Los Angeles.  The jury heard testimony from over 25 witnesses, and trial counsel moved into evidence approximately 4,810 exhibits; out of those 4,810 exhibits, witnesses were questioned about, or referred to, approximately 180 exhibits.

On November 15, 2002, the ten  member jury, after more than four weeks of trial and six days of deliberation, unanimously found that Defendants knowingly violated the federal proxy laws and that NAPICO breached its fiduciary duties, and that such breach was committed with oppression, fraud and malice.  The jury's unanimous verdict held defendants liable for compensatory damages of $92.5 million in favor of the Investor Class.  On November 19, 2002, a second phase of the trial was held to determine the amount of punitive damages to be assessed against NAPICO.  The jury returned a verdict of $92.5 million in punitive damages.  In total, trial counsel secured a unanimous jury verdict of $185 million on behalf of the Investor Class.

With this victory, Mr. Chimicles and the trial team secured the 10th largest verdict of 2002.  (See, National Law Journal, "The Largest Verdicts of 2002", February 2, 3003; National Law Journal, "Jury Room Rage", Feb. 3. 2002).  Subsequent to post-trial briefing and rulings, in which the court reduced the punitive damage award because it exceeded California statutory
limits, the case settled for $83 million.   The settlement represented full recovery for the losses of the class.

***Prosecuting and trying this Case required dedication, tenacity, and skill:***
This case involved an extremely complex transaction.  As Lead Trial Counsel, C&T

was faced with having to comprehensively and in an understandable way present complex law, facts, evidence and testimony to the jury, without having them become lost (and thus, indifferent and inattentive) in a myriad of complex terms, concepts, facts and law. The trial evidence in this case originated almost exclusively from the documents and testimony of Defendants and their agents. As Lead Trial Counsel, C&T was able, through strategic cross-examination of expert witnesses, to effectively stonewall defendants' damage analysis. In addition, C&T conducted thoughtful and strategic examination of defendants' witnesses, using defendants' own documents to belie their testimony.

***The significance of the case:*** The significance of this trial and the result are magnified by the public justice served via this trial and the novelty of issues tried. This case involved a paradigm of corporate greed, and C&T sent a message to not only the Defendants in this Action, but to all corporate fiduciaries, officers, directors and partners, that it does not pay to steal, lie and cheat. There needs to be effective deterrents, so that "corporate greed" does not pay. The diligent and unrelenting prosecution and trial of this case by C&T sent that message.

Moreover, the issues involved were novel and invoked the application of developing case law that is not always uniformly applied by the federal circuit courts. In Count I, Plaintiffs alleged that defendants violated § 14 of the Exchange Act. Subsequent to the enactment of the PLSRA, the primary relief sought and accorded for violations of the proxy laws is a preliminary injunction. Here, the consummation of the REIT Transaction foreclosed that form of relief. Instead, Plaintiffs' Counsel sought significant monetary damages for the Investor Class on account of defendants' violations of the federal proxy laws. C&T prevailed in overcoming defendants' characterization of the measure of damages that the Investor Class was required to prove (defendants argued for a measure of damages equivalent to the difference in the value of the security prior to and subsequent to the dissemination of the Consent Solicitations), and instead, successfully recouped damages for the value of the interests and assets given up by the Investor Class. The case is important in the area of enforcement of fiduciary duties in public partnerships which are a fertile ground for unscrupulous general partners to cheat the public investors.

Because of C&T's leadership and extensive advocacy skills, a complex case, requiring thousands of hours of attorney, expert, paralegal and support staff labor, which faced fierce opposition at each turn, was fully litigated and tried to a jury. Because of C&T, 17,000 investors had their day in court and were heard. C&T brought this Action before the revelations about the extensiveness of "corporate wrongdoing,"