**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CITY OF ST. CLAIR SHORES GENERAL EMPLOYEES RETIREMENT SYSTEM, On behalf of Itself and All Others Similarly Situated, and Derivatively On behalf of Inland Western Retail Real Estate Trust, Inc.<br><br>Plaintiff,<br><br>v.<br><br>INLAND WESTERN RETAIL REAL ESTATE TRUST, INC., INLAND REAL ESTATE INVESTMENT CORPORATION; THE INLAND GROUP, INC., INLAND WESTERN RETAIL REAL ESTATE ADVISORY SERVICES, INC., INLAND SOUTHWEST MANAGEMENT CORP., INLAND NORTHWEST MANAGEMENT CORP., INLAND WESTERN MANAGEMENT CORP., ROBERT D. PARKS, BRENDA G. GUJRAL, FRANK A. CATALANO, JR., KENNETH H. BEARD, PAUL R. GAUVREAU, GERALD M. GORSKI, BARBARA A. MURPHY, STEVEN P. GRIMES, DANIEL A. GOODWIN, ROBERT A. BAUM, G. JOSEPH COSENZA, and WILLIAM BLAIR & COMPANY, L.L.C.,<br><br>Defendants. | Case Number:  07 C 6174 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CITY OF ST. CLAIR SHORES GENERAL EMPLOYEES RETIREMENT SYSTEM AND MADISON INVESTMENT TRUST FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF PROPOSED CO-LEAD PLAINTIFFS' SELECTION OF CO-LEAD COUNSEL**

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT .......................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................................2

    *A.*      *Summary of Substantive Factual Allegations* ........................................................2

        1.      Parties...............................................................................................................2

        2.      The Proxy...........................................................................................................4

    *B.*      *Procedural Background.* ...................................................................................5

    *C.*      *The Movants* .....................................................................................................5

III.    ARGUMENT ..................................................................................................................6

    *A.*      *Movants Should Be Appointed As Co-Lead Plaintiffs For The Class In The Consolidated Action* ..............................................................................................6

        1.      The Procedure Mandated By The PSLRA For Appointment Of Lead Plaintiff ..................................................................6

        2.      Movants Satisfy The Lead Plaintiff Requirements Of The PSLRA............7

            *a.   Movants Have Complied With The Procedural Requirements Of The PSLRA.* .......................................................................................7

            *b.   Movants Have The Largest Financial Interests In The Relief Sought By The Class* .............................................................................8

            *c.   Movants Satisfy The Requirements Of Rule 23 Of The Federal Rules of Civil Procedure* ....................................................................10

                1.   Movants' Claims Are Typical .....................................................11

                2.   Movants Are Adequate Representatives .................................... 12

    *B.*      *The Court Should Approve Movants' Choice Of Counsel* ...................................13

IV.     CONCLUSION ..............................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*In re Bally Total Fitness Secs. Litig.*, 2005 U.S. Dist. LEXIS 6243
(N.D. Ill. July 12, 2005).................................................................................10, 11, 12

*In re Cendant Corp. Lit.*, 264 F.3d 201, 266 (3d Cir. 2001) ........................................................11

*City Partnership Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 587 (D. Colo. 2002)........... 11-12

*Hershfang v. Knotter,* 562 F.Supp. 393 (E.D. Va.1983),
*aff'd* 725 F.2d 675 (4th Cir.1984)................................................................................12

*Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866
(N.D. Ill. Aug. 6, 1997)...............................................................................................8, 10

*Mayo v. Apropos Tech., Inc.*, 2002 U.S. Dist. LEXIS 1924 (N.D. Ill. Feb. 6, 2002) .....................8

*In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651
(N.D. Ill. July 16, 2003).............................................................................................9-10, 11

*In re Neopharm, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 5814
(N.D. Ill. Apr. 7, 2004) ...................................................................................................7

*In re Reliance Acceptance Group, Inc. Sec. Litig.*, 1998 WL 388260
(W.D. Tex. June 29, 1998)..............................................................................................9

*Roth v. Aon Corp.*, 238 F.R.D. 603 (N.D. Ill. 2006).............................................................12, 13

