# Exhibit B

Our charter authorizes and directs us to indemnify or pay or reimburse reasonable expenses in advance of a final disposition of a proceeding, to the maximum extent permitted by Maryland law in effect from time to time, our agents which includes our Business Manager/Advisor or its affiliates.

We may, with the approval of our Board or any duly authorized committee thereof, provide such indemnification and advancement of expenses to our Business Manager/Advisor. The indemnification and payment of expenses provided in our charter shall not be deemed exclusive of or limit in any way other rights to which our Business Manager/Advisor seeks indemnification or payment of expenses may be or may become entitled under any bylaw, regulation, insurance, agreement or otherwise.

Our charter further authorizes the purchase and maintenance of insurance on behalf of our Business Manager/Advisor or its affiliates against any liability asserted against it and incurred by it in such capacity, or arising out of its status as such, whether or not it is indemnified against such liability under the provisions of our charter.

### Shares of our Stock and Other Amounts Potentially Payable with Respect to the Merger

In connection with the Merger, the stockholders of our Business Manager/Advisor and our Property Managers will receive our common stock. The allocation of shares we are issuing in the Merger was determined by our Business Manager/Advisor and our Property Managers. Immediately prior to the Merger, we will pay any fees accrued under such contractual arrangements for services rendered through the effective time of the Merger.

### Interest of Certain Persons in Matters to be Acted Upon

Certain of our directors and officers have interests in connection with the Merger, our Property Managers and our Business Manager/Advisor that are different from, and may potentially conflict with, our interests. In particular, all of our current executive officers and two of our current directors are also executive officers and/or directors of Inland. We have entered into a non-compensated consulting agreement, that will become effective upon the closing, with Mr. Parks, our current chairman and director. Mr. Parks and Ms. Gujral, our chief executive officer and a director, are stockholders of our Property Managers and TIGI, the ultimate owner of our Business Manager/Advisor. Mr. Grimes, our current Treasurer and Principal Financial Officer, is a stockholder of one or more of our Property Managers. As such, these individuals will receive shares of our common stock as consideration in the Merger. Messrs. Parks, Grimes and Ms. Gujral will receive shares of our common stock valued at approximately $6.8 million, $380,000 and $1.3 million, respectively, as consideration in the Merger.

We have also entered into employment agreements with Messrs. O'Hanlon, Grimes, Garrison and Byrne that will become effective upon the closing. See "– Ancillary Agreements – Employment Agreements" for a further discussion of these employment agreements.

### Opinion of the Financial Advisor

William Blair acted as financial advisor to the special committee in connection with the Merger. As part of its engagement, the special committee requested that William Blair render an opinion as to whether the Merger consideration, to be paid by us was fair, from a financial point of view, to us and our stockholders. On August 14, 2007, William Blair delivered its oral opinion to the special committee and subsequently confirmed in writing that, as of August 14, 2007 and based upon and subject to the assumptions and qualifications stated in its opinion, the Merger consideration was fair, from a financial point of view, to us and our stockholders.

THE FULL TEXT OF WILLIAM BLAIR'S WRITTEN OPINION, DATED AUGUST 14, 2007, IS ATTACHED AS APPENDIX B TO THIS PROXY STATEMENT AND INCORPORATED INTO THIS PROXY STATEMENT BY REFERENCE. WE ENCOURAGE YOU TO READ THE ENTIRE OPINION CAREFULLY TO LEARN ABOUT THE ASSUMPTIONS MADE, PROCEDURES FOLLOWED, MATTERS CONSIDERED AND LIMITS ON THE SCOPE OF THE REVIEW UNDERTAKEN BY WILLIAM BLAIR IN RENDERING ITS OPINION. WILLIAM BLAIR'S OPINION RELATES ONLY TO THE FAIRNESS, FROM A FINANCIAL POINT OF VIEW, TO US AND OUR STOCKHOLDERS OF

**THE CONSIDERATION TO BE PAID BY US IN THE MERGER AND DOES NOT ADDRESS ANY OTHER ASPECT OF THE PROPOSED MERGER OR ANY RELATED TRANSACTION, AND DOES NOT CONSTITUTE A RECOMMENDATION TO YOU AS TO HOW YOU SHOULD VOTE WITH RESPECT TO THE MERGER AGREEMENT OR THE MERGER. WILLIAM BLAIR DOES NOT EXPRESS AN OPINION AS TO THE FAIRNESS OF THE MERGER CONSIDERATION TO THE ADVISOR, OR THE PROPERTY MANAGERS OR THEIR STOCKHOLDERS AS THOSE TERMS ARE DEFINED IN THE OPINION. WILLIAM BLAIR'S OPINION DID NOT ADDRESS THE MERITS OF THE UNDERLYING DECISION BY US OR THE SPECIAL COMMITTEE OR THE BOARD TO ENGAGE IN THE MERGER OR OTHER BUSINESS STRATEGIES OR TRANSACTIONS CONSIDERED BY THE BOARD OR THE SPECIAL COMMITTEE, OR THE EFFECT OF ANY SUCH TRANSACTION, OR THE SPECIAL COMMITTEE'S AND THE BOARD'S DECISION TO PROCEED WITH THE MERGER. THE FOLLOWING SUMMARY OF WILLIAM BLAIR'S OPINION IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE OPINION.**

William Blair provided the opinion described above for the information and assistance of the special committee and the Board in connection with evaluating the Merger consideration. The terms of the Merger Agreement and the amount and form of the Merger consideration, however, were determined through negotiations between us and the Business Manager/Advisor and the Property Managers, and were unanimously approved by the special committee and the Board. Although William Blair provided financial advice to the special committee during such negotiations, William Blair did not recommend any specific exchange ratio or other form of consideration to us or that any specific exchange ratio or other form of consideration constituted the only appropriate consideration for the proposed Merger. The William Blair opinion is addressed to the special committee and the Board for their use in evaluating the terms of the Merger Agreement and the amount and form of the Merger consideration. The William Blair opinion is included in this proxy statement so you can assess the role of such opinion in the special committee's and our Board's development of its recommendation to you.

