# EXHIBIT B



Financial Accounting Standards Board

# ORIGINAL PRONOUNCEMENTS

### As Amended

Statement of Financial Accounting Standards No. 57

Related Party Disclosures

Copyright © 2008 by Financial Accounting Standards Board. All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the Financial Accounting Standards Board.

FAS57

# Statement of Financial Accounting Standards No. 57
# Related Party Disclosures

**STATUS**

Issued: March 1982

Effective Date: For fiscal years ending after June 15, 1982

Affects: No other pronouncements

Affected by: Paragraph 2 amended by FAS 96, paragraph 205(q), and FAS 109, paragraph 288(s)
Paragraph 24(f) amended by FAS 159, paragraph C2

Other Interpretive Pronouncement: FIN 45

AICPA Accounting Standards Executive Committee (AcSEC)

Related Pronouncement: SOP 75-2

## SUMMARY

This Statement establishes requirements for related party disclosures. The requirements of this Statement are generally consistent with those in Statement on Auditing Standards No. 6, *Related Party Transactions*, issued by the Auditing Standards Executive Committee of the American Institute of Certified Public Accountants.

**FAS57**  *FASB Statement of Standards*

# Statement of Financial Accounting Standards No. 57

# Related Party Disclosures

## CONTENTS

|  | Paragraph Numbers |
|---|---|
| Introduction | 1 |
| Standards of Financial Accounting and Reporting: |  |
|     Disclosures | 2–4 |
|     Effective Date and Transition | 5 |
| Appendix A: Background Information and Basis for Conclusions | 6–23 |
| Appendix B: Glossary | 24 |

## INTRODUCTION

1. The FASB has been asked to provide guidance on disclosures of transactions between **related parties**.[1] Examples of related party transactions include transactions between (a) a parent company and its subsidiaries; (b) subsidiaries of a common parent; (c) an enterprise and trusts for the benefit of employees, such as pension and profit-sharing trusts that are managed by or under the trusteeship of the enterprise's **management**; (d) an enterprise and its **principal owners**, management, or members of their **immediate families**; and (e) **affiliates**. Transactions between related parties commonly occur in the normal course of business. Some examples of common types of transactions with related parties are: sales, purchases, and transfers of realty and personal property; services received or furnished, for example, accounting, management, engineering, and legal services; use of property and equipment by lease or otherwise; borrowings and lendings; guarantees; maintenance of bank balances as compensating balances for the benefit of another; intercompany billings based on allocations of common costs; and filings of consolidated tax returns. Transactions between related parties are considered to be related party transactions even though they may not be given accounting recognition. For example, an enterprise may receive services from a related party without charge and not record receipt of the services.

## STANDARDS OF FINANCIAL ACCOUNTING AND REPORTING

### Disclosures

2. Financial statements shall include disclosures of material related party transactions, other than compensation arrangements, expense allowances, and other similar items in the ordinary course of business. However, disclosure of transactions that are eliminated in the preparation of consolidated or combined financial statements is not required in those statements.[2] The disclosures shall include:[3]

a. The nature of the relationship(s) involved
b. A description of the transactions, including transactions to which no amounts or nominal amounts were ascribed, for each of the periods for which income statements are presented, and such other

---

[1] Terms defined in the glossary (Appendix B) are in **boldface type** the first time they appear in this Statement.

[2] The requirements of this Statement are applicable to separate financial statements of each or combined groups of each of the following: a parent company, a subsidiary, a corporate joint venture, or a 50-percent-or-less owned investee. However, it is not necessary to duplicate disclosures in a set of separate financial statements that is presented in the financial report of another enterprise (the primary reporting enterprise) if those separate financial statements also are consolidated or combined in a complete set of financial statements and both sets of financial statements are presented in the same financial report.

[3] In some cases, aggregation of similar transactions by type of related party may be appropriate. Sometimes, the effect of the relationship between the parties may be so pervasive that disclosure of the relationship alone will be sufficient. If necessary to the understanding of the relationship, the name of the related party should be disclosed.

information deemed necessary to an understanding of the effects of the transactions on the financial statements

c. The dollar amounts of transactions for each of the periods for which income statements are presented and the effects of any change in the method of establishing the terms from that used in the preceding period

d. Amounts due from or to related parties as of the date of each balance sheet presented and, if not otherwise apparent, the terms and manner of settlement

e. The information required by paragraph 49 of FASB Statement No. 109, *Accounting for Income Taxes.*

3. Transactions involving related parties cannot be presumed to be carried out on an arm's-length basis, as the requisite conditions of competitive, free-market dealings may not exist. Representations about transactions with related parties, if made, shall not imply that the related party transactions were consummated on terms equivalent to those that prevail in arm's-length transactions unless such representations can be substantiated.

4. If the reporting enterprise and one or more other enterprises are under common ownership or management **control** and the existence of that control could result in operating results or financial position of the reporting enterprise significantly different from those that would have been obtained if the enterprises were autonomous, the nature of the control relationship shall be disclosed even though there are no transactions between the enterprises.

