UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF ST. CLAIR SHORES GENERAL EMPLOYEES RETIREMENT SYSTEM and MADISON INVESTMENT TRUST, On behalf of Themselves and All Others Similarly Situated, and Derivatively On behalf of Inland Western Retail Real Estate Trust, Inc., <br><br>                    Plaintiff, <br><br> v. <br><br> INLAND WESTERN RETAIL REAL ESTATE TRUST, INC., INLAND REAL ESTATE INVESTMENT CORPORATION; THE INLAND GROUP, INC., INLAND WESTERN RETAIL REAL ESTATE ADVISORY SERVICES, INC., INLAND SOUTHWEST MANAGEMENT CORP., INLAND NORTHWEST MANAGEMENT CORP., INLAND WESTERN MANAGEMENT CORP., ROBERT D. PARKS, BRENDA G. GUJRAL, FRANK A. CATALANO, JR., KENNETH H. BEARD, PAUL R. GAUVREAU, GERALD M. GORSKI, BARBARA A. MURPHY, STEVEN P. GRIMES, DANIEL A. GOODWIN, ROBERT A. BAUM, G. JOSEPH COSENZA, KPMG LLP , AND WILLIAM BLAIR & COMPANY, L.L.C, <br><br>                    Defendants. | CASE NO. 07 C 6174 <br><br><br><br><br> **<u>JURY TRIAL REQUESTED</u>** |

**LEAD PLAINTIFFS' MEMORANDUM IN OPPOSITION TO WILLIAM BLAIR &
COMPANY L.L.C.'S MOTION TO DISMISS COUNTS I AND IV**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

I. INTRODUCTION ...................................................................................................1

II. PERTINENT FACTUAL BACKGROUND ...........................................................2

III. ARGUMENT ...........................................................................................................5

    A. The Amended Complaint States a Claim against William Blair under Section 14 and Rule 14a-9. ..................................................................................5

        *1. The Fairness Opinion Was Not Limited in its Use.* .....................................5

        *2. William Blair, as a Fairness Opinion Provider, Can Be Held Liable Under Section 14 and Rule 14a-9.* .............................................................7

        *3. Reliance on Management Does Not Relieve William Blair of Liability Under Section 14 and Rule 14a-9.* .............................................................8

        *4. The Amended Complaint Alleges that William Blair's Fairness Opinion was Objectively and Subjectively False.* .....................................................9

    B. The Amended Complaint States a Claim against William Blair for Aiding and Abetting Breaches of Fiduciary Duty. ..........................................................11

IV. CONCLUSION......................................................................................................11

# TABLE OF AUTHORITIES

*CASES*

*In re AOL Time Warner Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004).......10

*City P'ship Co. v. Lehman Bros.*, 344 F. Supp. 2d 1241 (D. Colo. 2004) ........................7

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) ........................9

*Freedman v. Value Health, Inc.*, 958 F. Supp. 745 (D. Conn. 1997) ........................6

*In re Global Crossing Ltd. Sec. Litig.*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003) ........................ 8-9

*HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC*, 517 F.3d 454 (7th Cir. Ill. 2008). ...8

*Herskowitz v. Nutri/System, Inc.*, 857 F.2d 179 (3d Cir. 1988) ........................ 7-8

*JPMorgan Chase & Co. Secs. Litig.*,
　　2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007) ........................ 6-7, 11

*Lewis v. Byrnes*, 538 F. Supp. 1221 (S.D.N.Y. 1982). ........................8

*Massey and Murrey v. Merrill Lynch and Co., Inc.*, 464 F.3d 642 (7th Cir. 2006) ................ 5-6, 11

*In re McKesson HBOC Secs. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........................6, 11

*In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706 (D. Del. 2000) ........................ 7-8

*In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480 (D. Del. 2001) ........................10

*Shurkin v. Golden State Vintners, Inc.*, 2005 U.S. Dist. LEXIS 39301 (D. Cal. 2005). ................9

*Stoneridge Investment Partners, LLC v. Scientific-Atlantic, Inc.*, 128 S. Ct. 761 (2008) ..............6

*Va. Bankshares v. Sandberg*, 501 U.S. 1083 (1991) ........................9

*Washtenaw County v. Wells REIT,* 2008 WL 2302679 (N.D. Ga. Mar. 31, 2008) ........................9

