# EXHIBIT 1D

Our charter authorizes and directs us to indemnify or pay or reimburse reasonable expenses in advance of a final disposition of a proceeding, to the maximum extent permitted by Maryland law in effect from time to time, our agents which includes our Business Manager/Advisor or its affiliates.

We may, with the approval of our Board or any duly authorized committee thereof, provide such indemnification and advancement of expenses to our Business Manager/Advisor. The indemnification and payment of expenses provided in our charter shall not be deemed exclusive of or limit in any way other rights to which our Business Manager/Advisor seeks indemnification or payment of expenses may be or may become entitled under any bylaw, regulation, insurance, agreement or otherwise.

Our charter further authorizes the purchase and maintenance of insurance on behalf of our Business Manager/Advisor or its affiliates against any liability asserted against it and incurred by it in such capacity, or arising out of its status as such, whether or not it is indemnified against such liability under the provisions of our charter.

**Shares of our Stock and Other Amounts Potentially Payable with Respect to the Merger**

In connection with the Merger, the stockholders of our Business Manager/Advisor and our Property Managers will receive our common stock. The allocation of shares we are issuing in the Merger was determined by our Business Manager/Advisor and our Property Managers. Immediately prior to the Merger, we will pay any fees accrued under such contractual arrangements for services rendered through the effective time of the Merger.

**Interest of Certain Persons in Matters to be Acted Upon**

Certain of our directors and officers have interests in connection with the Merger, our Property Managers and our Business Manager/Advisor that are different from, and may potentially conflict with, our interests. In particular, all of our current executive officers and two of our current directors are also executive officers and/or directors of Inland. We have entered into a non-compensated consulting agreement, that will become effective upon the closing, with Mr. Parks, our current chairman and director. Mr. Parks and Ms. Gujral, our chief executive officer and a director, are stockholders of our Property Managers and TIGI, the ultimate owner of our Business Manager/Advisor. Mr. Grimes, our current Treasurer and Principal Financial Officer, is a stockholder of one or more of our Property Managers. As such, these individuals will receive shares of our common stock as consideration in the Merger. Messrs. Parks, Grimes and Ms. Gujral will receive shares of our common stock valued at approximately $6.8 million, $380,000 and $1.3 million, respectively, as consideration in the Merger.

We have also entered into employment agreements with Messrs. O'Hanlon, Grimes, Garrison and Byrne that will become effective upon the closing. See "– Ancillary Agreements – Employment Agreements" for a further discussion of these employment agreements.

**Opinion of the Financial Advisor**

William Blair acted as financial advisor to the special committee in connection with the Merger. As part of its engagement, the special committee requested that William Blair render an opinion as to whether the Merger consideration, to be paid by us was fair, from a financial point of view, to us and our stockholders. On August 14, 2007, William Blair delivered its oral opinion to the special committee and subsequently confirmed in writing that, as of August 14, 2007 and based upon and subject to the assumptions and qualifications stated in its opinion, the Merger consideration was fair, from a financial point of view, to us and our stockholders.

THE FULL TEXT OF WILLIAM BLAIR'S WRITTEN OPINION, DATED AUGUST 14, 2007, IS ATTACHED AS APPENDIX B TO THIS PROXY STATEMENT AND INCORPORATED INTO THIS PROXY STATEMENT BY REFERENCE. WE ENCOURAGE YOU TO READ THE ENTIRE OPINION CAREFULLY TO LEARN ABOUT THE ASSUMPTIONS MADE, PROCEDURES FOLLOWED, MATTERS CONSIDERED AND LIMITS ON THE SCOPE OF THE REVIEW UNDERTAKEN BY WILLIAM BLAIR IN RENDERING ITS OPINION. WILLIAM BLAIR'S OPINION RELATES ONLY TO THE FAIRNESS, FROM A FINANCIAL POINT OF VIEW, TO US AND OUR STOCKHOLDERS OF

THE CONSIDERATION TO BE PAID BY US IN THE MERGER AND DOES NOT ADDRESS ANY OTHER ASPECT OF THE PROPOSED MERGER OR ANY RELATED TRANSACTION, AND DOES NOT CONSTITUTE A RECOMMENDATION TO YOU AS TO HOW YOU SHOULD VOTE WITH RESPECT TO THE MERGER AGREEMENT OR THE MERGER. WILLIAM BLAIR DOES NOT EXPRESS AN OPINION AS TO THE FAIRNESS OF THE MERGER CONSIDERATION TO THE ADVISOR, OR THE PROPERTY MANAGERS OR THEIR STOCKHOLDERS AS THOSE TERMS ARE DEFINED IN THE OPINION. WILLIAM BLAIR'S OPINION DID NOT ADDRESS THE MERITS OF THE UNDERLYING DECISION BY US OR THE SPECIAL COMMITTEE OR THE BOARD TO ENGAGE IN THE MERGER OR OTHER BUSINESS STRATEGIES OR TRANSACTIONS CONSIDERED BY THE BOARD OR THE SPECIAL COMMITTEE, OR THE EFFECT OF ANY SUCH TRANSACTION, OR THE SPECIAL COMMITTEE'S AND THE BOARD'S DECISION TO PROCEED WITH THE MERGER. THE FOLLOWING SUMMARY OF WILLIAM BLAIR'S OPINION IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE OPINION.

