# EXHIBIT 2A

Investment Banking

Corporate and Institutional
Client Group

5500 Sears Tower
Chicago, Illinois 60606
312 906 6200
FAX 312 906 6262

**Merrill Lynch**

April 1, 1998

Conseco, Inc.
11825 North Pennsylvania Street
Carmel, IN 46032

Attention: Stephen C. Hilbert

Gentlemen:

Merrill Lynch & Co. ("Merrill Lynch") is pleased to act as exclusive financial advisor to Conseco, Inc. (the "Company") in connection with a possible Acquisition Transaction involving Green Tree Financial Corporation (the "Acquisition Candidate"). This letter agreement is to confirm our understanding with respect to our engagement. As used in this letter agreement, the term "Acquisition Transaction" means, whether effected in one transaction or a series of transactions, (a) any merger, consolidation, reorganization or other business combination pursuant to which the business of the Acquisition Candidate is combined with that of the Company or one or more persons formed by or affiliated with the Company, including, without limitation, any joint venture (each a "Company Affiliate"), (b) the acquisition, directly or indirectly, by the Company or a Company Affiliate by way of a tender or exchange offer, negotiated purchase or other means of at least 10% of the then outstanding capital stock of the Acquisition Candidate , or (c) the acquisition, directly or indirectly, by the Company or any Company Affiliate of all or a substantial portion of the assets of, or of any right to all or a substantial portion of the revenues or income of, the Acquisition Candidate by way of a negotiated purchase, lease, license, exchange, joint venture or other means or (d) the acquisition, directly or indirectly, by the Company or a Company Affiliate of control of the Acquisition Candidate through a proxy contest or otherwise than through the acquisition of the Acquisition Candidate's voting capital stock.

Merrill Lynch will assist the Company in analyzing, structuring, negotiating and effecting an Acquisition Transaction on the terms and conditions of this letter agreement. If requested by the Company, Merrill Lynch will render an opinion (the "Opinion") as to whether the consideration to be paid in a proposed Acquisition Transaction is fair to the Company from a financial point of view.

In the event that the Company or a Company Affiliate makes a tender or exchange offer for securities of the Acquisition Candidate, the Company will retain, or cause such Company Affiliate to retain, Merrill Lynch as sole dealer manager for such offer and will enter into, or cause such Company Affiliate to enter into, a dealer manager agreement with Merrill Lynch in Merrill Lynch's standard form, including provisions for additional fees.

The Company agrees to pay the following fees to Merrill Lynch for its financial advisory services:

(1) A fee of $5,000,000, contingent upon and payable in cash upon the earlier of (a) the execution of a definitive agreement to effect an Acquisition Transaction and (b) the commencement by the Company or a Company Affiliate of a tender offer or exchange offer for securities of the Acquisition Candidate;



**Merrill Lynch**

(2) If, during the period Merrill Lynch is retained by the Company or within two years thereafter, (a) an Acquisition Transaction is consummated or (b) the Company or a Company Affiliate enters into an agreement with the Acquisition Candidate which subsequently results in an Acquisition, a fee of $22,000,000, payable in cash upon the closing of such Acquisition Transaction or, in the case of a tender offer or exchange offer, at such earlier date as may be specified in the dealer manager agreement entered into in connection with such offer. Any fee previously paid to Merrill Lynch pursuant to clause (1) of this paragraph will be deducted from any fee to which Merrill Lynch is entitled pursuant to this clause (2).

In addition to any fees that may be payable to Merrill Lynch under this letter agreement, the Company agrees to reimburse Merrill Lynch, upon request made from time to time, for its reasonable out-of-pocket expenses incurred in connection with Merrill Lynch's activities under this letter agreement, including the reasonable fees and disbursements of its legal counsel.

It is understood that the Opinion will be dated both as of a date reasonably proximate to the date of the definitive agreement between the Company or a Company Affiliate and the Acquisition Candidate providing for an Acquisition Transaction and the date of the proxy statement to be mailed to the shareholders of the Company in connection with such Acquisition. It is further understood that the Opinion will be prepared solely for the confidential use of the Board of the Company and will not be reproduced, summarized, described or referred to or given to any other person without Merrill Lynch's prior written consent. It is further understood that, if the Opinion is included in the proxy statement to be mailed to the shareholders of the Company in connection with the Acquisition Transaction, the Opinion will be reproduced in such proxy statement in full, and any description of or reference to Merrill Lynch or summary of the Opinion in such proxy statement will be in a form acceptable to Merrill Lynch and its counsel. Except as provided in this letter agreement, the Opinion will not be reproduced, summarized, described or referred to without Merrill Lynch's prior written consent.

The Company will furnish or cause to be furnished to Merrill Lynch (and, if negotiations proceed with the Acquisition Candidate, will request that the Acquisition Candidate furnish Merrill Lynch) such information as Merrill Lynch believes appropriate to its assignment (all such information so furnished being the "Information"). The Company recognizes and confirms that Merrill Lynch (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this letter agreement and in rendering the Opinion without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information and (c) will not make an appraisal of any assets of the Acquisition Candidate or the Company.

