# EXHIBIT 2B

ANNEX C

April 6, 1998

Board of Directors

Conseco, Inc.

11825 N. Pennsylvania Street

Carmel, IN 46032

Members of the Board:

We understand that Conseco, Inc. (the "Acquiror"), a newly formed, wholly owned subsidiary of the Acquiror (the "Acquisition Sub"), and Green Tree Financial Corporation (the "Company") propose to enter into an Agreement and Plan of Merger (the "Agreement"), dated April 6, 1998, pursuant to which the Acquisition Sub is to be merged with and into the Company in a transaction (the "Merger") in which each outstanding share of the Company's common stock, par value $.01 per share, (the "Company Shares"), will be converted into the right to receive .9165 shares (the "Exchange Ratio") of the common stock, no par value, of the Acquiror ("the Acquiror Shares"), all as set forth more fully in the Agreement. In connection with the Merger, the Acquiror and the Company also propose to enter into a Stock Option Agreement (the "Option Agreement"), pursuant to which the Company will grant to the Acquiror an option to acquire, under certain circumstances, up to 19.9% of the Company Shares outstanding on the date of the Option Agreement, all as set forth more fully in the Option Agreement.

You have asked us whether, in our opinion, the Exchange Ratio is fair from a financial point of view to the Acquiror. In arriving at the opinion set forth below, we have, among other things:

Reviewed certain publicly available business and financial information relating to the Acquiror and the Company that we deemed to be relevant;

Reviewed certain information, including financial forecasts, relating to the businesses, earnings, cashflow, assets, liabilities and prospects of the Acquiror and the Company, as well as the amount and timing of the cost savings and related charges and expenses and revenue enhancements expected to result from the Merger furnished to us by the senior management of the Acquiror (the "Merger Benefits"); Conducted discussions with members of senior management of the Acquiror and the Company concerning the foregoing, including the respective businesses, prospects, regulatory condition and contingencies of the Acquiror and the Company before and after giving effect to the Merger and the Merger Benefits;

Reviewed the market prices and valuation multiples for the Acquiror Shares and the Company Shares and compared the Acquiror Shares and the Company Shares with those of certain publicly traded companies that we deemed to be relevant;

Reviewed the results of operations of the Company and the Acquiror and compared them with those of certain publicly traded



EXHIBIT

B

companies that we deemed to be relevant;

    Compared the proposed financial terms of the Merger with the financial terms of certain other transactions that we deemed to be relevant;

C-1

<PAGE>

    Participated in certain discussions and negotiations among representatives of the Company and the Acquiror and their respective financial and legal advisors;

    Reviewed the potential pro forma impact of the Merger;

    Reviewed draft dated April 6, 1998 of the Agreement and the Option Agreement; and

    Reviewed such other financial studies and analyses and took into account such other matters as we deemed necessary, including our assessment of general economic, market and monetary conditions. In preparing our opinion, we have assumed and relied on the accuracy and completeness of all information supplied or otherwise made available to us, discussed with or reviewed by or for us, or publicly available, and we have not assumed responsibility for independently verifying such information or undertaken an independent evaluation or appraisal of any of the assets or liabilities, contingent or otherwise, of the Company or the Acquiror or any actuarial analysis with respect to the Acquiror, nor have we been furnished any such evaluation, appraisal or actuarial analysis. We are not experts in the evaluation of allowances for credit or loan losses or in the valuation of residual interests or other assets resulting from the Company's securitization transactions ('Securitization Assets"), and we have not made an independent evaluation of the adequacy of the allowance for credit or loan losses of the Company, reviewed any individual credit or loan files relating to the Company nor made an independent valuation of the Securitization Assets. In addition, we have not assumed any obligation to conduct, nor have we conducted, any physical inspection of the properties or facilities of the Company or the Acquiror. With respect to the financial forecast information of the Company and the Acquiror, including, without limitation, financial forecasts, evaluation of contingencies and projections regarding, among other things, receivable originations, prepayment speeds, delinquencies, under-performing and non-performing assets, net charge-offs, adequacy of reserves, valuation of the Securitization Assets and future economic conditions pertaining to the Company, and the Merger Benefits, furnished to or discussed with us by the Company and the Acquiror, we have assumed that they have been reasonably prepared and reflect the best currently available estimates, allocations and judgements of the senior management of the Company and the Acquiror as to the expected future financial performance of the Company, the Acquiror or the combined entity, as the case may be, and the Merger Benefits. We express no opinion as to such financial forecast information or the Merger Benefits or the assumptions upon which they were based. We have further assumed that the Merger will qualify as a tax-free reorganization for U.S. federal income tax purposes and will be accounted for as a pooling-of-interests under generally accepted accounting principles. We have also assumed that the