*Takara Trust v. Molex Inc.*, 229 F.R.D. 577 (N.D. Ill. 2005)..............................................7, 8, 10

*Taubenfeld v. Career Educ. Corp.*, 2004 U.S. Dist. LEXIS 4363
(N.D. Ill. 2004).............................................................................................................11, 12

*Topaz Realty v. Northfield Labs., Inc.*, 2006 U.S. Dist. LEXIS 77613
(N.D. Ill. June 19, 2006) .............................................................................................7, 13

*Winn v. Symons Int'l Group*, 2001 U.S. Dist. LEXIS 3437 (S.D. Ind. Mar. 21, 2001)...................9

*Zucker v. Zoran Corp.*, 2006 U.S. Dist. LEXIS 93469
(N.D. Cal. Dec. 11, 2006) ..............................................................................................8

ii

# **OTHER**

Fed. R. Civ. P. 23 ..............................................................................................................6, 10

Fed. R. Civ. P. 42 ..................................................................................................................1

H.R. Rep. No 104-369............................................................................................................2

Senate Report No. 104-98, 104th Cong. 1st Sess. at 11 (1995).........................................................9

15 U.S.C. § 78u-4(a) ......................................................................................... 1, 6, 7, 8, 10, 11

## I.   PRELIMINARY STATEMENT

City of St. Clair Shores General Employees Retirement System ("City of St. Clair Shores GERS") and Madison Investment Trust ("Madison") (collectively referred to herein as "Movants"), respectfully submit this memorandum of law in support of their motion for an order: (i) appointing the City of St. Clair Shores GERS and Madison as Co-Lead Plaintiffs in this action and (ii) approving Movants' selection of the law firms of Chimicles & Tikellis LLP ("C&T"), Labaton Sucharow LLP ("LS") and Wolf Haldenstein Adler Freeman & Herz LLP ("WHAFH") as Co-Lead Counsel ("Motion").[1]

Movants collectively hold over two million shares of stock in Inland Western Retail Real Estate Trust, Inc. ("Inland REIT" or the "Company"). Movants, which have collectively invested tens of millions of dollars in Inland REIT, seek to be appointed as Co-Lead Plaintiffs in this Action[2] challenging Inland REIT's acquisition of its affiliated-Advisor and Property Managers, which were wholly-owned directly and indirectly by officers and directors of Inland REIT, for $375 million worth of Inland REIT's stock ("Internalization"). Defendants, which include former and current officers and directors of the Company and affiliated individuals and entities, solicited Movants' and other shareholders' votes to approve the Internalization through a Schedule 14A Proxy Statement filed with the Securities and Exchange Commission ("SEC") on September 10, 2007 ("Proxy"). Plaintiff's Complaint alleges that the Proxy was materially false and misleading

---

[1]   This Motion is made pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934, ("Exchange Act") 15 U.S.C. § 78u-4(a)(3) (Section 21D"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure.
[2]   The complaint in this action, titled Class Action Complaint and Derivative Action For Violation of Federal Securities Laws and for Breaches of Fiduciary Duties and Contract (referred to herein as, "Complaint" or "Cmplt."), was filed in this Court on November 1, 2007. Unless otherwise indicated, capitalized terms used herein have the same meaning as set out in the Complaint.

1

in violation of the Exchange Act.[3]

The relief sought by this Motion is precisely what the framers of the PSLRA hoped to accomplish, *i.e.*, the appointment of institutional investors, such as Movants, to serve as lead plaintiff in class actions arising under the federal securities laws. Indeed, the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, of the belief that institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Rep. No. 104-369, at 34 (1995). The Movants, in addition to having invested tens of millions of dollars in the Company, have demonstrated the desire and ability to fulfill this leadership role by: (a) conducting an investigation into the facts leading up to the Internalization; (b) voting against the Internalization; and (c) selecting C&T, LS and WHAFH as its counsel, to be appointed as Co-Lead Counsel by the Court. In addition, City of St. Clair Shores GERS was the only shareholder to file a detailed, 88-page complaint challenging the false statements made in the Proxy.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Summary of Substantive Factual Allegations*