In connection with its opinion, William Blair examined or discussed, among other things:

- the Merger Agreement dated August 14, 2007;

- our audited historical financial statements and those of our Business Manager/Advisor and Property Managers for the two fiscal years ended December 31, 2005 and 2006;

- our unaudited financial statements and those of our Business Manager/Advisor and Property Managers for the six months ended June 30, 2006, and 2007;

- certain internal business, operating and financial information and forecasts of us, our Business Manager/Advisor and Property Managers, or the Forecasts, for fiscal years 2007 through 2012 prepared by our senior management and the senior management of our Business Manager/Advisor and Property Managers;

- information regarding the strategic, financial and operational benefits anticipated from the Merger prepared by our senior management;

- information regarding the amount and timing of cost savings and related expenses which our senior management expects will result from the Merger, the "Expected Cost Savings";

- the pro forma impact of the Merger on funds from our operations per share (before and after taking into consideration any Expected Cost Savings);

- information regarding publicly available financial terms of certain other business combinations William Blair deemed relevant;

- our financial position and operating results and those of our Business Manager/Advisor and Property Managers compared with those of certain other publicly traded companies William Blair deemed relevant; and

- certain other publicly available information of us and that of other publicly traded companies William Blair deemed relevant.

48

William Blair also held discussions with members of our senior management and the senior management of our Business Manager/Advisor and Property Managers to discuss the foregoing. William Blair also considered other matters, and conducted such other analyses, studies and investigations, which it deemed relevant to its inquiry, and appropriate under the circumstances for rendering its opinion, and took into account the accepted financial and investment banking procedures and considerations that it deemed relevant.   William Blair was not requested to, nor did William Blair, solicit the interest of other parties in a possible business combination transaction with us.

In rendering its opinion, William Blair assumed and relied, without independent verification, upon the accuracy and completeness of all the information examined by or otherwise reviewed or discussed with William Blair for purposes of its opinion, including without limitation the Forecasts provided by our senior management and the senior management of our Business Manager/Advisor and Property Managers. William Blair did not make or obtain an independent valuation or appraisal of the assets, liabilities or solvency of us, our Business Manager/Advisor or Property Managers. William Blair was advised by our senior management that the Forecasts and Expected Cost Savings examined by William Blair were reasonably prepared on bases reflecting the best estimates then available and judgments of our senior management and the senior management of our Business Manager/Advisor and Property Managers. In that regard, William Blair assumed, with the consent of the special committee, that (i) the Forecasts would be achieved in the amounts and at the times contemplated thereby and (ii) all of our material assets and liabilities (contingent or otherwise) and those of our Business Manager/Advisor and Property Managers were as set forth in each company's respective financial statements or other information made available to William Blair. William Blair expressed no opinion with respect to the Forecasts or Expected Cost Savings or the estimates and judgments on which they were based. William Blair was not provided with, nor did it otherwise review, any of our forecasts or the forecasts of our Business Manager/Advisor or Property Managers for periods after fiscal year 2012.

William Blair's opinion does not address the relative merits of the Merger as compared to any alternative business strategies that might exist for us or the effect of any other transaction in which we might engage. William Blair's opinion was based upon economic, market, financial and other conditions existing on, and other information disclosed to William Blair as of August 9, 2007. Although subsequent developments may affect its opinion, William Blair does not have any obligation to update, revise or reaffirm its opinion. William Blair relied, as to all legal and accounting and tax matters, on advice of our advisors and the advisors to the special committee.  William Blair assumed that the executed Merger Agreement would conform in all material respects to, and the Merger would be consummated on, the terms described in the Merger Agreement reviewed by it, without any amendment or waiver of any material terms or conditions. William Blair did not express any opinion as to the impact of the Merger on our solvency or viability or that of our Business Manager/Advisor or Property Managers.

The following is a summary of the material financial analyses performed and material factors considered by William Blair to arrive at its opinion. William Blair performed certain procedures, including each of the financial analyses described below, and reviewed with the special committee and the Board the assumptions upon which such analyses were based, as well as other factors. Although the summary does not purport to describe all of the analyses performed or factors considered by William Blair in this regard, it does set forth those considered by William Blair to be material in arriving at its opinion.

William Blair performed certain financial procedures, including each of the financial analyses described below in order to evaluate the fairness of the Merger consideration, from a financial point of view to us and our stockholders (other than our Business Manager/Advisor, Property Managers and their equityholders).  As contemplated by the Merger Agreement, we will issue approximately 37.5 million shares in the Merger.  William Blair evaluated each of the following analyses independently and on an aggregate basis in its assessment of the fairness of the proposed transaction.

### *Valuation of Our Business Manager/Advisor and Property Managers*

*Selected Public Company Analysis.*  William Blair reviewed and compared certain financial information relating to our Business Manager/Advisor and Property Managers to corresponding financial information, ratios and public market multiples for certain publicly traded companies with operations in the real estate industry that William Blair deemed relevant. The following companies were selected by William Blair:

49