**Effective Date and Transition**

5. This statement shall be effective for financial statements for fiscal years ending after June 15, 1982. Earlier application is encouraged but is not required.

> The provisions of this Statement need not be applied to immaterial items.

*This Statement was adopted by the unanimous vote of the seven members of the Financial Accounting Standards Board:*

| Donald J. Kirk, *Chairman* | John W. March | Robert T. Sprouse |
| Frank E. Block | Robert A. Morgan | Ralph E. Walters |
| | David Mosso | |

**Appendix A**

**BACKGROUND INFORMATION AND BASIS FOR CONCLUSIONS**

6. This appendix discusses the factors that the Board considered significant in reaching the conclusions in this Statement. Individual Board members gave greater weight to some factors than to others.

7. AICPA Statement on Auditing Standards No. 6, *Related Party Transactions* (SAS 6), and interpretations of SAS 6 provide guidance on related party financial statement disclosures. However, authoritative auditing pronouncements are intended to direct the activities of auditors, not of reporting enterprises.

8. As part of Accounting Series Release No. 280, *General Revisions of Regulation S-X,* the Securities and Exchange Commission integrated the disclosure requirements of SAS 6 pertaining to related party transactions into Regulation S-X. Regulation S-X, however, applies only to enterprises subject to the filing requirements of the SEC.

9. Because guidance for related party disclosures was not included in the authoritative literature on generally accepted accounting principles, the Accounting Standards Division of the AICPA asked the FASB to consider providing such guidance in a Statement of Financial Accounting Standards.

10. As discussed in paragraphs 12–18, the Board believes that it is appropriate to establish standards that apply to all enterprises for disclosure of information

**FAS57**  *FASB Statement of Standards*

about related party transactions and certain control relationships. The Board has not undertaken a comprehensive reconsideration of the accounting and reporting issues discussed in SAS 6 and related interpretations thereof. The related party disclosure requirements contained in those documents have been extracted without significant change, except that this Statement does not address the issues pertaining to economic dependency. Other FASB projects may address issues related to those in this Statement, and the Board may reconsider the standards in this Statement when those projects are completed.

11. An Exposure Draft of a proposed Statement, *Related Party Disclosures,* was issued on November 6, 1981. The Board received 66 comment letters in response to that Exposure Draft. Certain of the comments received and the Board's consideration of them are discussed in paragraphs 19–22 of this appendix.

**Usefulness of Related Party Disclosures**

12. FASB Concepts Statement No. 2, *Qualitative Characteristics of Accounting Information,* examines the characteristics of accounting information that make it useful. That Statement concludes that for accounting information to be useful, it should be relevant (meaning that it has predictive or feedback value) and reliable (meaning that it has representational faithfulness, verifiability, and neutrality). That Statement further concludes that information about an enterprise increases in usefulness if it can be compared with similar information about other enterprises and with similar information about the same enterprise for some other period or point in time.

13. Accounting information is relevant if it is "capable of making a difference in a decision by helping users to form predictions about the outcomes of past, present, and future events or to confirm or correct expectations."[4] Relationships between parties may enable one of the parties to exercise a degree of influence over the other such that the influenced party may be favored or caused to subordinate its independent interests. Related party transactions may be controlled entirely by one of the parties so that those transactions may be affected significantly by considerations other than those in arm's-length transactions with unrelated parties. Some related party transactions may be the result of the related party relationship and without the relationship may not have occurred or may have occurred on different terms. For example, the terms under which a subsidiary leases equipment to another subsidiary of a common parent may be imposed by the common parent and might vary significantly from one lease to another because of circumstances entirely unrelated to market prices for similar leases.

14. Sometimes two or more enterprises are under common ownership or management control but do not transact business with each other. The common control, however, may result in operating results or financial position significantly different from that which would have been obtained if the enterprises were autonomous. For example, two or more enterprises in the same line of business may be controlled by a party that has the ability to increase or decrease the volume of business done by each. Disclosure of information about certain control relationships and transactions with related parties helps users of financial statements form predictions and analyze the extent to which those statements may have been affected by that relationship.

15. Reliability of financial information involves "assurance that accounting measures represent what they purport to represent."[5] Without disclosure to the contrary, there is a general presumption that transactions reflected in financial statements have been consummated on an arm's-length basis between independent parties. However, that presumption is not justified when related party transactions exist because the requisite conditions of competitive, free-market dealings may not exist. Because it is possible for related party transactions to be arranged to obtain certain results desired by the related parties, the resulting accounting measures may not represent what they usually would be expected to represent. Reduced representational faithfulness and verifiability of amounts used to measure transactions with related parties weaken the reliability of those amounts. That weakness cannot always be cured by reference to market measures because in many cases there may be no arm's-length market in the goods or services that are the subject of the related party transactions.