*OTHER*

15 U.S.C. § 78n(a) ........................7

17 C.F.R. § 240.14a-9(a) ........................7

Giuffra, *Investment Bankers' Fairness Opinions In Corporate Control Transactions*,
　　96 YALE L.J. 119 (1986) ........................9

Davidoff, *Fairness Opinions*, 55 AM. U. L. REV. 1557 (2006) ........................9

City of St. Clair Shores General Employees Retirement System and Madison Investment Trust ("Co-Lead Plaintiffs"), shareholders of Inland Western Retail Real Estate Trust, Inc. ("Inland REIT" or the "Company"), submit this Memorandum, and attached Exhibits, in Opposition to William Blair & Company L.L.C.'s ("William Blair") Motion to Dismiss Counts I and IV [Doc. 49] and Memorandum in Support thereof [Doc. 50] ("WB Memo.").

## I. INTRODUCTION.

To avoid liability, William Blair devalues its work product (a banker should just "rely on management and auditors"), grossly misstates the import of the Fairness Opinion and its inclusion in the Proxy (it was only supposed to be relied on by the Board), ignores its role and legal responsibilities ("Given the information [from Management] relied on [by William Blair] the fairness opinion is not false.") and seeks to disassociate itself from the consequences of its million dollar engagement. WB Memo at 2, 4-5. Trivializing the Fairness Opinion does not defeat Co-Lead Plaintiffs' legal claims against William Blair as asserted in the Amended Class Action Complaint [Doc. 38] ("Am. Cmplt.")[1]

William Blair's role was not limited to providing a Fairness Opinion. Beginning a year prior to the date of the Fairness Opinion, William Blair prepared valuations of the Advisor and Property Managers, participated in negotiating the Internalization and analyzed the consideration that Inland REIT was being asked to pay to those entities in the Internalization. Am. Cmplt. ¶¶ 50, 143-150. Once the Internalization was negotiated, William Blair also rendered its ostensibly independent "Fairness Opinion" which was included as part of the Proxy materials seeking shareholder approval of the Internalization. *Id.* at ¶¶ 151, 235. To solicit a favorable vote from shareholders, the Proxy emphasized William Blair's "independence" and the importance of the Fairness Opinion in the context of the self-dealing transaction. *Id.* at ¶ 217 (a), (c).

The Fairness Opinion was based on Inland REIT's, the Advisor's and Property Managers' financial statements. It was also based on William Blair's examination of purportedly comparable transactions. *Id.* at ¶¶ 235-255. These documents and the comparable transactions analysis contained serious red-flags about the stated financial operations of the Advisor and

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as in the Amended Complaint.

1

Property Managers. They demonstrated that the Advisor's and Property Managers' reported operations were financial and business impossibilities, and that the purported values of those entities were therefore unsupportable. *Id.* at ¶¶ 168-184. Disregarding the red-flags which established that the Internalization Consideration to be paid to the Property Managers and Advisor was grossly inflated and unjustified, William Blair expressly opined that the Internalization Consideration was, instead, "fair" to the shareholders. *Id.* at ¶ 235; WB Memo, pg. 3; Ex. 1A, Proxy Excerpt at ii-iii; Ex. 1B, Proxy Excerpt at 7.[2]

Based on these well-pled facts, William Blair cannot seek refuge from liability to the shareholders by simply concluding that its "reliance on management" renders its opinion "not false." If that were countenanced, a simple disclaimer would relieve advisors of any responsibilities and render their opinions utterly meaningless, while still being used in proxy solicitations to secure shareholders' approval of self-dealing transactions. William Blair cannot disassociate itself from its dual role in this Internalization which forms the basis of its liability under Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 14a-9 promulgated thereunder (Am. Cmplt. "Count I"), and for aiding and abetting Defendants' breaches of fiduciary duty (*id.*, "Count IV").