William Blair provided the opinion described above for the information and assistance of the special committee and the Board in connection with evaluating the Merger consideration. The terms of the Merger Agreement and the amount and form of the Merger consideration, however, were determined through negotiations between us and the Business Manager/Advisor and the Property Managers, and were unanimously approved by the special committee and the Board. Although William Blair provided financial advice to the special committee during such negotiations, William Blair did not recommend any specific exchange ratio or other form of consideration to us or that any specific exchange ratio or other form of consideration constituted the only appropriate consideration for the proposed Merger. The William Blair opinion is addressed to the special committee and the Board for their use in evaluating the terms of the Merger Agreement and the amount and form of the Merger consideration. The William Blair opinion is included in this proxy statement so you can assess the role of such opinion in the special committee's and our Board's development of its recommendation to you.

In connection with its opinion, William Blair examined or discussed, among other things:

- the Merger Agreement dated August 14, 2007;

- our audited historical financial statements and those of our Business Manager/Advisor and Property Managers for the two fiscal years ended December 31, 2005 and 2006;

- our unaudited financial statements and those of our Business Manager/Advisor and Property Managers for the six months ended June 30, 2006, and 2007;

- certain internal business, operating and financial information and forecasts of us, our Business Manager/Advisor and Property Managers, or the Forecasts, for fiscal years 2007 through 2012 prepared by our senior management and the senior management of our Business Manager/Advisor and Property Managers;

- information regarding the strategic, financial and operational benefits anticipated from the Merger prepared by our senior management;

- information regarding the amount and timing of cost savings and related expenses which our senior management expects will result from the Merger, the "Expected Cost Savings";

- the pro forma impact of the Merger on funds from our operations per share (before and after taking into consideration any Expected Cost Savings);

- information regarding publicly available financial terms of certain other business combinations William Blair deemed relevant;

- our financial position and operating results and those of our Business Manager/Advisor and Property Managers compared with those of certain other publicly traded companies William Blair deemed relevant; and

- certain other publicly available information of us and that of other publicly traded companies William Blair deemed relevant.

48

William Blair also held discussions with members of our senior management and the senior management of our Business Manager/Advisor and Property Managers to discuss the foregoing. William Blair also considered other matters, and conducted such other analyses, studies and investigations, which it deemed relevant to its inquiry, and appropriate under the circumstances for rendering its opinion, and took into account the accepted financial and investment banking procedures and considerations that it deemed relevant. William Blair was not requested to, nor did William Blair, solicit the interest of other parties in a possible business combination transaction with us.

In rendering its opinion, William Blair assumed and relied, without independent verification, upon the accuracy and completeness of all the information examined by or otherwise reviewed or discussed with William Blair for purposes of its opinion, including without limitation the Forecasts provided by our senior management and the senior management of our Business Manager/Advisor and Property Managers. William Blair did not make or obtain an independent valuation or appraisal of the assets, liabilities or solvency of us, our Business Manager/Advisor or Property Managers. William Blair was advised by our senior management that the Forecasts and Expected Cost Savings examined by William Blair were reasonably prepared on bases reflecting the best estimates then available and judgments of our senior management and the senior management of our Business Manager/Advisor and Property Managers. In that regard, William Blair assumed, with the consent of the special committee, that (i) the Forecasts would be achieved in the amounts and at the times contemplated thereby and (ii) all of our material assets and liabilities (contingent or otherwise) and those of our Business Manager/Advisor and Property Managers were as set forth in each company's respective financial statements or other information made available to William Blair. William Blair expressed no opinion with respect to the Forecasts or Expected Cost Savings or the estimates and judgments on which they were based. William Blair was not provided with, nor did it otherwise review, any of our forecasts or the forecasts of our Business Manager/Advisor or Property Managers for periods after fiscal year 2012.