The Company agrees to indemnify Merrill Lynch and its affiliates and their respective directors, officers, employees, agents and controlling persons (Merrill Lynch and each such person being an "Indemnified Party") from and against any and all losses, claims, damages and liabilities, joint or several, to which such Indemnified Party may become subject under any applicable federal or state law, or otherwise, and related to or arising out of any Acquisition Transaction contemplated by this letter agreement or the engagement of Merrill Lynch pursuant to, and the performance by Merrill Lynch of the services contemplated by, this letter agreement and will reimburse any Indemnified Party for all expenses (including counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense of any pending or threatened claim or any action or proceeding arising therefrom, whether or not such Indemnified Party is a party and whether or not such claim, action or proceeding is initiated or brought by or on behalf of the Company. The Company will not be liable under the foregoing indemnification provision to the extent that any loss, claim, damage, liability or expense is found in a final judgment by a court to have resulted from Merrill Lynch's bad faith or gross negligence. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in

Transaction

or pursuant to the third paragraph of this agreement

and

except in connection with the Company's proxy statement described in the next sentence

as of

reasonably

reasonable

willful misconduct

Merrill Lynch agrees to hold the Information in strictest confidence and that it will use such information solely to evaluate the Acquisition Candidate on behalf of the Company.

Merrill Lynch

(willful misconduct,)

contract or tort or otherwise) to the Company or its security holders or creditors related to or arising out of the engagement of Merrill Lynch pursuant to, or the performance by Merrill Lynch of the services contemplated by, this letter agreement except to the extent that any loss, claim, damage or liability is found in a final judgment by a court to have resulted from Merrill Lynch's bad faith or gross negligence

If the indemnification of an Indemnified Party provided for in this letter agreement is for any reason held unenforceable, the Company agrees to contribute to the losses, claims, damages and liabilities for which such indemnification is held unenforceable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Merrill Lynch, on the other hand, of the Acquisition Transaction as contemplated (whether or not the Acquisition Transaction is consummated) or (ii) if (but only if) the allocation provided for in clause (i) is for any reason held unenforceable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand, and Merrill Lynch, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this paragraph the relative benefits to the Company and Merrill Lynch of the Acquisition Transaction as contemplated shall be deemed to be in the same proportion that the total value paid or issued or contemplated to be paid or issued by the Company or any Company Affiliate to the Acquisition Candidate or its security holders, as the case may be, as a result of or in connection with the Acquisition Transaction bears to the fees paid or to be paid to Merrill Lynch under this letter agreement; <u>provided</u>, <u>however</u>, that, to the extent permitted by applicable law, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the aggregate fees actually paid to Merrill Lynch under this letter agreement.

The Company agrees that, without Merrill Lynch's prior written consent it will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification could be sought under the indemnification provision of this letter agreement (whether or not Merrill Lynch or any other Indemnified Party is an actual or potential party to such claim, action or proceeding), unless such settlement, compromise or consent includes an unconditional release of each Indemnified Party from all liability arising out of such claim, action or proceeding.

(which consent will not be unreasonably withheld)

The Company acknowledges and agrees that Merrill Lynch has been retained to act solely as financial advisor to the Company. In such capacity, Merrill Lynch shall act as an independent contractor, and any duties of Merrill Lynch arising out of its engagement pursuant to this letter agreement shall be owed solely to the Company.

Merrill Lynch's engagement hereunder may be terminated by either the Company or Merrill Lynch at any time upon written notice to that effect to the other party, it being understood that the provisions relating to the payment of fees and expenses, indemnification, limitations on the liability of Indemnified Parties, contribution, settlements, the status of Merrill Lynch as an independent contractor, the limitation on to whom Merrill Lynch shall owe any duties and waiver of the right to trial by jury will survive any such termination. The Company acknowledges that Merrill Lynch may represent another party, including the Acquisition Candidate, in a transaction involving the Acquisition Candidate following the termination of the engagement hereunder.

In the event that an Indemnified Party is requested or required to appear as a witness in any action brought by or on behalf of or against the Company or any Company Affiliate or the Acquisition Candidate in which such Indemnified Party is not named as a defendant, the Company agrees to reimburse Merrill Lynch for all expenses incurred by it in connection with such Indemnified Party's appearing and preparing to appear as such a witness, including, without limitation, the fees and disbursements of its legal counsel.

(reasonable)

No waiver, amendment or other modification of this letter agreement shall be effective unless in writing and signed by each party to be bound thereby.

This letter agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Each of Merrill Lynch and the Company (in its own behalf and, to the extent permitted by applicable law, on behalf of its shareholders) waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Merrill Lynch pursuant to, or the performance by Merrill Lynch of the services contemplated by, this letter agreement.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Merrill Lynch the duplicate copy of this letter agreement enclosed herewith.

Very truly yours,

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED

By ____________________
Managing Director
Investment Banking Group

Accepted and Agreed
to as of the date first
written above:

Conseco, Inc.

By ____________________
Chairman, President
and Chief Executive Officer