final forms of the Agreement and the Option Agreement will be substantially similar to the last drafts reviewed by us.

Our opinion is necessarily based upon market, economic and other conditions as in effect on, and the information made available to us as of, the date hereof. For the purposes of rendering this opinion, we have assumed, in all respects material to our analysis, that the representations and warranties of each party in the Agreement and all related documents and instruments (collectively, the "Documents") contained therein are true and correct, that each party to the Documents will perform all of the covenants and agreements required to be performed by such party under such Documents, and that all conditions to the consummation of the Merger will be satisfied without waiver thereof. We have also assumed that in the course of obtaining the necessary regulatory or other consents or approvals (contractual or otherwise) for the Merger, no restrictions, including any divestiture requirements or amendment or modifications, will be imposed that will have a material adverse affect on the contemplated benefits of the Merger, including the Merger Benefits.

We are acting as financial advisor to the Acquiror in connection with the Merger and will receive a fee from the Acquiror for our services, a significant portion of which is contingent upon the consummation of the Merger.

In addition, the Acquiror has agreed to indemnify us for certain liabilities arising out of our engagement. We have in the past provided financial advisory and financing advisory, investment banking and other services to the Acquiror and may continue to do so, and have received, and may receive, customary fees for the rendering of such services. We have in the past provided, and are currently providing financial advisory, investment banking and other services to the Company and its affiliates, including acting as a lender to the Company (pursuant to the uncommitted reverse repurchase agreement, dated July 1997, of which you are aware), and may continue to do so, and have received, and may receive, customary fees for the rendering of such services. In addition, in the ordinary course of our business, we may actively trade debt and equity securities of the Acquiror and its affiliates and the Company and its affiliates for our own account and the accounts of our customers, and therefore we may from time to time hold a long or short position in such securities.

This opinion is for the use and benefit of the Board of Directors of the Acquiror. Our opinion addresses only the financial fairness of the Exchange Ratio, and does not address the merits of the underlying decision by the Acquiror to engage in the Merger, and does not constitute a recommendation to any stockholder as to how such stockholder should vote on the proposed Merger or any matter related thereto.

We are not expressing any opinion herein as to the prices at which the Acquiror Shares will trade following the announcement or consummation of the Merger.

On the basis of and subject to the foregoing, we are of the opinion that, as of the date hereof, the Exchange Ratio is fair from a financial point of view to the Acquiror.

Very truly yours,

/s/MERRILL LYNCH, PIERCE,

FENNER & SMITH INCORPORATED

MERRILL LYNCH, PIERCE, FENNER &

SMITH INCORPORATED


BELOW IS AN EXCERPT FROM THE PROXY STATEMENT RE: WHAT ML DID DO:

The following is a summary of certain of the financial and comparative analyses presented by Merrill Lynch to the Conseco Board of Directors on April 6, 1998 in connection with the Merrill Lynch Opinion dated as of such date.