#### 1.    Parties

Defendant Inland REIT, with approximately 115,000 shareholders of record, is primarily engaged in the acquisition and ownership of real estate properties. From Inland REIT's inception in 2003 through November 15, 2007-- the date that the Internalization was

---

[3]    The Complaint also alleges that the Individual Defendants owed to Inland REIT's shareholders the fiduciary duties of loyalty, candor, and due care and that Defendants breached those duties by placing their own personal self-interests above the best interests of Inland REIT's shareholders, by, among other things, consummating the Internalization. (Cmplt. at ¶¶ 199-224).

2

consummated,[4] substantially all of Inland REIT's business was conducted through its Advisor and its Property Managers.[5]

On August 17, 2007, Defendants announced that they had entered into a Merger Agreement that proposed to internalize the functions of the affiliated Advisor and Property Managers with and into Inland REIT (the Internalization) in exchange for consideration to be paid to the Advisor's and Property Managers' owners, by conveyance of 37,500,000 shares of Inland REIT's common stock, valued at $375 million (the "Internalization Consideration") (*Id.* at ¶ 131). The Advisor and the Property Managers were owned directly and indirectly by some of the Individual Defendants, and all of the officers and a majority of the directors of the Advisor were also Inland REIT's officers and directors. (*Id.* at ¶¶ 26-46; *see* Chart at ¶ 25). These Individual Defendants wore multiple hats and had conflicting duties in their involvement with Inland REIT and its shareholders[6] and had material financial interests in the Internalization Consideration.[7]

Inland REIT's contracts with the Advisor and Property Managers contemplated the possibility of an internalization transaction and each provided that Inland REIT would have the right to acquire the Advisor and Property Managers from and after September 15, 2008 and May

---

[4]  On November 16, 2007, Inland REIT filed with the SEC an 8-K and press release announcing the closing of the Internalization on November 15, 2007.

[5]  The Advisor was responsible for the day-to-day operations of Inland REIT, including negotiating the acquisition of its properties, overseeing the Property Managers, administering its bookkeeping, accounting and legal functions, investor relations and consulting with the Board of Directors on policy decisions. (Cmplt. ¶ 27). The Property Managers provided Inland REIT with property management services (such as rental, leasing, operation and management services), including preparing a monthly income report, budget variance report and annual operating budget, for each property. (*Id.* ¶¶ 38, 41, 44).

[6]  The Individual Defendants include Daniel Goodwin, Robert Parks, Brenda Gujral, and Steven Grimes. *See* Cmplt. ¶¶ 53-56, 61-71, and 94-104, for allegations which detail the Individual Defendants' direct involvement with the wrongdoings alleged in the Complaint and the multitude of conflicts that prevented each Individual Defendant from acting in the shareholders' best interests.

[7]  Upon consummation of the Internalization, Defendants Parks, Gujral and Grimes received Inland REIT stock worth approximately $6.8 Million, $1.3 Million, and $380,000, respectively. (Cmplt. ¶¶ 56, 63, 66, 68).

3

15, 2008, respectively, pursuant to a set formula ("Purchase Options"), which could have yielded, as compared to the Internalization transaction, a more favorable result for Inland REIT and its shareholders. It is against this backdrop-- where the Purchase Options were set to become ripe within one year-- that Defendants proposed the Internalization to circumvent these provisions.

### 2.    The Proxy.

On September 10, 2007, Defendants disseminated to Inland REIT's shareholders the Proxy, which solicited Movants' and other shareholders' votes to approve the Internalization. The Complaint alleges that the Proxy was materially false and misleading in violation of federal securities laws, including Sections 14(a) and 20 of the Exchange Act and Rule 14a-9 promulgated thereunder ("Sections 14(a) and 20"). (Cmplt. ¶¶ 10, 145-198). Specifically, the Complaint alleges that the Proxy misrepresented or omitted material and meaningful facts that a reasonable shareholder would consider important in deciding how to vote on the Proxy and Internalization, including that:

(a)    the financial statements included in the Proxy, which purported to support the fees historically paid to the Advisor and Property Managers and the price to be paid in the Internalization, were false and misleading.