16. The Board believes that an enterprise's financial statements may not be complete without additional

---

[4]Concepts Statement 2, paragraph 47.
[5]Ibid., paragraph 81.

explanations of and information about related party transactions and thus may not be reliable. Completeness implies that ". . . nothing material is left out of the information that may be necessary to insure that it validly represents the underlying events and conditions."[6]

17. The Board also believes that relevant information is omitted if disclosures about significant related party transactions required by this Statement are not made. "Completeness of information also affects its relevance. Relevance of information is adversely affected if a relevant piece of information is omitted, even if the omission does not falsify what is shown."[7]

18. Information about transactions with related parties is useful to users of financial statements in attempting to compare an enterprise's results of operations and financial position with those of prior periods and with those of other enterprises. It helps them to detect and explain possible differences. Therefore, information about transactions with related parties that would make a difference in decision making should be disclosed so that users of the financial statements can evaluate their significance.

**Consideration of Comments on Exposure Draft**

19. Some respondents were troubled by the proposal in the Exposure Draft to require disclosure of only those transactions "that are necessary for users to understand the financial statements." They generally expressed the view that it would be difficult to apply such a criterion and that it was unclear how that criterion interacted with materiality judgments. In addition, some respondents also interpreted that language combined with the Exposure Draft's omission of the specific exclusion provided in SAS 6 for disclosure of compensation arrangements, expense allowances, and other similar items in the ordinary course of business as a requirement that such items be disclosed. The Board does not intend to imply that disclosure of related party transactions and certain control relationships is a separate objective of financial reporting, nor does the Board intend to introduce a new concept of materiality. Rather, disclosure of related party transactions and certain control relationships is required solely for the purpose of enhancing the understanding of the financial statements and the fact that such matters have, or could have, an effect on the financial statements. Disclosure of compensation arrangements, expense allowances, and other similar items in the ordinary course of business is not necessary for a user to understand the financial statements. The standard has been revised accordingly.

20. The Exposure Draft would have prohibited representations to the effect that related party transactions were consummated on an arm's-length basis. While recognizing the difficulty in many situations of determining the terms on which a transaction might have occurred if the parties were unrelated, many respondents pointed out that certain related party transactions occur on terms available to unrelated parties or on terms established by regulatory agencies. They believe that representations as to the terms of a related party transaction should not be prohibited if they can be substantiated. The Board agreed, and the requirement (paragraph 3) has been modified accordingly.

21. SAS 6 and interpretations thereof call for disclosure of the nature of common control relationships if the controlling party has the ability to affect the reporting enterprise in a manner that could lead to significantly different operating results or financial position than if the enterprises were autonomous. The Exposure Draft would have gone beyond those requirements to require disclosure of all control relationships. Some respondents expressed doubt about the usefulness of some of the disclosures that would result. They indicated that the requirement would be burdensome particularly for closely held enterprises that might have numerous relationships with owners and their families, lenders, and possibly others that might be deemed to be "control." The Board agreed that requiring disclosure of all control relationships might be of limited usefulness. Accordingly, the requirement (paragraph 4) was revised to conform more closely to that discussed in SAS 6.

22. Several respondents asked the FASB to provide additional guidance on disclosures about economic dependency but did not provide information to define the issues involved, nor did they provide evidence as to why additional guidance is needed. Therefore, the Board concluded that issuance of this Statement should not be delayed to consider that issue.

23. The Board has concluded that it can reach an informed decision on the basis of existing information

---

[6]Ibid., paragraph 79.
[7]Ibid., paragraph 80.

without a public hearing and that the effective date and transition specified in paragraph 5 are advisable in the circumstances.

**Appendix B**

**GLOSSARY**

24. For purposes of this Statement, certain terms are defined as follows:

a. **Affiliate.** A party that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with an enterprise.
b. **Control.** The possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an enterprise through ownership, by contract, or otherwise.
c. **Immediate family.** Family members whom a principal owner or a member of management might control or influence or by whom they might be controlled or influenced because of the family relationship.
d. **Management.** Persons who are responsible for achieving the objectives of the enterprise and who have the authority to establish policies and make decisions by which those objectives are to be pursued. Management normally includes members of the board of directors, the chief executive officer, chief operating officer, vice presidents in charge of principal business functions (such as sales, administration, or finance), and other persons who perform similar policymaking functions. Persons without formal titles also may be members of management.
e. **Principal owners.** Owners of record or known beneficial owners of more than 10 percent of the voting interests of the enterprise.
f. **Related parties.** Affiliates of the enterprise; entities for which investments in their equity securities would, absent the election of the fair value option under FASB Statement No. 159, *The Fair Value Option for Financial Assets and Financial Liabilities,* be required to be accounted for by the equity method by the enterprise; trusts for the benefit of employees, such as pension and profit-sharing trusts that are managed by or under the trusteeship of management; principal owners of the enterprise; its management; members of the immediate families of principal owners of the enterprise and its management; and other parties with which the enterprise may deal if one party controls or can significantly influence the management or operating policies of the other to an extent that one of the transacting parties might be prevented from fully pursuing its own separate interests. Another party also is a related party if it can significantly influence the management or operating policies of the transacting parties or if it has an ownership interest in one of the transacting parties and can significantly influence the other to an extent that one or more of the transacting parties might be prevented from fully pursuing its own separate interests.