## II. PERTINENT FACTUAL BACKGROUND.[3]

On September 10, 2007 Inland REIT (at the direction of Inland REIT's directors, officers, affiliates and advisors, Am. Cmplt. ¶¶ 22, 28, 42, 83-85) filed a proxy solicitation statement ("Proxy") with the Securities and Exchange Commission ("SEC"). *Id.* ¶ 154. By means of the Proxy, Defendants secured shareholders' approval for Inland REIT to acquire affiliated entities (the "Internalization") that performed advisory and property management services for Inland REIT (the "Advisor" and the "Property Managers"). *Id.* at ¶¶ 152-157. The Advisor and Property Managers, which were wholly owned, directly or indirectly, by Inland REIT's officers,

---

[2] Exhibits 1A - 1D, attached hereto, are excerpts from the Proxy and have highlighted shading added to direct the Court's attention to pertinent language (referred to herein as "Ex. _, Proxy Excerpt at _")

[3] The facts recited here focus on Defendant William Blair's involvement, and do not unnecessarily repeat facts that are detailed in Co-Lead Plaintiffs' contemporaneous filings. *See* Section II, Plaintiffs' Memorandum in Opposition to the Non-KPMG/William Blair Defendants' Motion to Dismiss, filed August 21, 2008 ("Mem. in Opposition to IW Defs MTD").

directors and/or their affiliates, were acquired by Inland REIT in exchange for consideration valued at approximately $375 million ("Internalization Consideration"). *Id.* On November 13, 2007, the shareholders voted to approve the Internalization. *Id.* at ¶¶ 166-67. Two days later, the Internalization was consummated. *Id.*

In order to propose, secure shareholder approval of, and consummate this $375 million self-dealing transaction, Inland REIT, the Individual Defendants, the Advisor and Property Managers retained the assistance of legal and financial advisors. *Id.* at ¶ 143; Ex. 1C, Proxy Excerpt at 14. On June 16, 2006, a year and three months prior to the filing of the Proxy, the Special Committee hired Defendant William Blair, a firm offering investment banking services. *Id.* at ¶¶ 49-52; Ex. 1C, Proxy Excerpt at 15. Notwithstanding its 1-page recitation of purported "Facts" (WB Memo, pg. 3), William Blair's role with respect to Inland REIT and the Internalization was not limited to rendering a Fairness Opinion. Ex. 1C, Proxy Excerpt at 15-19.

William Blair was retained and ultimately paid $1 million[4] to: (a) participate in negotiating the possible Internalization; and (b) opine on the fairness of the consideration to be paid in connection with the Internalization. *Id.* at ¶ 143. Subsequent to its retention, William Blair:

- provided "preliminary comments on the financial analysis prepared by [] the financial advisors to the [Advisor and Property Managers]" (Ex. 1C, Proxy Excerpt at 15);
- "conduct[ed] due diligence and review[ed] materials and information provided by the [Advisor and Property Managers]" (*id.* at 16); and
- "provided additional perspective on the financial analysis prepared by [the Advisor's and Property Managers' financial advisor]" (*id.*).

Six months later, at a December 12, 2006 meeting, the Special Committee requested that William Blair: (a) "provide a preliminary valuation analysis of the [Advisor and Property Managers] and of [Inland REIT's] common stock..."; and, (b) "obtain additional due diligence information relating to the cost and services provided by the [Advisor and Property Managers]

---

[4] Pursuant to a letter agreement dated June 19, 2006, William Blair was paid a retainer fee of $100,000, and $550,000 upon the delivery of its Fairness Opinion. Am. Cmplt. ¶ 51. William Blair also received an additional fee of $350,000 upon consummation of the Internalization. *Id.*; Ex. 1D, Proxy Excerpt at 57.

3

compared to such services that could be provided by third-party service providers." Ex. 1C, Proxy Excerpt at 16; Am. Cmplt.¶¶ 143-144. Thereafter, on December 21, 2006, William Blair met with representatives of the Advisor and Property Managers to discuss "the potential advantages of internalization" and "the process for proceeding with negotiations . . ." *Id.* at ¶ 145; Ex. 1C, Proxy Excerpt at 16. Just three weeks later, on January 9, 2007 the Special Committee decided to "pursue further discussions regarding an internalization transaction." *Id.* at ¶¶ 146-47; Ex. 1C, Proxy Excerpt at 17.