William Blair's opinion does not address the relative merits of the Merger as compared to any alternative business strategies that might exist for us or the effect of any other transaction in which we might engage. William Blair's opinion was based upon economic, market, financial and other conditions existing on, and other information disclosed to William Blair as of August 9, 2007. Although subsequent developments may affect its opinion, William Blair does not have any obligation to update, revise or reaffirm its opinion. William Blair relied, as to all legal and accounting and tax matters, on advice of our advisors and the advisors to the special committee. William Blair assumed that the executed Merger Agreement would conform in all material respects to, and the Merger would be consummated on, the terms described in the Merger Agreement reviewed by it, without any amendment or waiver of any material terms or conditions. William Blair did not express any opinion as to the impact of the Merger on our solvency or viability or that of our Business Manager/Advisor or Property Managers.

The following is a summary of the material financial analyses performed and material factors considered by William Blair to arrive at its opinion. William Blair performed certain procedures, including each of the financial analyses described below, and reviewed with the special committee and the Board the assumptions upon which such analyses were based, as well as other factors. Although the summary does not purport to describe all of the analyses performed or factors considered by William Blair in this regard, it does set forth those considered by William Blair to be material in arriving at its opinion.

William Blair performed certain financial procedures, including each of the financial analyses described below in order to evaluate the fairness of the Merger consideration, from a financial point of view to us and our stockholders (other than our Business Manager/Advisor, Property Managers and their equityholders). As contemplated by the Merger Agreement, we will issue approximately 37.5 million shares in the Merger. William Blair evaluated each of the following analyses independently and on an aggregate basis in its assessment of the fairness of the proposed transaction.

### *Valuation of Our Business Manager/Advisor and Property Managers*

*Selected Public Company Analysis.* William Blair reviewed and compared certain financial information relating to our Business Manager/Advisor and Property Managers to corresponding financial information, ratios and public market multiples for certain publicly traded companies with operations in the real estate industry that William Blair deemed relevant. The following companies were selected by William Blair:

- CB Richard Ellis Group, Inc.;

- Jones Lang LaSalle, Inc.; and

- Grubb & Ellis Company.

Among the information William Blair considered were earnings before interest, taxes, depreciation and amortization, or EBITDA, and net income. William Blair considered the enterprise value as a multiple of EBITDA for each company for the last twelve months, or LTM, for which results were publicly available and for the respective calendar year EBITDA estimates for 2007, and the share price as a multiple of earnings per share, or EPS, for each company for the LTM and for the respective calendar year EPS estimates for 2007 and 2008. The operating results and the corresponding derived multiples for our Business Manager/Advisor and Property Managers and each of the selected companies were based on each company's most recent available publicly disclosed financial information, closing share prices as of August 9, 2007 and consensus Wall Street analysts' EBITDA and EPS estimates for calendar years 2007 and 2008 where appropriate. William Blair noted that it did not have access to internal forecasts for any of the selected public companies, except our Business Manager/Advisor and the Property Managers.

William Blair then applied the summary imputed multiples for the publicly traded companies to our Business Manager/Advisor and Property Managers' results to determine an implied enterprise value and an implied equity value for our Business Manager/Advisor and Property Managers. Information regarding our Business Manager/Advisor and Property Managers' operating results and public company valuation multiples from William Blair's analysis of selected publicly traded companies is set forth in the following table:

| ($ in millions) Multiple | Combined Advisor and Property Managers Results | Selected Public Company Valuation Multiples Min | Mean | Median | Max |
|---|---|---|---|---|---|
| Enterprise Value/LTM EBITDA | $ 62.8 | 11.2x | 14.2x | 11.3x | 20.0x |
| Enterprise Value/2007E EBITDA | $ 65.9 | 9.3x | 11.1x | 11.5x | 12.5x |
| Equity Value/LTM Net Income | $ 37.6 | 17.0x | 17.6x | 17.6x | 18.2x |
| Equity Value/2007E Net Income | $ 39.5 | 13.4x | 20.4x | 14.7x | 33.1x |
| Equity Value/2008E Net Income | $ 41.2 | 11.4x | 14.3x | 13.8x | 17.6x |

William Blair determined a valuation range for our Business Manager/Advisor and Property Managers based on its analysis of selected publicly traded companies to be between $471 million and $1,308 million with a mean and median value of $736 million and $663 million, respectively.

Although William Blair analyzed the trading multiples of the selected companies at the date of its opinion and applied such multiples to our Business Manager/Advisor and Property Managers, none of the selected companies is identical to our Business Manager/Advisor and Property Managers. Accordingly, any analysis of the selected publicly traded companies necessarily involved complex considerations and judgments concerning the differences in financial and operating characteristics and other factors that would necessarily affect the analysis of trading multiples of the selected publicly traded companies.