Publicly Traded Comparables -- Acquisition Mode. Merrill Lynch reviewed and compared certain financial and operating information and ratios (described below) for Green Tree with the publicly available corresponding data compiled by First Call for a group of selected companies that make loans and hold them in portfolio on their balance sheets and a group of selected companies that securitize their loans using gain on sale accounting treatment, in each case, which Merrill Lynch deemed to be reasonably comparable to Green Tree. The group of selected portfolio lending companies (the "Portfolio Companies") consisted of: Associates First Capital Corporation, Household International, Inc. and Beneficial Corporation. The group of selected gain on sale companies (the "Gain on Sale Companies") consisted of: The Money Store, Inc., FIRSTPLUS Financial Group, Inc., Ocwen Financial Corporation, ContiFinancial Corporation, AMRESCO, Inc. and United Companies Financial Corporation.

Based on a review of such information for the Portfolio Companies, Merrill Lynch compared: (i) current trading price to actual 1997 earnings per share ("EPS") for the Portfolio Companies, which figures were obtained from First Call, as of March 27, 1998, and ranged from 22.0x to 26.9x, with an average of 24.5x, compared to a multiple of 13.3x for Green Tree Common Stock based upon figures from First Call; (ii) current trading price to estimated 1998 EPS for the Portfolio Companies, which estimates were obtained from First Call and ranged from 18.2x to 23.0x, with an average of 20.5x, compared to a multiple of 11.6x for Green Tree Common Stock based upon estimates from First Call; (iii) current trading price to estimated 1999 EPS for the Portfolio Companies, which estimates were obtained from First Call and ranged from 15.4x to 21.3x, with an average of 17.4x, compared to a multiple of 10.4x for Green Tree Common Stock based upon estimates from First Call; (iv) current trading price to book value for the Portfolio Companies, as of December 31, 1997, which ranged from 3.40x to 4.42x, with an average of 3.91x, compared to a multiple of 2.89x for Green Tree Common Stock; (v) market value less total equity to managed receivables (the "Implied Receivables Premium") for the Portfolio Companies, which ranged from 24.6% to 37.2%, with an average of 30.9%, compared to the Implied Receivables Premium of 8.7% for Green Tree Common Stock; (vi)

estimated 5 year growth rate for the Portfolio Companies, which estimates were obtained from Institutional Brokers Estimate System ("IBES") and ranged from 11.0% to 19.0%, with an average of 18.5%, compared to the estimated 5 year growth rate of 18.7% for Green Tree Common Stock, based on an average of First Call, Zacks and IBES; and (vii) 1999 price to earnings ratio to 5 year growth ratio for the Portfolio Companies, which ranged from 0.81x to 1.94x, with an average of 0.95x, compared to the 1999 price to earnings ratio to 5 year growth ratio of 0.55x for Green Tree Common Stock. Financial and operating information and ratios for Beneficial Corporation were included in the calculation of the foregoing ranges; however, such information and ratios were excluded from the calculation of the foregoing averages.

Based on a review of such information for the Gain on Sale Companies, Merrill Lynch compared: (i) current trading price to actual 1997 EPS for the Gain on Sale Companies, which figures were obtained from First Call as of March 27, 1998, and ranged from 7.0x to 22.1x, with a mean of 14.7x and median of 14.8x, compared to a multiple of 13.3x for Green Tree Common Stock based upon figures from First Call; (ii) current trading price to estimated 1998 EPS for the Gain on Sale Companies, which estimates were obtained from First Call and ranged from 9.3x to 16.7x, with a mean of 14.3x and a median of 15.1x, compared to a multiple of 11.6x for Green Tree Common Stock based upon estimates from First Call; (iii) current trading price to estimated 1999 EPS for the Gain on Sale Companies, which estimates were obtained from First Call and ranged from 8.0x to 13.6x, with a mean of 10.8x and a median of 11.2x, compared to a multiple of 10.4x for Green Tree Common Stock based upon estimates from First Call; (iv) current trading price to book value for the Gain on Sale Companies, as of December 31, 1997, which ranged from 1.26x to 3.76x, with a mean of 2.94x and a median of 3.28x, compared to a multiple of 2.89x for Green Tree Common Stock; (v) Implied Receivables Premium for the Gain on Sale Companies, which ranged from 1.7% to 25.1%, with a mean of 10.9% and a median of 8.7%, compared to the Implied Receivables Premium of 8.7% for Green Tree Common Stock; (vi) estimated 5 year growth rate for the Gain on Sale Companies, which estimates were obtained from IBES which ranged from 16.0% to 25.0%, with a mean of 20.8% and a median of 20.0%, compared to the estimated 5 year growth rate ratio of 18.7% for Green Tree Common Stock based on an average of First Call, Zacks and IBES; and (vii) 1999 price to earnings ratio to 5 year growth for the Gain on Sale Companies, which ranged from 0.36x to 0.72x, with a mean of 0.53x and a median of 0.50x, compared to the 1999 price to earnings ratio to 5 year growth of 0.55x for Green Tree Common Stock. Financial and operating information and ratios for The Money Store, Inc. were included in the calculation of the foregoing ranges; however, such information and ratios were excluded from the calculation of the foregoing means and medians.