(b)    excessive fees had been paid to the Advisor and Property Managers which artificially distorted their earnings and, therefore, their financial and operating results, which, in turn, provided the purported justification for the $375 million Internalization Consideration.

(c)    the Internalization was timed to evade the Purchase Options, which were in place to protect Inland REIT and its shareholders from overreaching by their fiduciaries, and which would have provided consideration to the Advisor and Property Managers in an amount far less than $375 million.

(d)     William Blair, which assisted Defendants in formulating, negotiating and recommending the Internalization, also served as a "financial advisor" and rendered an inherently flawed, misleading "opinion" that the Internalization Consideration was fair, from a financial point of view, to the shareholders.

The shareholder vote on the Proxy occurred on November 13, 2007, and the Company secured, via the false and misleading Proxy, shareholders' approval of the Internalization. Movants and the other members of the proposed Class are Inland REIT shareholders who were entitled to vote on the Proxy that violated the federal securities laws and who were affected by the votes of other shareholders. As of November 15, 2007, the Internalization was consummated and Inland REIT became a self-managed entity.

### B.     Procedural Background.

After extensive factual and legal investigation, Plaintiff City of St. Clair Shores GERS commenced this action on November 1, 2007.   The Complaint charges Defendants with violations of the federal securities laws, including Sections 14(a) and 20 of the Exchange Act.

On November 5, 2007, City of St. Clair Shores GERS's counsel, the undersigned law firms of C&T, LS and WHAFH, published, via PRNewswire, the statutorily required notice of pendency of plaintiff's case.  *See* Exhibit A to the accompanying Declaration of Kimberly M. Donaldson ("Donaldson Decl.").

### C.     The Movants

City of St. Clair GERS and Madison collectively purchased 2,054,363.073 shares of Inland REIT stock, for a total investment of $20,617,557.25. *See* Certifications of City of St. Clair Shores GERS and Madison, Exhibits B and C, respectively, to the Donaldson Decl. Individually, City of St. Clair Shores GERS purchased, on June 28, 2004, 57,321.0430 shares of

5

Inland REIT stock, and continues to own these shares. As of January 2, 2007, Madison held 1,997,042.03 shares of Inland REIT stock. On August 31, 2007, the record date for determining stockholders entitled to vote on the Proxy, Madison held 1,897,557.33 shares. As of the time of filing this motion, no other shareholder of Inland REIT has filed a complaint with this Court or has moved to be appointed lead plaintiff.

Movants have a significant financial interest in the outcome of the actions and should be appointed as Co-Lead Plaintiffs.

## III.   ARGUMENT

Movants satisfy each of the requirements set forth in the PSLRA and are qualified to be appointed as Co-Lead Plaintiffs. Movants also seek approval by this Court of its selection of Co-Lead Counsel.

### A.   *Movants Should Be Appointed As Co-Lead Plaintiffs For The Class In The Action*

#### 1.   The Procedure Mandated By The PSLRA For Appointment Of Lead Plaintiff

Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3) establishes a procedure for the appointment of a "lead plaintiff" in "each private action arising under the [1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." It provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the person that:

> (aa)  has either filed the complaint or made a motion in response to a notice. . . ;
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I); *Topaz Realty v. Northfield Labs., Inc.*, 2006 U.S. Dist. LEXIS 77613, *9 (N.D. Ill. June 19, 2006); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005); *In re Neopharm, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 5814, *4-5 (N.D. Ill. Apr. 7, 2004). Furthermore, within ninety days after the publication of the notice of pendency, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." Section 21D(a)(3)(B)(i).

Movants respectfully submit that they should be appointed as Co-Lead Plaintiffs by the Court as they are the most adequate plaintiffs and are the most capable of adequately representing the interests of the class members.