On January 9, 2007, the Special Committee met with William Blair who provided its "preliminary financial analysis regarding the valuation" of the Advisor and Property Managers and its analysis of the consideration that Inland REIT might pay to internalize those entities. Am. Cmplt. ¶ 148; Ex. 1C, Proxy Excerpt at 17. Thereafter, William Blair continued to be intimately involved in valuation discussions and negotiations among all Defendants, including meeting with the Chair of the Special Committee, Defendant Goodwin (in his capacity as the Chairman of the owner of the Advisor) and the president of the Property Managers in January 2007 to discuss William Blair's valuation and other Internalization-related issues. *Id.* at ¶ 149. Ex. 1C, Proxy Excerpt at 17. By February 19, 2007, the Special Committee, Advisor and Property Managers preliminarily agreed to the Internalization Consideration. Am. Cmplt. ¶ 150.

On August 14, 2007, the Special Committee and its advisors reviewed the final terms of the Internalization and William Blair provided an oral and written opinion, which was incorporated into the Proxy, concerning ". . .THE FAIRNESS, FROM A FINANCIAL POINT OF VIEW, TO [THE REIT] **AND [ITS] STOCKHOLDERS** OF THE CONSIDERATION TO BE PAID BY [THE REIT] IN THE MERGER. . ." WB Memo pgs. 3-4 (Uppercase in original, emphasis added). The Fairness Opinion stated that the Internalization Consideration was fair, from a financial point of view, to Inland REIT's shareholders. Am. Cmplt. ¶ 151; Ex. 1A, Proxy Excerpt at ii-iii; Ex. 1B at 7; and WB Memo, Ex. A, Proxy Appendix B, Fairness Opinion at B-3.

William Blair's work was not perfunctory. William Blair utilized the Advisor and Property Managers' "audited historical financial statements" to derive its Fairness Opinion and range of purported value. *Id.* at ¶¶ 143-151; 235-36; 239-255. The financial statements reported that the Advisor and Property Managers incurred impossibly low (or, for the Advisor, non-

existent) levels of operating expenses. *Id.* at ¶¶ 168-184. Those unsupportable levels of operating expenses, which must have been subsidized, caused the Advisor's and Property Managers' earnings and value to be inflated. *Id.* Moreover, in its comparable analysis of other public companies and EBITDAs, William Blair was confronted with another red-flag – that the Advisor and Property Managers' EBITDAs were at unattainably high and incomparable levels. *Id.* at ¶¶ 243-247. William Blair had just conducted months of due diligence on the Property Managers and the Advisor, their businesses and financial statements, and also obtained due diligence information relating to the cost and services provided by third-party service providers. Ex. 1C, Proxy Excerpt at 16. Despite this, faced with the "anomalies" in the Advisor's and Property Managers' financial statements (which are not now substantively challenged in William Blair's Motion), William Blair argues that it was entitled to accept "management's" information, and render a false Fairness Opinion. William Blair's conduct in issuing a false Fairness Opinion is actionable under federal and state laws.

## III. ARGUMENT[5]

### A. The Amended Complaint States a Claim against William Blair under Section 14 and Rule 14a-9.

#### *1. The Fairness Opinion Was Not Limited in its Use.*

As a basis for the dismissal of Count I, William Blair asserts that advisors may limit those to whom a fairness opinion is addressed. WB Memo, pgs. 2-3; 9-10. Even if that were so, here, the Fairness Opinion was not similarly limited. It was, instead, specifically and expressly addressed to Inland REIT's shareholders. Am. Cmplt. ¶ 151; Ex. 1A, Proxy Excerpt at ii-iii; Ex. 1B at 7; and WB Memo, Ex. A, Proxy Appendix B, Fairness Opinion at B-3.

*Massey and Murrey v. Merrill Lynch and Co., Inc.*, 464 F.3d 642, 650 (7th Cir. 2006), relied on by William Blair, does not support their position. In *Massey,* the court affirmed the district court's dismissal of the complaint because the *Massey* plaintiffs failed to allege that Merrill Lynch made any misrepresentations to them *directly as individual shareholders*. *Id.* In *Massey* the complaint asserted claims on behalf of the *company* for a fairness opinion rendered

---

[5] Plaintiffs' Mem. in Opposition to IW Defs MTD, Section III, addresses the applicable standards of review for a motion to dismiss, and, Section IV addresses applicable legal standards under Section 14.