*Selected M&A Transactions Analysis of Comparable Transactions.* William Blair performed an analysis of selected recent business combinations consisting of transactions announced subsequent to January 1, 1998 and focused primarily on the real estate industry. William Blair's analysis was based solely on publicly available information regarding such transactions. The selected transactions were not intended to be representative of the entire range of possible transactions in the respective industries. The transactions selected by William Blair were (target/acquiror):

- Grubb & Ellis Company / NNN Realty Advisors, Inc.;

- Trammell Crow Company / CB Richard Ellis Group, Inc.;

50

- LNR Property Corporation / Cerberus Capital Management, L.P. and Blackacre Institutional Capital Management, LLC;

- Insignia Financial Group, Inc. / CB Richard Ellis Group, Inc.;

- Groupe Bourdais / Insignia Financial Group, Inc.;

- CB Richard Ellis Services, Inc. / Blum Capital Partners, L.P.;

- CNL Fund Advisors, Inc. / CNL American Properties, Inc.;

- Security Capital U.S. Realty / Security Capital Group;

- Jones Lang Wootton / LaSalle Partners, Inc.; and

- Bishop Hawk, Inc. / Grubb & Ellis Company.

William Blair reviewed the consideration paid in the selected transactions in terms of the enterprise value of such transactions as a multiple of EBITDA of the target and the equity value as a multiple of net income of the target for the latest twelve months prior to the announcement of these transactions. William Blair then applied the summary imputed multiples for the selected transactions to our Business Manager/Advisor and Property Managers' results to determine an implied enterprise value and an implied equity value for our Business Manager/Advisor and Property Managers. Information regarding our Business Manager/Advisor and Property Managers operating results and multiples from William Blair's analysis of selected transactions is set forth in the following table:

| ($ in millions) Multiple | Combined Advisor and Property Managers Results | Selected Transaction Valuation Multiples | | | |
| --- | --- | --- | --- | --- | --- |
| | | Min | Mean | Median | Max |
| Enterprise Value/LTM EBITDA | $ 62.8 | 5.2x | 11.3x | 9.9x | 24.0x |
| Equity Value/LTM Net Income | $ 37.6 | 9.1x | 15.7x | 13.6x | 30.8x |

William Blair determined a valuation range for our Business Manager/Advisor and Property Managers based on its analysis of selected transactions to be between $327 million and $1,507 million with a mean and median value of $649 million and $565 million, respectively.

Although William Blair analyzed the multiples implied by the selected transactions and applied such multiples to our Business Manager/Advisor and Property Managers, none of these transactions or associated companies is identical to the Merger of our Business Manager/Advisor and Property Managers. Accordingly, any analysis of the selected transactions necessarily involved complex considerations and judgments concerning the differences in financial and operating characteristics, parties involved and terms of their transactions and other factors that would necessarily affect the implied value of our Business Manager/Advisor and Property Managers versus the values of the companies in the selected transactions.

*Selected M&A Transactions Analysis of REIT Internalization Transactions.* William Blair performed an analysis of selected recent REIT internalizations consisting of transactions announced subsequent to January 1, 1999 and focused primarily on the real estate industry. William Blair's analysis was based solely on publicly available information regarding such transactions. The selected transactions were not intended to be representative of the entire range of possible transactions in the respective industries. The transactions selected by William Blair were (target/acquiror):

- Inland Retail Real Estate Advisory Services, Inc. / Inland Retail Real Estate Trust, Inc.;

- Cedar Bay Realty Advisors, Inc. / Cedar Shopping Centers, Inc.;

- Inland Commercial Property Management, Inc. / Inland Real Estate Corporation;

51

- Starwood Financial Advisors, LLC / Starwood Financial Trust; and
- CNL Restaurant Properties Inc. / CNL American Properties Fund, Inc.

William Blair reviewed the consideration paid in the selected transactions in terms of the enterprise value of such transactions as a multiple of EBITDA for the latest twelve months prior to the announcement of these transactions. William Blair then applied the summary imputed multiple for the selected transactions to our Business Manager/Advisor and the Property Managers' results to determine an implied enterprise value for our Business Manager/Advisor and Property Managers. Information regarding our Business Manager/Advisor and Property Managers operating results and multiples from William Blair's analysis of selected transactions is set forth in the following table:

| ($ in millions) Multiple | Combined Advisor and Property Managers Results | Selected Transaction Valuation Multiples | | | |
|---|---|---|---|---|---|
| | | Min | Mean | Median | Max |
| Enterprise Value/LTM EBITDA | $ 62.8 | 3.9x | 7.3x | 7.8x | 10.7x |

William Blair determined a valuation range for our Business Manager/Advisor and Property Managers based on its analysis of selected transactions to be between $245 million and $671 million with a mean and median value of $459 million and $491 million, respectively.