No public company utilized as a comparison in the analyses described above is identical to Green Tree. Accordingly, an analysis of publicly traded comparable companies is not mathematical; rather it involves complex considerations and judgments concerning differences in financial and operating characteristics of the comparable companies and other factors that could affect the public trading value of the comparable companies or company to which they are being compared.

Selected Consumer Finance Transactions. Merrill Lynch reviewed publicly available information regarding seven consumer finance merger transactions with a value greater than $300 million which had occurred in the United States since September 1994 that it deemed to be relevant (the "Consumer Finance Merger Transactions"). The Consumer Finance Merger Transactions and the month in which each transaction was announced were as follows: Barnett Banks, Inc./Equicredit Corporation (September 1994), Norwest Corporation/ITT Island Finance (December 1994), Bank One Corporation/First USA, Inc. (January 1997), Household/Transamerica Cons. Finance (May 1997), Travelers Group, Inc./Security Pacific Corporation (June 1997), Associates First/Beneficial Canada (February 1998) and First Union Corporation/The Money Store, Inc. (March 1998).

Merrill Lynch compared the 30 day premium to market price, price to last-twelve-months earnings, price to forward earnings, price to book value and premium to receivables. This analysis yielded a range of (i) 30 day premium to market price of 49.4% to 92.2% with an average of 66.0% and a median of 56.5%, (ii) price to last-twelve-months earnings multiples of 11.7x to 25.1x with an average of 17.3x and a median of 16.5x, (iii) price to forward earnings multiples of 14.3x to 21.7x with an average of 17.4x and a median of 16.9x, (iv) price to book value multiples of 2.81x to 5.46x with an average of 3.81x and a median of 3.25x, (v) premium to receivables of 9.0% to 48.3% with an average of 23.9% and a median of 23.0%; and estimated transaction prices for Green Tree on the basis of such multiples.

None of the business combinations utilized as a comparison in the analyses described above is identical to the Merger. Accordingly, an analysis of comparable business combinations is not mathematical; rather it involves complex considerations and judgments concerning differences in financial and operating characteristics of the comparable companies and other factors that could affect the public trading value of the comparable companies or company to which they are being compared.

Discounted Dividend Analysis. Using a discounted dividend analysis, Merrill Lynch estimated the present value of the future streams of after-tax earnings that Green Tree could produce from 1998 through 2002 and distribute to shareholders ("dividendable net income") assuming a pre-tax cost savings assumption of $0 million in 1998, $48 million in 1999 and $50 million in 2000 and an after-tax restructuring charge of $452 million. Merrill Lynch assumed that Green Tree performed in accordance with earnings forecasts provided to Merrill Lynch by Conseco's senior management and that Green Tree's tangible common equity to managed assets ratio would be maintained at a 4.6% level. Merrill Lynch estimated the

terminal values for Green Tree Common Stock at 12.0x, 14.0x and 16.0x Green Tree's 2003 estimated net income (defined as earnings less amortization). The dividendable net income streams and terminal values were then discounted to present values using discount rates (ranging from 13% to 17%) chosen to reflect different assumptions regarding required rates of return of holders or prospective buyers of Green Tree Common Stock. This discounted dividend analysis indicated a reference range of $46.12 to $71.22 per share of Green Tree Common Stock. As indicated above, this analysis is not necessarily indicative of actual values or actual future results and does not purport to reflect the prices at which any securities may trade at the present or at any time in the future. Discounted dividend analysis is a widely used valuation methodology, but the results of such methodology are highly dependent upon the numerous assumptions that must be made, including earnings growth rates, dividend payout rates, terminal values and discount rates.