### 2. Movants Satisfy The Lead Plaintiff Requirements Of The PSLRA

#### a. *Movants Have Complied With The Procedural Requirements Of The PSLRA.*

On November 5, 2007, undersigned counsel for plaintiff in the above-captioned action published a notice of pendency pursuant to Sections 21D(a)(3)(A)(i) and (a)(3)(B)(iii)(I)(aa) announcing that a securities class action had been filed against Defendants and advising Inland REIT's shareholders that they had until January 4, 2007 to file a motion to be appointed as Lead Plaintiff. *See* Donaldson Decl., Exhibit A.

City of St. Clair Shores GERS filed with its Complaint, and again with this Motion, its sworn PSLRA certification prepared pursuant to Section 21D(a)(2)(A), attesting that it reviewed the complaint and authorized its filing; is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial; has not, during the 3-year period preceding the date of its certification, sought to serve, or served, as a representative party on behalf of the class; and, will not accept any payment for serving as a representative party on

behalf of a class beyond its *pro rata* share of any recovery, except as ordered or approved by the court. *See* Donaldson Decl., Exhibit B. Madison also submits herewith a sworn PSLRA certification attesting that it too is willing to serve as a representative party on behalf of the Class and provide testimony at deposition and trial, if necessary. *See* Donaldson Decl., Exhibit C.

Movants, having published the requisite PSLRA notice and executed their respective certifications, therefore satisfy the procedural requirements of the Lead Plaintiff provisions of the PSLRA.

### b. *Movants Have The Largest Financial Interests In The Relief Sought By The Class*

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class . . ." Section 21D(a)(3)(B)(iii)(I)(bb); *see Takara Trust*, 229 F.R.D. at 579. Courts, in applying the PSLRA, have noted that the "largest financial interest" standard should be viewed broadly in terms of (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *Mayo v. Apropos Tech., Inc.*, 2002 U.S. Dist. LEXIS 1924, *10 (N.D. Ill. Feb. 6, 2002); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, *17 (N.D. Ill. Aug. 6, 1997).

For claims arising under Sections 14(a) and 20, courts will look to the number of shares held by the movant on the record date (the date on which holders of record of the subject company's stock were entitled to receive notice of, and to vote, on the proxy). *Zucker v. Zoran Corp.*, 2006 U.S. Dist. LEXIS 93469, *8 (N.D. Cal. Dec. 11, 2006) (potential recovery under Section 14(a) increases with the number of shares a plaintiff bought; thus, the candidate with the largest potential recovery would be the candidate who had bought the largest number of shares);

8

*In re Reliance Acceptance Group, Inc. Sec. Litig.*, 1998 WL 388260, \*3 (W.D. Tex. June 29, 1998) (Court appointed as lead plaintiff the movant with the most shares held on the proxy record date).

City of St. Clair Shores GERS and Madison collectively held 1,954,878.373 shares as of August 31, 2007, the record date for determining stockholders entitled to receive, and vote on, the Proxy. *See* Certifications of St. Clair Shores GERS and Madison, Exhibits B and C, respectively, to the Donaldson Decl. Individually, City of St. Clair Shores GERS held, as of August 31, 2007, 57,321.0430 shares of Inland REIT stock purchased at $10.00 per share, for a total investment of $573,210.43. Madison held, as of August 31, 2007, 1,308 shares of Inland REIT stock purchased at $ 7.25 per share, 3,415.81 shares purchased at $10.00 per share, 76,175.26 shares purchased pursuant to a tender offer at a price of $ 9.76 per share, and 1,816,657.70 shares purchased pursuant to a tender offer at a price of $10.05 per share, for a total investment of $19,044,525.59. In seeking appointment as Co-Lead Plaintiff, the Board of Trustees of City of St. Clair Shores GERS is upholding its fiduciary duties to its public employees who are participants in their retirement systems. The officers of Madison are likewise upholding their fiduciary duties to their investors by seeking to protect their interests. It is appropriate, therefore, for these shareholders to be appointed as Co-Lead Plaintiffs. Moreover, the Movants were entitled to vote on the Proxy. As no other persons have sought to be appointed lead plaintiff as of the filing of this Motion, Movants have the largest financial interest in the relief sought. *See Winn v. Symons Int'l Group*, 2001 U.S. Dist. LEXIS 3437, \*8 (S.D. Ind. Mar. 21, 2001).[8]

---

[8]    Importantly, the legislative history of the PSLRA demonstrates that its intent was to encourage institutional investors to serve as lead plaintiff. The Senate Report on the PSLRA indicates: "The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts... Institutions with large stakes in class actions have much the same

9

Movants have demonstrated that they have very significant interests in the outcome of the Litigation, if not the largest financial interests in Inland REIT of all other putative class members.