*only* to the *company*. *Id*. The *Massey* fairness opinion did not address whether the transaction was fair to shareholders: "Merrill Lynch will render [a written] opinion . . . as to whether the consideration . . . is fair to the Company from a financial point of view." *See*, Exs. 2A & 2B, hereto, Merrill Lynch Retention Agreement (pg. 1, 2nd paragraph) and Opinion (pg. 3, last paragraph), Exhibits to *Massey* Complaint [Doc. 1], Case No. 1:04-cv-01049 (USDC SD Ill.). The Amended Complaint does not suffer from the same infirmity. Am. Cmplt. ¶¶ 294-95, 299.[6]

When a fairness opinion is specifically directed to shareholders, as was the fairness opinion at issue here and in *JPMorgan Chase & Co. Secs. Litig.*, 2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007), courts will address whether plaintiffs have sufficiently pled causes of action on behalf of shareholders under the federal securities laws against the provider of those fairness opinions and against the company, its officers and directors. *JPMorgan*, 2007 U.S. Dist. LEXIS 93877 at **7, 31-32; *Freedman v. Value Health, Inc.*, 958 F. Supp. 745, 753 (D. Conn. 1997)(Shareholder plaintiffs "adequately alleged that the fairness opinion was misleading."); *In re McKesson HBOC Secs. Litig.*, 126 F. Supp. 2d 1248, 1264-1265 (N.D. Cal. 2000)(Court tested the sufficiency of shareholders' securities law claims asserted against the fairness opinion provider who opined that the transaction was "fair, from a financial point of view, to the shareholders." Court noted, "Particularly in the context of a proxy solicitation, it is not unreasonable to hold a professional investment bank to a standard of reasonable care in issuing a fairness opinion that will be relied upon by a company's shareholders.").

Especially in the context of this self-dealing transaction (Am. Cmplt. ¶¶ 2, 19, 152-167) involving an entity whose stock has never been listed on any securities exchange (*id. at* ¶¶ 16-17) and, therefore, is not subject to any independent market oversight, William Blair's Fairness Opinion was the only potential (purportedly) independent source that shareholders could look to

---

[6] Similarly, in *Stoneridge Investment Partners, LLC v. Scientific-Atlantic, Inc.*, 128 S.Ct. 761 (2008) (cited in WB Memo, p. 10), the Supreme Court addressed "scheme liability" in the context of a Section 10(b) claim under the Exchange Act of 1934. The *Stoneridge* court held that "investors cannot be said to have relied upon any of respondents' deceptive acts in the decision to purchase or sell securities...." This conclusion has no bearing on the Amended Complaint, which does not allege scheme liability but alleges a specific false statement by William Blair (*i.e.*, the Fairness Opinion) directed to the shareholders voting on the Proxy. William Blair's complete reliance upon inflammatory rhetoric and inapposite cases obfuscates the relevant issues and highlights the weakness of its argument.

in the Proxy. It was intended and expected that the Fairness Opinion would be communicated to shareholders in determining how to vote on the Internalization. Ex. 1A, Proxy Excerpt at ii-iii; Am. Cmplt. ¶ 217 (a)(*quoting* Proxy: *"Because of the related-party nature of the proposed Merger*, our Board formed a Special Committee [which]. . . retained *independent* legal and financial advisors [and] . . . obtained a fairness opinion from its independent financial advisor, William Blair . . .").* (Emphasis added). Because of this and because the Fairness Opinion was expressly directed to shareholders, the Fairness Opinion was not limited and William Blair cannot rely on *Massey* as a basis for the dismissal of Count I.

### 2. *William Blair, as a Fairness Opinion Provider, Can Be Held Liable Under Section 14 and Rule 14a-9.*

Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder, strictly prohibit the inclusion of false or misleading material in, and omissions which render the material false or misleading from, proxy statements. 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a). William Blair's efforts to disclaim liability notwithstanding, a financial advisor can be liable for a violation of Rule 14a-9.