Although William Blair analyzed the multiples implied by the selected transactions and applied such multiples to our Business Manager/Advisor and Property Managers, none of these transactions or associated companies is identical to the Merger of our Business Manager/Advisor and Property Managers. Accordingly, any analysis of the selected transactions necessarily involved complex considerations and judgments concerning the differences in financial and operating characteristics, parties involved and terms of their transactions and other factors that would necessarily affect the implied value of our Business Manager/Advisor and Property Managers versus the values of the companies in the selected transactions.

*Discounted Cash Flow Analysis.* William Blair utilized the Forecasts to perform a discounted cash flow analysis of our Business Manager/Advisor and Property Managers' projected future cash flows for the period commencing on January 1, 2007 and ending December 31, 2012. Using discounted cash flow methodology, William Blair calculated the present values of the projected free cash flows for our Business Manager/Advisor and Property Managers. In this analysis, William Blair assumed that our Business Manager/Advisor and Property Managers' free cash flows would end in a final cash flow equal to between 6.5x and 8.5x the respective 2012 EBITDA and an annual assumed discount rate ranging from 8.0% to 12.0%. William Blair determined the appropriate discount range based upon an analysis of the weighted average cost of capital of the aforementioned public company analysis. William Blair aggregated (1) the present value of the free cash flows over the applicable forecast period with (2) the present value of the range of terminal values. The aggregate present value of these items represented the enterprise value range. The implied range of enterprise values for our Business Manager/Advisor and the Property Managers implied by the discounted cash flow analysis ranged from approximately $481 million to $667 million with a mean and median value of $568 million and $567 million, respectively.

### *Summary of the Aggregate Valuation for our Business Manager/Advisor and Property Managers*

William Blair performed a selected public company analysis, selected M&A transaction analysis of comparable transactions and REIT internalization transactions and a discounted cash flow analysis to determine aggregate valuation ranges for our Business Manager/Advisor and Property Managers. Based on its analysis and results as presented above, William Blair determined that a range of aggregate enterprise values for our Business Manager/Advisor and Property Managers ranged from $399 million to $990 million with a mean and median value of $609 million and $566 million, respectively.

William Blair performed certain financial procedures, including each of the financial analyses described below to derive a value of our shares, on a per share basis.

*Selected Public Company Analysis.* William Blair reviewed and compared certain financial information relating to us to corresponding financial information, ratios and public market multiples for certain publicly traded real estate investment trusts with operations in the real estate industry that William Blair deemed relevant. The following companies were selected by William Blair:

- Kimco Realty Corporation;
- Developers Diversified Realty Corporation;
- Regency Centers Corporation;
- Federal Realty Investment Trust;
- Weingarten Realty Investors;
- Inland Real Estate Corporation; and
- Cedar Shopping Centers, Inc.

Among the information William Blair considered were funds from operations, or FFO, per share, dividend yield, implied capitalization rate and square feet. William Blair considered the equity value as a multiple of FFO per share and dividend yield for each company for the last twelve months for which results were publicly available and the share price as a multiple of FFO for each company for the LTM and for the respective calendar year EPS estimates for 2007 and 2008. William Blair considered the enterprise value as a multiple of square feet and implied cap rate for each company for the last twelve months for which results were publicly available.

The operating results and the corresponding derived multiples for us and each of the selected companies were based on each company's most recent available publicly disclosed financial information, closing share prices as of August 9, 2007 and consensus Wall Street analysts' FFO estimates for calendar years 2007 and 2008 where appropriate. William Blair noted that it did not have access to internal forecasts for any of the selected public companies, except for ours.

William Blair then applied the summary imputed multiples for the publicly traded companies to our results to determine an implied equity value per share for us. The derived enterprise values and equity values were divided by the total number of shares outstanding as of June 30, 2007 to determine our implied per share value. Information regarding our operating results and public company valuation multiples from William Blair's analysis of selected publicly traded companies is set forth in the following table:

| ($ actual) Valuation Metric | IWEST Results | Selected Public Company Valuation Multiples | | | |
|---|---|---|---|---|---|
| | | Min | Mean | Median | Max |
| Equity Value/LTM FFO | $ 0.67 | 10.6x | 15.2x | 14.1x | 24.1x |
| Equity Value/2007E FFO | $ 0.66 | 9.9x | 14.7x | 13.6x | 22.6x |
| Equity Value/2008E FFO | $ 0.69 | 9.2x | 13.7x | 12.7x | 20.8x |
| Equity Value/LTM Dividend Yield | $ 0.65 | 2.8% | 4.8% | 4.8% | 7.3% |
| Enterprise Value/Square Feet (000s) | 45,500 | $ 74.25 | $ 139.64 | $ 126.65 | $ 332.67 |
| Enterprise Value/LTM Capitilization Rate | $ 1.15 | 3.60% | 5.85% | 6.31% | 7.51% |

William Blair determined a per share valuation range for us based on its analysis of selected publicly traded companies to be between $6.30 and $33.87 per share with a mean and median per share values of $11.27 and $9.30, respectively.