36

<PAGE>

Pro Forma Impact. Based on projections provided by senior management of Conseco and the Merger Benefits, including pre-tax cost savings of $0 million in 1998, $48 million in 1999 and $50 million in 2000, Merrill Lynch analyzed certain pro forma effects of the Merger. This analysis indicated that the transaction would be dilutive to projected earnings per share of Conseco Common Stock in 1998 and accretive to projected earnings per share of Conseco Common Stock in 1999 and 2000. The analysis also indicated that the Merger would be dilutive to Conseco's book value and accretive to its tangible book value per share based on reported financial results as of December 31, 1997. In this analysis, Merrill Lynch assumed that Conseco performed in accordance with the publicly available earnings forecasts and the Merger Benefits provided to Merrill Lynch by Conseco's senior management.

The summary set forth above does not purport to be a complete description of the analyses performed by Merrill Lynch underlying the Merrill Lynch Opinion. Arriving at a fairness opinion is a complex process not necessarily susceptible to partial analysis or summary description. Merrill Lynch believes that its analyses must be considered as a whole and that selecting portions of its analyses and of the factors considered by it, without considering all such factors and analyses, could create a misleading view of the processes underlying the Merrill Lynch Opinion. Merrill Lynch did not assign relative weights to any of its analyses in preparing the Merrill Lynch Opinion. The matters considered by Merrill Lynch in its analyses are based on numerous macroeconomic, operating and financial assumptions with respect to industry performance, general business and economic conditions and other matters, many of which are beyond Conseco's or Green Tree's control and involve the application of complex methodologies and educated judgment. Any estimates incorporated in the analyses performed by Merrill Lynch are not

necessarily indicative of actual past or future results or values, which may be significantly more or less favorable than such estimates. Estimated values do not purport to be appraisals and do not necessarily reflect the prices at which businesses or companies may be sold in the future, and such estimates are inherently subject to uncertainty.

The projections furnished to Merrill Lynch and used by it in certain of its analyses were prepared by the senior management of Conseco. Conseco does not publicly disclose internal management projections of the type provided to Merrill Lynch in connection with its review of the Merger, and as a result, such projections were not prepared with a view towards public disclosure. The projections were based on numerous variables and assumptions which are inherently uncertain, including, without limitation, factors related to general economic and competitive conditions, and accordingly, actual results could vary significantly from those set forth in such projections.

Merrill Lynch is an internationally recognized investment banking and advisory firm and is continually engaged in the valuation of businesses and their securities in connection with mergers and acquisitions, corporate and other purposes. Merrill Lynch was selected to act as financial advisor to the Conseco Board of Directors because of its substantial expertise in transactions similar to the Merger and its reputation in investment banking and mergers and acquisitions.

In connection with Conseco's engagement of Merrill Lynch, Conseco and Merrill Lynch have entered into a letter agreement dated April 1, 1998 relating to the services to be provided by Merrill Lynch in connection with the Merger. Conseco has agreed to pay Merrill Lynch fees as follows: (i) a cash fee of $2.5 million which was paid upon the execution of the Merger Agreement; and (ii) a cash fee of $22 million (less the $2.5 million in fees paid pursuant to clause (i) above) payable upon consummation of the Merger (or of certain similar business combination transactions between Conseco and Green Tree). In such letter, Conseco also agreed to reimburse Merrill Lynch for its reasonable out-of-pocket expenses incurred in connection with its advisory work, including the reasonable fees and disbursements of its legal counsel, and to indemnify Merrill Lynch against certain liabilities relating to or arising out of the Merger, including liabilities under the federal securities laws.