### c. Movants Satisfy The Requirements Of Rule 23 Of The Federal Rules Of Civil Procedure

The PSLRA also provides that lead plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Section 21D (a)(3)(B)(iii)(I)(cc). In determining whether the prospective lead plaintiffs satisfy the requirements of Rule 23, a *prima facie* showing that the class members in question satisfy the requirements of Rule 23(a) is sufficient.[9] *Lax*, 1997 U.S. Dist. LEXIS 11866 at \*20 (a wide-ranging analysis under Rule 23 should be left for consideration of a motion for class certification). The Court's analysis should focus upon the issues of typicality and adequacy. *Takara Trust*, 229 F.R.D. at 580; *In re Bally Total Fitness Secs. Litig.*, 2005 U.S. Dist. LEXIS 6243,  16 (N.D. Ill. July 12, 2005); *In re Motorola*, 2003 U.S. Dist. LEXIS 12651, \*3 (N.D. Ill. July 16, 2003).

As part of this determination, the Court applies the following Rule 23 principles:  (1) Typicality:  whether the claims and defenses of the representative plaintiffs are typical of the claims and defenses of the class. This requirement is satisfied when a plaintiff's injury arises "out of the same event or practice or course of conduct that gives rise to the claims of other class members and its claims are based on the same legal theory." *Takara Trust*, 229 F.R.D. at 580 (internal citations omitted); and, (2) Adequacy:  whether plaintiff is represented by adequate counsel and has no claims that conflict with or are antagonistic to the class. *Id.*

interests as the plaintiff class generally." Senate Report No. 104-98, 104th Cong. 1st Sess. at 11 (1995); *see also In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651, at \*8-9 (Congress believed that the goals of the PSLRA could best be achieved if institutional investors served as lead plaintiffs).
[9]    Fed. R. Civ. P. 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

This interpretation is further supported by the PSLRA, which provides that the presumption in favor of appointing movants as lead plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff: "(aa) will not fairly and adequately protect the interest of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II).[10]

### 1.   Movants' Claims Are Typical

A movant satisfies the typicality requirement when his claims arises from the same events or course of conduct giving rise to the other class members' claims and is based on the same legal theory. *In re Bally Total Fitness Secs. Litig.*, 2005 U.S. Dist. LEXIS 6243 at *16; *Taubenfeld v. Career Educ. Corp.*, 2004 U.S. Dist. LEXIS 4363, *7 (N.D. Ill. 2004). Typicality exists even if there are some factual distinctions between the claims of the named plaintiff and those of other class members. *In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651, at *11. The typicality requirement is easily satisfied here, since Movants' circumstances are not "markedly different" and Movants' claims are based on the same legal theory upon which the claims of other class members will be based. Movants, like all other Class members, allege, *inter alia,* that Defendants violated the federal securities laws by disseminating a false and misleading Proxy, discussed in more detail above and in the Complaint. Additionally, Movants hold a substantial amount of Inland REIT's stock, were entitled to vote on the Proxy,[11] and have

---

[10]   This determination is a product of the Court's independent judgment and the Court may consider the pleadings, a movant's application and any other information the Court may require to be submitted, but not arguments made, if any, by other members of the purported plaintiff class. *In re Cendant Corp. Litig.*, 264 F.3d at 263-264.