William Blair's position that it is not soliciting proxies and, therefore, cannot be liable under Section 14(a), is unsupported by any caselaw; not a single opinion is cited for this proposition. WB Memo at pgs. 8-10. In fact, William Blair's claims are directly contradicted by recent caselaw. "An investment banking firm issuing a fairness opinion that it knows will be used for proxy solicitation and relied on by voting constituents *may be deemed engaged in proxy solicitation.*" *City P'ship Co. v. Lehman Bros.*, 344 F. Supp. 2d 1241, 1246 (D. Colo. 2004) (*citing Herskowitz v. Nutri/System, Inc.*, 857 F.2d 179 (3d Cir. 1988)); *JPMorgan*, 2007 U.S. Dist. LEXIS 938779 (Violations of the federal securities laws relating to a financial advisor's fairness opinion that was directed to shareholders in a proxy were adequately pled).

Similarly, in *In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 728 (D. Del. 2000), plaintiffs alleged that the financial advisors were liable under § 14(a) of the Exchange Act for knowingly or recklessly making material misstatements in a proxy statement. One financial advisor asserted that it could not be held liable under Rule 14a-9 because it was an independent advisor that did not solicit proxies, and because it did not benefit from the outcome of the shareholder vote. *Id.*

7

The court permitted a finding of liability "under Rule 14a-9 by those who make material misstatements or omissions in proxy statements, regardless if the defendant is an outside expert that does not benefit from the outcome of the solicitation." *Id.* at 728[7]; *see also Herskowitz*, 857 F.2d at 189-90 ("Moreover since an investment banker rendering a fairness opinion . . . knows full well that it will be used to solicit shareholder approval, and is well paid for the service it performs, we see no convincing reason for not holding it to the same standard of liability as the management it is assisting."). Since William Blair permitted the use of its name in the Proxy in a "manner substantially connected to the proxy solicitation," it can be liable under Section 14 for misstatements in the Proxy. *Lewis v. Byrnes*, 538 F. Supp. 1221, 1224-25 (S.D.N.Y. 1982).

### 3. *Reliance on Management Does Not Relieve William Blair of Liability Under Section 14 and Rule 14a-9.*

Case-law also does not support William Blair's position that following "the norm" and relying on management relieves it liability under the federal securities laws. WB Memo, pgs. 2, 7-8. William Blair relies greatly on *HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC*, 517 F.3d 454, 455-459 (7th Cir. Ill. 2008). The district court in *HA2003*, however, was not faced with a fairness opinion provider ("CSFB") who used management's ***historical financial statements*** that were alleged to be false and inflated. Instead, the *HA2003* court dismissed claims by the company's liquidating trustee against CSFB, who relied on projections furnished by the company, because CSFB could not be held liable for failing to "outsmart[] the stock market," "forsee[] the end of the dot-com boom", and "yank[] its opinion as 'stale,'" all of which were non-actionable "appeal(s) to hindsight." *Id.* The Amended Complaint's allegations are not comparable. *HA2003*, therefore, is contrasted and unpersuasive.

In *In re Global Crossing Ltd. Sec. Litig.*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003), an investment banker issued a fairness opinion based on financial projections prepared by management and stated that it had "relied upon and assumed the accuracy and completeness" of the financial information and disclaimed any responsibility for "independent verification." *Id.* at

---

[7] Here, of course, William Blair actually stood to financially benefit from an affirmative shareholder vote, since its compensation package included a $350,000 success component awarded upon the consummation of the Internalization. *See* Fn. 4, *above*.

209-10. The court found that despite these disclaimers, the investment banker could be liable if it was privy to information "that would have undermined the financial information on which DLJ purported to rely" or if its fairness opinion was "not truly held." *Id.* at 210; *see also Eisenberg v. Gagnon*, 766 F.2d 770, 777 (3d Cir. 1985) (professionals have a "duty to assure that there was a reasonable basis for the assumptions"); *Herskowitz*, 857 F.2d at 185 (experts may not "adopt an assumption" that is "objectively unreasonable in the circumstances"). These cases are instructive.