53

Although William Blair compared the trading multiples of the selected companies at the date of its opinion and applied such multiples to us, none of the selected companies is identical to us. Accordingly, any analysis of the selected publicly traded companies necessarily involved complex considerations and judgments concerning the differences in financial and operating characteristics and other factors that would necessarily affect the analysis of trading multiples of the selected publicly traded companies.

*Selected M&A Transactions Analysis.* William Blair performed an analysis of selected recent business combinations consisting of transactions announced subsequent to January 1, 2000 and focused primarily on the real estate industry. William Blair's analysis was based solely on publicly available information regarding such transactions. The selected transactions were not intended to be representative of the entire range of possible transactions in the respective industries. The transactions selected by William Blair were (target/acquiror):

- Republic Property Trust / Liberty Property Trust;
- Crescent Real Estate Equities Company / Morgan Stanley Real Estate Fund;
- Beacon Capital Partners, LLC / Broadway Real Estate Partners, LLC;
- New Plan Excel Realty Trust, Inc. / Centro Properties Group;
- Columbia Equity Trust, Inc. / JP Morgan Asset Management;
- Inland Retail Real Estate Trust, Inc / Developers Diversified Realty Corporation;
- Equity Office Properties Trust / Blackstone Real Estate Partners, LP;
- Reckson Associates Realty Corp. / SL Green Realty Corp.;
- Glenborough Realty Trust Inc. / Morgan Stanley Real Estate Fund;
- Sizeler Property Investors Inc. / Revenue Properties Co. Ltd.;
- Pan Pacific Retail Properties, Inc. / Kimco Realty Corporation;
- Heritage Property Investment Trust, Inc. / Centro Properties Group;
- Kramont Realty Trust / Centro Properties Group, Watt Commercial Properties Inc;
- Price Legacy Corp. / PL Retail LLC (Kimco Realty Corporation and DRA Advisors LLC);
- Mid-Atlantic Realty Trust / Kimco Realty Corporation;
- JDN Realty Corporation / Developers Diversified Realty Corporation;
- IRT Property Co. / Equity One, Inc.;
- Center Trust Inc. / Pan Pacific Retail Properties, Inc.;
- United Investors Realty Trust / Equity One, Inc.; and
- Bradley Real Estate, Inc. / Heritage Property Investment Trust, Inc.

William Blair reviewed the consideration paid in the selected transactions in terms of the equity value of such transactions as a multiple of FFO of the target for the latest twelve months prior to the announcement of these transactions. William Blair considered the enterprise value as a multiple of square feet and implied capitalization rate for each company for the target for the latest twelve months prior to the announcement of these transactions. William Blair then applied the summary imputed multiples for the selected transactions to our results to determine

54

our implied equity value per share. Information regarding our operating results and multiples from William Blair's analysis of selected transactions is set forth in the following table:

| ($ actual) Valuation Metric | IWEST Results | Selected Transaction Valuation Multiples | | | |
|---|---|---|---|---|---|
| | | Min | Mean | Median | Max |
| Equity Value/LTM FFO | $ 0.67 | 7.7x | 21.3x | 16.3x | 73.8x |
| Enterprise Value/Square Feet (000s) | 45,500 | $ 67.27 | $ 160.39 | $ 133.63 | $ 377.17 |
| Enterprise Value/LTM Capitilization Rate | $ 1.15 | 1.47% | 4.61% | 4.60% | 10.20% |

William Blair determined a valuation range for us based on its analysis of selected transactions to be between $2.26 and $69.16 per share with a mean and median per share values of $15.47 and $13.58, respectively.

Although William Blair analyzed the multiples implied by the selected transactions and applied such multiples to us, none of these transactions or associated companies is identical to the Merger. Accordingly, any analysis of the selected transactions necessarily involved complex considerations and judgments concerning the differences in financial and operating characteristics, parties involved and terms of their transactions and other factors that would necessarily affect our implied value versus the values of the companies in the selected transactions.