[11]   Movants voted against the proposals set out in the Proxy. For a Section 14(a) claim, plaintiffs are not required to show subjective reliance and thus it is irrelevant whether they relied on the alleged misstatements or omissions, whether the plaintiffs voted for or against the transactions at issue and even whether they voted at all on the transaction. The Supreme Court has ruled that it is sufficient that the

been similarly damaged by the conduct set forth above in Section II.A and in the Complaint at ¶¶ 145-198. The interests of Movants and other Class members are closely aligned and Movants are, therefore, typical of the other members of the Class.

## 2.    Movants Are Adequate Representatives

A movant satisfies the adequacy requirement by establishing "(1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to ensure zealous advocacy; and (3) he is represented by competent, experienced counsel who will be able to prosecute the litigation vigorously." *In re Bally Total Fitness Secs. Litig.*, 2005 U.S. Dist. LEXIS 6243 at *16; *Taubenfeld*, 2004 U.S. Dist. LEXIS 4363, at *7-8.

There is no evidence of any antagonism or unique defenses that render Movants incapable of adequately serving as Co-Lead Plaintiffs. Neither is there any indication that Movants' claims conflict with those of the other Class members. Movants have demonstrated their adequacy to serve as Co-Lead Plaintiffs by evincing a strong desire to prosecute this action on behalf of the Class, and by showing that they are "willing" and "able" to "vigorously pursue the litigation on behalf of the class," *Roth v. Aon Corp.*, 238 F.R.D. 603, 607 (N.D. Ill. 2006). City of St. Clair Shores GERS filed a detailed, particularized complaint, and the Movants, collectively, have made this motion to be appointed Co-Lead Plaintiffs and have substantial investments in Inland REIT. Movants are, therefore, extremely motivated to vigorously pursue the claims in this Action.

---

alleged misstatement or omission was material. What was done as a result of that defective information is not a part of any action under §14(a). *See City Partnership Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 587 (D. Colo. 2002); *see Hershfang v. Knotter*, 562 F.Supp. 393, 398 (E.D. Va.1983), *aff'd* 725 F.2d 675 (4th Cir.1984)(holding that a plaintiff may assert a § 14(a) claim even in the absence of any subjective reliance on the allegedly false and misleading proxy and stating: "[T]he nature of a §14(a) violation is broad: 'the deception of others by the alleged material omissions in the ... proxy statement may have caused damage to plaintiff by misleading others into voting to approve the [transaction] at an allegedly unfair price'").

12

Finally, the Movants have selected and retained counsel "qualified, experienced and able to conduct the litigation" and highly experienced in prosecuting securities class actions such as this to represent it. *See* Section B, *infra.*    For these reasons, Movants satisfy the adequacy requirement. *See Roth,* 238 F.R.D. at 607.

## B.    *The Court Should Approve Movants' Choice Of Counsel*

The PSLRA vests authority in the Lead Plaintiffs to select and retain counsel, subject to approval of the Court.  15 U.S.C. §78u-4(a)(3)(B)(v); *Topaz Realty,* 2006 U.S. Dist. LEXIS 77613 at * 14.  In the present case, Movants have retained C&T, LS and WHAFH, which firms Movants seek to be appointed as Co-Lead Counsel.[12]  C&T, LS and WHAFH are leading class action law firms, with national practices that specialize in complex litigation with an emphasis on securities, antitrust and consumer cases.  These firms have successfully litigated cases involving such issues as stock price manipulation, false and misleading SEC filings, fraudulent REIT and limited partnership offerings and proxy solicitations, among others.  Since the passage of the PSLRA, the firms have placed special emphasis on the successful representation of public and private institutional investors as "Lead Plaintiffs" and have been appointed as lead counsel in numerous cases brought after the enactment of the PSLRA. *See* Firm Resumes, Donaldson Decl., Exhibits D, E and F.

Importantly, proposed Co-Lead Counsel are uniquely situated to best prosecute these claims.  Significantly, WHAFH maintains an office and practices in this District, and will serve in a local counsel capacity, in addition to its Co-Lead Counsel role.  Moreover, these firms have unmatched experience litigating class claims involving privately held REITs and other privately syndicated real estate investments.  Additionally, these three firms have had success litigating

---

[12]  Co-Lead Counsel will associate with the law firm of VanOverbeke Michaud & Timmony, P.C., a preeminent law firm which represents shareholders throughout the United States in litigation of securities fraud, and derivative and corporate governance actions.