In short, "investment bankers should have some responsibility to examine the reasonableness and accuracy of the financial information used in opinions." Giuffra, *Investment Bankers' Fairness Opinions In Corporate Control Transactions*, 96 YALE L.J. 119, 139 (1986); *see also* Davidoff, *Fairness Opinions*, 55 AM. U. L. REV. 1557, at n.37 (2006) (investment banker has a duty to investigate information which it has some basis to believe is inaccurate or misleading). The Amended Complaint adequately alleges, at the motion to dismiss stage, that William Blair, at a minimum, recklessly ignored the red flags that should have raised questions about the reasonableness of the information, data and assumptions that formed the basis for its Fairness Opinion which rendered the Proxy materially false and misleading.

### 4. *The Amended Complaint Alleges that William Blair's Fairness Opinion was Objectively and Subjectively False.*

Statements of opinion or belief are actionable if they are both objectively and subjectively false. *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1095 (1991). "To plead the falsity of a statement of opinion, a plaintiff must plead with particularity why the statement of opinion was objectively and subjectively false. A fairness opinion is objectively false if the subject matter of the opinion is not, in fact, fair, and is subjectively false if the speaker does not, in fact, believe the subject matter of the opinion to be fair." *Shurkin v. Golden State Vintners, Inc.*, 2005 U.S. Dist. LEXIS 39301 (D. Cal. 2005).[8] *See* WB Memo at 6-8.

Plaintiffs have pled both objective and subjective falsity. First, Plaintiffs pled that

---

[8] *Washtenaw County v. Wells REIT*, 2008 WL 2302679 (N.D. Ga. Mar. 31, 2008) cited in WB Memo, pgs. 6-7 as "*Washington County*," did not assert claims against the fairness opinion provider, Houlihan Lokey ("HL"), or name it as a defendant. *Washtenaw* addressed whether the assumptions in HL's valuation methodologies were adequately disclosed. *Id.* The court did not address whether using managements' inflated financial statements as the basis of a false Fairness Opinion violated Section 14(a).

William Blair's Opinion that the Internalization Consideration was "fair" to the shareholders was objectively false. The Opinion was based on financial statements that inflated the Advisor and Property Managers' value and on William Blair's examination of purportedly comparable transactions. The documents and analysis plainly demonstrated that the stated financial operations of the Advisor and Property Managers were business impossibilities and inflated. Am. Cmplt. ¶¶ 168-184; 235-36; 239-255. The Internalization Consideration to be paid to the Advisor and Property Managers' was inflated, based on an overvaluation of these entities, and was not "fair." *Id.* Second, Plaintiffs pled subjective falsity by alleging facts sufficient to show, or give rise to a reasonable inference, that William Blair did not believe its Opinion that the Internalization Consideration was fair to shareholders. Namely that, William Blair was involved in the process and negotiations leading up to the Internalization, it secured knowledge and understanding about the Advisor's and Property Managers' business, the "red-flags" were clear from the financial statements and William Blair's comparable company analysis, and the "red-flags" did not require any further or in depth investigation by William Blair to uncover. *Compare In re AOL Time Warner Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004), WB Memo, pg. 7, in which the court held that a fairness opinion provider had no duty to launch an investigation into AOL's accounting practices, with Ex. 1C, Proxy Excerpt at 15-19 and Am. Cmplt. ¶¶ 143-149; 168-184; 235-36; 239-255; *see also* ¶ 51 (one-third of William Blair's fee from the outset of its retention was contingent upon the <u>consummation</u> of the Internalization).[9]

Finally, William Blair does not challenge the sufficiency of the Amended Complaint's allegations concerning the purely factual assertions made by William Blair which are alleged to be false and misleading. *Id.* at ¶¶ 243-55. Unlike a statement of opinion, these statements of facts by William Blair are actionable if they were negligently made.

---

[9] *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 515-16 (D. Del. 2001), WB Memo at pg. 8, does not dictate a different conclusion on a motion to dismiss based on the facts alleged here. In March, 2001, the court granted summary judgment to the financial advisors in *Reliance. Id.* In its opinion, the court noted that "to succeed on a section 14(a) claim based on a statement of opinion, a plaintiff must show more than that the defendants negligently made a statement, the plaintiff must demonstrate that the defendants recklessly or intentionally issued an objectively false statement." The court found no liability for an incorrect fairness opinion that was based on management's financial projections *only* where financial advisors had not recklessly ignored red flags, as William Blair did here. *Id.*

*In re McKesson HBOC Secs. Litig.*, 126 F. Supp. at 1266. The Amended Complaint particularly alleges that such statements were negligently made. *Id.* at 143-49; 243-55. Whether the allegations are true is a question on the merits. As to the pleading requirements at issue in a motion to dismiss, Plaintiffs have sufficiently pled material misstatements by William Blair. *In re JPMorgan,* 2007 U.S. Dist. LEXIS 93877.