*Discounted Cash Flow Analysis.* William Blair utilized the Forecasts to perform a discounted cash flow analysis of our projected future dividend per share for the period commencing on January 1, 2007 and ending December 31, 2012. Using discounted cash flow methodology, William Blair calculated the present values of our projected free cash flows per share. In this analysis, William Blair assumed that our FFO per share would end in a final FFO per share equal to between 15.0x and 17.0x the respective 2012 FFO per share and an annual assumed discount rate ranging from 7.0% to 9.0% with an assumed constant dividend yield of 6.32%. William Blair determined the appropriate discount range based upon an analysis of the weighted average cost of capital of the aforementioned public company analysis. William Blair aggregated (1) the present value of the dividends per share over the applicable forecast period with (2) the present value of the range of terminal values. The aggregate present value of these items represented the equity value per share range. The implied range of per share equity values for us implied by the discounted cash flow analysis ranged from approximately $9.78 to $11.35 per share.

### Summary of Our Aggregate Valuation

William Blair performed a selected public company analysis, selected M&A transaction analysis and a discounted cash flow analysis to determine independent per share equity valuation ranges for us. Based on its analysis and results as presented above, William Blair determined a mean and median per share value of $11.27 and $10.53, respectively with an approximate range of values from $9.00 to $12.00 per share.

### Analysis Conclusion

In assessing its fairness opinion, William Blair compared the approximately 37.5 million shares to be issued in the Merger with the aggregate estimated value of our Business Manager/Advisor and Property Managers divided by our estimated per share value.

Based on the preceding analysis, the aggregate estimated value of our Business Manager/Advisor and Property Managers is $245 million to $1,507 million, and our estimated per share value is $9.00 to $12.00 per share. The aggregate estimated value of our Business Manager/Advisor and Property Managers divided by our estimated per share value is a range of 20.4 million to 167.4 million shares. This is an estimate of the aggregate value of our Business Manager/Advisor and Property Managers expressed in terms of the number of our shares.

Because the number of shares to be issued in the Merger was within the range of the aggregate value of our Business Manager/Advisor and Property Managers expressed in terms of the number of our shares, William Blair concluded that the Merger consideration was fair from a financial point of view to us and our stockholders (other than our Business Manager/Advisor, Property Managers and their equityholders).

55

In developing its fairness opinion, William Blair also performed certain financial analyses described below.

*Internalization Formula Valuation.* Per our advisory agreement with our Business Manager/Advisor, dated December 28, 2004, William Blair calculated the number of shares that we could choose to issue to the holders of our Business Manager/Advisor and Property Managers in a merger transaction at our option beginning in September 2008 for our Business Manager/Advisor and May 2008 for the Property Managers. The number of our shares to be distributed to the stockholders of our Business Manager/Advisor and Property Managers was calculated as 90% of the annualized net income of our Business Manager/Advisor and Property Managers divided by our annualized FFO per weighted average share. Annualized net income was assumed to be 2007 projected net income of our Business Manager/Advisor and Property Managers. The implied number of shares for our Business Manager/Advisor and Property Managers implied by the internalization formula is approximately 54.1 million, as compared to the approximate 37.5 million shares to be issued in the Merger.

*Accretion/Dilution Analysis.* William Blair analyzed certain pro forma effects resulting from the Merger, including the potential impact of the Merger on projected FFO per share of us following the Merger, with Expected Cost Savings. William Blair utilized our FFO for 2007 through 2012 according to the Forecasts provided by us. William Blair's post-transaction pro forma analysis assumed 100% of our Business Manager/Advisor and Property Managers' outstanding common stock was exchanged for approximately 37.5 million shares of our common stock. William Blair's analysis indicated that the transaction would be $0.078 to $0.097 accretive on a per share basis to our 2008 through 2012 FFO when taking into consideration the Expected Cost Savings as a result of the Merger.

**General**

This summary is not a complete description of the analysis performed by William Blair but contains the material elements of the analysis. The preparation of an opinion regarding fairness is a complex process involving various determinations as to the most appropriate and relevant methods of financial analysis and the application of those methods to the particular circumstances, and, therefore, such an opinion is not readily susceptible to partial analysis or summary description. The preparation of an opinion regarding fairness does not involve a mathematical evaluation or weighing of the results of the individual analyses performed, but requires William Blair to exercise its professional judgment, based on its experience and expertise, in considering a wide variety of analyses taken as a whole. Each of the analyses conducted by William Blair was carried out in order to provide a different perspective on the financial terms of the proposed Merger and add to the total mix of information available. The analyses were prepared solely for the purpose of William Blair providing its opinion and do not purport to be appraisals or necessarily reflect the prices at which securities actually may be sold. William Blair did not form a conclusion as to whether any individual analysis, considered in isolation, supported or failed to support an opinion about the fairness of the Merger consideration. Rather, in reaching its conclusion, William Blair considered the results of the analyses in light of each other and ultimately reached its opinion based on the results of all analyses taken as a whole. William Blair did not place particular reliance or weight on any particular analysis, but instead concluded that its analyses, taken as a whole, supported its determination. Accordingly, notwithstanding the separate factors summarized above, William Blair believes that its analyses must be considered as a whole and that selecting portions of its analyses and the factors considered by it, without considering all analyses and factors, may create an incomplete view of the evaluation process underlying its opinion. No company or transaction used in the above analyses as a comparison is directly comparable to our Business Manager/Advisor, Property Managers or the Merger. In performing its analyses, William Blair made numerous assumptions with respect to industry performance, business and economic conditions and other matters. The analyses performed by William Blair are not necessarily indicative of future actual values and future results, which may be significantly more or less favorable than suggested by such analyses.