13

federal securities claims together.

In November, 2002, a trial team of C&T and LS, led by Nicholas E. Chimicles, conducted a six-week securities fraud jury trial involving proxy violations and fraud in the federal district court in Los Angeles that resulted in a verdict of $185 million in favor of a class of 18,000 real estate investors. *In re Real Estate Associates Limited Partnership Litigation*, CV 98-7035 DDP, U.S. District Court, Central District of California ("REAL Litigation").[13]  Not only was this verdict among the top 10 verdicts of 2002, it is the largest plaintiffs' verdict in any securities class action in the history of the PSLRA.

Recently, the team of C&T, as Lead Litigation Counsel, and LS and WHAFH as Co-Lead Counsel, combined their collective resources to prosecute *CNL Hotels & Resorts Inc. Securities Litigation*, Case No. 6:04-CV-1231 (M.D. FL)("*CNL Action*"), representing a state retirement system and over 100,000 investors in a federal securities law class action against the nation's second largest hotel real estate investment trust, CNL Hotels & Resorts, Inc. ("CNL"), and certain of its affiliates, officers and directors.  The *CNL Action* challenged the propriety and pricing of a proposed merger between CNL and its affiliated outside advisor that was set to cost the investors and the Company over $300 million ("CNL Internalization"). The CNL Action also alleged that CNL raised over $3 billion from investors pursuant to false and misleading offering materials.  The *CNL Action* presented many similar facts and issues to those presented in this Action.

The *CNL Action* was settled by CNL entering into revised agreements in connection with the CNL Internalization which Plaintiffs estimate reduced the amount to have been paid by CNL

---

[13]  The jury verdict was ultimately reduced to a judgment, after post-trial motions, of $120 million, solely because of the court's determination that the jury awarded punitive damages in excess of California state law limits.  After post trial motions were decided and judgment entered, the case was settled for $ 83 million, an amount *greater* than compensatory damages set forth in the testimony of plaintiff's damages expert.

<u>and its stockholders in connection with the CNL Internalization by over $225 Million.</u>  On August 1, 2006, the Federal District Court in Orlando, Florida granted final approval of the Settlement of the *CNL Action,* noting that "Plaintiffs' counsel pursued this complex case diligently, competently and professionally" and "achieved a successful result."   The Court concluded that, **"a substantial benefit [was] achieved (estimated at approximately $225,000,000)" and "this lawsuit was clearly instrumental in achieving that result."**

In sum, these three firms have demonstrated to any adversary the willingness and capability to fully prosecute these cases and are uniquely positioned to provide the highest quality legal services to achieve the best results for Inland REIT's stockholders.  Thus, the Court may be assured that, by granting Movants' Motion, the Class will receive the highest caliber of legal representation.

## IV.    CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court: (i) appoint the City of St. Clair Shores GERS and Madison as Co-Lead Plaintiffs in the action; and (ii) approve Chimicles & Tikellis LLP, Labaton Sucharow LLP and Wolf Haldenstein Adler Freeman & Herz LLP to serve as Co-Lead Counsel.

Dated: January 4, 2008                          Respectfully submitted,

                                                 s/ Adam J. Levitt
                                                Adam J. Levitt
                                                WOLF HALDENSTEIN ADLER
                                                 FREEMAN & HERZ LLP
                                                55 West Monroe Street
                                                Chicago, Illinois 60603
                                                Telephone: (312) 984-0000
                                                Facsimile: (312) 984-0001
                                                Email: levitt@whafh.com

Nicholas E. Chimicles
Kimberly M. Donaldson
Kimberly L. Kimmel
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA  19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

Lawrence A. Sucharow
Joseph Sternberg
Aya Bouchedid
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

Lawrence P. Kolker
Alexandra R. Silverberg
WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600

Thomas Michaud
Jack Timmony
VANOVERBEKE MICHAUD &
   TIMMONY, P.C.
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578- 1200

*Counsel for Movants*

16