### B. The Amended Complaint States a Claim against William Blair for Aiding and Abetting Breaches of Fiduciary Duty.

William Blair's sole basis on which it argues for the dismissal of Count IV, is that an "opinion letter claim is derivative" and the "directors have demonstrated in their papers why Plaintiffs have no derivative claim." WB Memo, pg. 11, *citing Massey*. In *Massey*, the court held that if the claims involved a fairness opinion that was directly solely to the company, those claims were derivative. Unlike *Massey,* William Blair's Fairness Opinion was addressed to the Shareholders, *see* Sections II & III.A.1, above. *Massey* is inapplicable. *See also,* Mem. in Opposition to IW Defs MTD, Section VI.

William Blair secured in depth knowledge about Inland REIT, the Advisor and the Property Managers. Ex. 1C, Proxy Excerpt at 15-19; Am. Cmplt. ¶¶ 143-50. Lacking independence and faced with a self-dealing transaction, William Blair prepared and rendered its financial analyses and Fairness Opinion. In doing so, William Blair predicated its "fairness opinion" on false, misleading and inflated financial information (points William Blair does not contest). This constituted substantial assistance to the Defendants in consummating the Internalization, which is alleged to have constituted a direct breach of fiduciary duty owed to the shareholders. *Id.* at ¶¶ 273-278. William Blair offers no colorable basis on which this Count of the Amended Complaint should be dismissed.

### IV. CONCLUSION.

For the foregoing reasons, William Blair & Company L.L.C.'s Motion to Dismiss Counts I and IV should be denied in its entirety.

Dated: August 21, 2008

Respectfully submitted,

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**

*/s/ Adam J. Levitt*
Adam J. Levitt
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Telephone: (312) 984-0000
Facsimile: (312) 984-0001
Email: levitt@whafh.com

Nicholas E. Chimicles
Kimberly M. Donaldson
Kimberly L. Kimmel
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

Lawrence P. Kolker
Alexander Schmidt
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

Lawrence A. Sucharow
Joseph Sternberg
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Lead Counsel*

12

          Michael J. VanOverbeke
          Thomas C. Michaud
          **VanOVERBEKE MICHAUD &**
           **TIMMONY, P.C.**
          79 Alfred Street
          Detroit, Michigan 48201
          Telephone: (313) 578-1200
          Facsimile: (313) 578-1201

*Counsel to City of St. Clair Shores*
 *General Employees Retirement System*

## CERTIFICATE OF SERVICE

I, Kimberly M. Donaldson, an attorney, hereby certify that on August 21, 2008, I caused **Lead Plaintiffs' Memorandum In Opposition To William Blair & Company L.L.C.'s Motion To Dismiss Counts I and IV, and the Exhibits thereto,** to be filed electronically with the United States District Court for the Northern District of Illinois, Eastern Division. Notice of this filing will be sent electronically to the following parties by operation of the Court's electronic filing system. Parties and interested persons may access this filing through the Court's system

Jerold S. Solovy
James L. Thompson
Anthony C. Porcelli
JENNER & BLOCK, LLP
330 N. Wabash Avenue
Chicago, IL 60611
(312) 222-9350
(312) 527-0484

Harold C. Hirshman
SONNENSCHEIN NATH &
ROSENTHAL LLP
7800 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6404
Telephone: (312) 876-8000
Fax: (312) 876-7934

Samuel B. Isaacson
Joseph E. Collins
DLA Piper US LLP
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
Telephone: (312) 368-4000
Facsimile: (312) 236-7516

Richard B. Kapnick
Courtney A. Rosen
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Fax: (312) 853-7036

James C. Schroeder
John Joseph Tharp, Jr.
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

Jonathan C. Medow
PERKINS COIE LLP
131 South Dearborn Street
Suite 1700
Chicago, IL 60603

/s/ Kimberly M. Donaldson