William Blair is a nationally recognized firm and, as part of its investment banking activities, is regularly engaged in the valuation of businesses and their securities in connection with merger transactions and other types of strategic combinations and acquisitions. William Blair participated in certain of the negotiations leading to the Merger Agreement.

The special committee hired William Blair based on its qualifications and expertise in providing financial advice to companies and its reputation as a nationally recognized investment banking firm. Pursuant to a letter agreement dated June 19, 2006, William Blair was paid a retainer fee of $100,000 and was paid $550,000 upon the delivery of its opinion, dated August 14, 2007, as to the fairness, from a financial point of view, of the Merger consideration to be paid by us. Furthermore, under the terms of the June 19, 2006, letter agreement, William Blair will be entitled to receive an additional fee of $350,000 upon consummation of the Merger. In addition, we have agreed to reimburse William Blair for certain of its out-of-pocket expenses (including fees and expenses of its counsel) reasonably incurred by it in connection with its services and will indemnify William Blair against potential liabilities arising out of its engagement.

As described above, William Blair's opinion to the special committee and to the Board was one of many factors taken into consideration by the special committee and the Board in making their determination to approve the Merger. The foregoing summary does not purport to be a complete description of the analyses performed by William Blair in connection with its fairness opinion and is qualified in its entirety by reference to the written opinion of William Blair attached as **Appendix B** to this proxy statement.

**Accounting Treatment**

The Merger consideration will be accounted for primarily as expense incurred in connection with terminating the property management agreements that we have with our Property Managers and the advisory agreement that we have with our Business Manager/Advisor, substantially all of which will be treated as an expense upon closing of the Merger.

**Federal Tax Consequences**

The following discussion summarizes the material federal income tax consequences in connection with the Merger to a stockholder of ours who is a U.S. citizen or resident or that is a tax exempt organization. Duane Morris LLP, our counsel, has reviewed the following discussion and believes that it fairly summarizes the federal income tax considerations that are likely to be material to our stockholders. Such discussion is based on current law. The discussion is not exhaustive of all possible tax considerations, nor does the discussion give a detailed description of any state, local, or foreign tax considerations. This discussion does not describe all of the aspects of federal income taxation that may be relevant to a stockholder in light of his or her particular circumstances or to certain types of stockholders (including insurance companies, financial institutions or broker-dealers, foreign corporations and persons who are not citizens or residents of the United States) subject to special treatment under the federal income tax laws. No ruling has been or will be requested from the IRS.

EACH STOCKHOLDER IS URGED TO CONSULT WITH HIS OR HER OWN TAX ADVISOR REGARDING THE SPECIFIC CONSEQUENCES TO HIM OR HER OF THE OWNERSHIP OF COMMON STOCK IN AN ENTITY THAT HAS ELECTED TO BE TAXED AS A REAL ESTATE INVESTMENT TRUST, INCLUDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF SUCH OWNERSHIP AND ELECTION AND OF POTENTIAL CHANGES IN APPLICABLE TAX LAWS.

*General.* We expect to continue to be taxed as a REIT for federal income tax purposes. We believe that we were organized, have operated and, assuming consummation of the Merger, will continue to operate after the Merger in such a manner as to meet the requirements for qualification and taxation as a REIT under the Code, and we intend to continue to operate in such a manner. No assurance, however, can be given that we will continue to operate in a manner so as to remain qualified as a REIT.

In the opinion of our counsel, assuming that (i) we are currently qualified to be taxed as a REIT under the Code; (ii) the assumptions and representations referred to below are true upon and following the Merger, including that we will not succeed to any earnings and profits of the Service Providers; and (iii) following the Merger, the surviving corporations will operate in accordance with the terms described herein, following the Merger, we should continue to qualify as a REIT for our current and subsequent taxable years. This analysis is based on certain assumptions relating to our organization and operation and that of our Business Manager/Advisor and each of our Property Managers and is conditioned upon certain representations made by us as to certain factual matters relating to the Merger and the intended manner of our operation after the Merger and the operation of the surviving

57