IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CITY OF ST. CLAIR SHORES GENERAL )
EMPLOYEES RETIREMENT SYSTEM, )
On behalf of Itself and All Others Similarly )
Situated, and Derivatively On behalf of Inland )
Western Retail Real Estate Trust, Inc., )
                                                            )
                        Plaintiffs,                        )          No. 07 C 6174
              v.                                           )
                                                            )          Judge Robert W. Gettleman
INLAND WESTERN RETAIL REAL ESTATE )
TRUST, INC. INLAND WESTERN REAL )
ESTATE CORPORATION; THE INLAND )
GROUP, INC., INLAND WESTERN RETAIL )
REAL ESTATE ADVISORY SERVICES, INC., )
INLAND SOUTHWEST MANAGEMENT )
CORP., INLAND NORTHWEST )
MANAGEMENT CORP., INLAND WESTERN )
MANAGEMENT CORP., ROBERT D. PARKS, )
BRENDA G. GUJRAL, FRANK A, )
CATALANO, JR., KENNETH H. BEARD, )
PAUL R. GAUVREAU, GERALD M. GORSKI, )
BARBARA A. MURPHY, STEVEN P. GRIMES, )
DANIEL A. GOODWIN, ROBERT A. BAUM, )
G. JOSEPH CONSENZA, KPMG LLP, AND )
WILLIAM BLAIR & COMPANY, L.L.C., )
                                                            )
                        Defendants.                        )

**MEMORANDUM OPINION AND ORDER**[1]

---

[1]Following an alarming trend, the pleadings in this matter – including the 117 page
Amended Complaint and the briefs in support and opposition to the instant motions to dismiss –
are needlessly verbose, repetitive, and prolongated.  Henceforth, the court will be inclined to
enforce the 15 page limit for briefs established by LR7.1.

**BACKGROUND**

**The Parties**

Plaintiffs are the City of St. Clair Shores General Employees Retirement System and Madison Investment Trust, on behalf of a class of similarly situated Inland REIT Shareholders ("Shareholders"), who received and were entitled to vote on the proposals contained in Inland REIT's September 10, 2007, proxy statement (the "Proxy").  The Proxy solicited Shareholders' approval for Inland REIT to acquire affiliated entities that performed advisory and management services for Inland REIT (the "Internalization") in exchange for Inland REIT stock valued at $375 million.

Inland REIT is a Maryland corporation with its principal executive offices in Oak Brook, Illinois.  The REIT is primarily engaged in the acquisition and ownership of commercial real estate properties, most of which are multi-tenant shopping centers located west of the Mississippi River.  As a public unlisted real estate investment trust ("REIT"), Inland REIT is required to register with the Securities and Exchange Commission ("SEC"), entitled to sell to the investing public rather than only to "qualified investors," and is required to file reports with the SEC. Inland REIT shares are unlisted because its securities are not listed on a national stock exchange.

Prior to consummation of the Internalization, Inland REIT had no direct employees and relied on Inland Western Retail Real Estate Advisory Services, Inc. (the "Advisor") and three property management companies (the "Property Managers") to conduct substantially all of its business.  The sole purpose of the Advisor, an Illinois corporation formed in 2003, was to serve as the business manager and advisor to Inland REIT.  The Advisor was a wholly-owned subsidiary of Inland Real Estate Investment Corporation (the "Sponsor"), which had formed

Inland REIT in 2003. The Sponsor is wholly owned by the Inland Group, Inc. (the "Inland Group"). The Inland Group, also based in Oak Brook, Illinois, is a group of companies dealing in real estate-related businesses and controlled by defendants Daniel Goodwin, Robert D. Parks, Robert H. Baum, G. Joseph Cosenza, and Brenda G. Gujral.

The three Property Managers include Inland Southwest Management Corporation, Inland Northwest Management Corporation, and Inland Western Management Corporation, all of which were incorporated in Delaware in 2003, based in Oak Brook, Illinois, and, prior to consummation of the Internalization, owned by defendants Parks, Goodwin, Baum, Cosenza, Gujral, and Grimes. The Property Managers provided Inland REIT with property management services under the terms of separate agreements designated for each property.

The Advisor and Property Managers were acquired by Inland REIT in the Internalization in exchange for consideration valued at approximately $375 million, comprised of 37,500,000 shares of Inland REIT's common stock, representing 7.7% of its total shares outstanding (the "Internalization Consideration").

Defendant KPMG LLP ("KPMG") is a New York-based accounting firm and the independent auditor for Inland REIT, the Advisor, the Property Managers, the Sponsor, and the Inland Group. Defendant William Blair & Company, L.L.C. ("William Blair") is a Chicago-based investment firm that provided an oral and written fairness opinion (the "Fairness Opinion"), which was incorporated into the Proxy, stating that the Internalization Consideration to be paid by Inland REIT was financially fair to Inland REIT and its shareholders.

The Amended Complaint names eleven individuals as defendants (the "Individual Defendants"). Defendants Daniel Goodwin, Chairman and President of the Inland Group,

Robert H. Baum, Vice Chairman and Executive Vice President-General Counsel of the Inland Group, G. Joseph Cosenza, a Director and Vice Chairman of the Inland Group, Brenda G. Gujral, Chief Executive Officer of Inland REIT and a longtime Board member of Inland REIT, and Steven P. Grimes, Treasurer and Principal Financial Officer of Inland REIT, collectively profited hundreds of millions of dollars from the Internalization. Defendants Gujral, Robert D. Parks, Frank A. Catalano, Jr., Kenneth H. Beard, Paul R. Gauvreau, Gerald M. Gorski, and Barbara A. Murphy were members of the Board of Directors of Inland REIT (the "Director Defendants"). The latter four – defendants Beard, Gauvreau, Gorski, and Murphy – were deemed by the Board to be "independent" directors and appointed to serve on a special committee formed to consider the Internalization and its alternatives (the "Special Committee").

**The Amended Complaint**

Plaintiffs' seven count amended class action complaint alleges that defendants breached their contractual and common law fiduciary duties owed to the Shareholders and Inland REIT, and secured Shareholder approval of a self-dealing internalization that greatly overvalued the Advisor and Property Managers by issuing the Proxy, which was materially false and misleading. Specifically, the Amended Complaint alleges: a class action claim against Inland REIT, the Advisor, the Property Managers, William Blair, KPMG, and the Individual Defendants asserting a violation of § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, (Count I); a class action claim against the Advisor, the Property Managers, the Sponsor, the Inland Group, and the Individual Defendants asserting violations of § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), (Count II); a class action claim against the Advisor, the Property Managers, the Sponsor, the

Inland Group, and the Individual Defendants asserting a breach of fiduciary duty (Count III); a class action claim against the Advisor, the Property Managers, the Sponsor, the Inland Group, the Individual Defendants, KPMG, and William Blair asserting the aiding and abetting of the breach of fiduciary duty (Count IV); a shareholders' derivative claim against the Advisor, the Property Managers, the Sponsor, the Inland Group, and the Individual Defendants asserting a breach of fiduciary duty (Count V); a shareholders' derivative claim against the Advisor, the Property Managers, the Sponsor, the Inland Group, and defendants Goodwin, Parks, Baum, Cosenza, Grimes, and Gujral asserting unjust enrichment (Count VI); and a shareholders' derivative claim against the Advisor, the Property Managers, the Sponsor, the Inland Group, and defendants Goodwin, Parks, Baum, Cosenza, Grimes, and Gujral asserting breach of contract (Count VII).

**Motion to Dismiss**

Defendants have moved to dismiss the amended complaint. They argue that Counts I and II fail to meet the heightened pleading standards set forth in the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b), (the "PLSRA"). Defendants further argue that Counts III through VII should be dismissed because plaintiffs lack standing to assert their common law claims. Specifically, they argue that plaintiffs fail to meet the prerequisites of the demand futility exception under Maryland law to state a derivative claim, or to plead particularized facts to overcome the protections of the Business Judgment Rule. Alternatively, defendants argue that plaintiffs' common law contract claims (Counts III through VII) should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

**<u>DISCUSSION</u>**

### *I. Legal Standard*

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In analyzing the motion, the court must accept the well-pleaded allegations as true, and view those allegations in the light most favorable to plaintiff. McMillan v. Collection Professionals, Inc., 455 F.3d 754, 758 (7th Cir. 2006). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do . . .." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

### *II. Securities Exchange Act Claims (Counts I & II)*

Plaintiffs allege that defendants prepared and disseminated a materially false and misleading Proxy in violation of Sections 14(a) and 20(a) of the Exchange Act. Defendants argue that plaintiffs' § 14(a) claim fails as a matter of law because plaintiffs do not offer specific facts creating a strong inference of negligence.

#### *A. Section 14(a) - Count I*

Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder prohibit the solicitation of proxy statements:

> containing any statement which is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in

any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a-9(a); 15 U.S.C. §78n(a). To state a claim under 14(a), a plaintiff must allege that: (1) the proxy statement contained a material misstatement or omission; which (2) caused plaintiff's injury; and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 384-85, 90 S.Ct. 616, 621-22, 24 L.Ed.2d 593, 602 (1970). "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." TSC Indus. v. Northway, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757, 766 (1976). In other words, a fact is material if, "under all the circumstances, the omitted fact would have assumed *actual significance* in the deliberations of the reasonable shareholder." Id. (emphasis added).

### 1. *Private Securities Litigation Reform Act Pleading Requirements*

As a preliminary matter, the parties dispute whether the Private Securities Litigation Reform Act (the "PLSRA"), 15 U.S.C. § 78u-4, applies to plaintiff's Section 14(a) and Rule 14a-9 claims. Plaintiff argues that the heightened pleading standards of the PSLRA do not apply to § 14(a) proxy claims and that only a showing of negligence is required at the pleading stage. Defendants counter that there is no special § 14 "carve-out" from the PLSRA's requirements and that the PSLRA applies to all § 14(a) claims regardless of whether a claim alleges fraud or negligence.

The PSLRA establishes heightened pleading standards in securities cases where there are allegations of false or misleading statements or omissions of material fact. The PSLRA provides in relevant part:

In any private action arising under this title ... in which plaintiff alleges that the defendant –

> (A) made an untrue statement of a material fact; or

> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).

In addition, the PSLRA requires that where "the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind," the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A strong inference is not "merely plausible or reasonable," but must be "cogent and compelling" as compared to other explanations which may be inferred from the facts alleged. Tellabs, Inc. v. Mokar Issues & Rights, Ltd., 551 U.S. 308, 308, 127 S.Ct. 2499, 2504, 168 L.Ed.2d 179, 188 (2007).

The Seventh Circuit recently addressed the applicability of the PSLRA to § 14(a) actions alleging negligence, holding that the PSLRA is applicable to § 14(a) claims, but that it does not require the complaint to state "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Beck v. Dobrowski, --- F.3d --- , 2009 WL 723172, *1 (7th Cir. 2009). "[A] proxy solicitation that contains a misleading misrepresentation or omission violates the section even if the issuer believed in perfect good faith that there was nothing misleading in the proxy materials." Id. Because there is no required state of mind for a

violation of § 14(a), plaintiffs need not plead particular facts giving rise to an inference that is "cogent and at least as compelling as any opposing inference" when alleging negligent misrepresentation or omission in a proxy statement.[2] Id.; Tellabs, 127 S.Ct. at 2505.

### 2. Adequacy of Plaintiffs' Pleading

Plaintiffs' general allegations in the amended complaint assert that defendants' negligent misrepresentations and omissions of material facts rendered the Proxy false and misleading, defendant's negligence caused plaintiffs injury, and the Proxy solicitation itself was an essential link in the transaction. Specifically, plaintiffs allege: (1) the Advisor's financial statements understated expenses; (2) the Property Managers' financial statements understated expenses; (3) the Proxy contained materially false and misleading statements about the fairness of the consideration paid for the Internalization; (4) the Property Managers' financial statements reported inflated fees; (5) the Proxy contained materially false and misleading statements about the purchase options; (6) the independent auditors' reports were materially false and misleading; (7) the Fairness Opinion was materially false and misleading; (8) the Proxy failed to disclose strategic alternatives to the Internalization; and (9) the Proxy failed to disclose material facts about the Advisor's and the Property Managers' past performances.

At issue is whether plaintiffs' pleadings are sufficient to plead a 14(a) claim under the PSLRA.

_____

[2]Prior to Beck, the majority of district courts in this circuit and circuit courts that have addressed the issue found that claims arising under the Exchange Act pled in negligence were subject to the heightened PSLRA standards, including the state of mind requirement.  In re JPMorgan Chase & Co. Securities Litigation, 2007 WL 4531794, at *7-8 (N.D. Ill. Dec. 18, 2007) (discussing the varying approaches to § 14(a) and citing cases adhering to the majority view).

***(1)-(3) The Advisor's and the Property Manager's Expenses; Fairness
of Internalization Consideration***

In the Amended Complaint, which contains 351 paragraphs and 117 pages, plaintiffs allege that the Advisor's financial statements included in the Proxy failed to report expenses, which inflated the financial performance and value of both entities in the Internalization. According to plaintiffs, the Advisor's financial statements are misleading because they failed to reflect any amount of salary and benefits expenses, outside of those directly reimbursed by Inland REIT, which would have been necessary for the Advisor to carry out its day-to-day operations. Plaintiffs also allege that the Advisor's financial statements omitted general and administrative reimbursements from Inland REIT totaling $9.4 million over a three year period. As a result of such omissions, the financial statements reflected earnings before interest, taxes, depreciation, and amortization ("EBITDA") for the Advisor that were nearly 100% of its total revenues – a level of operating efficiency that is highly improbable.

In addition, plaintiffs allege that the Advisor's financial statements were false because they violated aspects of generally accepted accounting practices ("GAAP") by failing to disclose details of all related party transactions between or among Inland REIT, the Advisor, and the Property Managers, including disclosure of expense allocations, payments of salaries, and service agreements. Plaintiffs allege that the Property Managers' financial statements failed to report expenses at the level necessary to provide services to more than 300 properties and, as a result, the Property Managers reported an EBITDA of 60% of Total Revenues. Inland REIT paid the Property Managers approximately $30 million in Property Management Fees in 2006 and $20.7 million in fees in 2005. The Property Managers retained most of the responsibilities attached to these fees because less than $1.5 million total was paid to subcontractors in 2005-

10

2006.  Plaintiffs argue that all of the defendants understood and knew that the Property Managers failed to account for or record necessary expenses to fulfill these responsibilities, and that the financial statements included in the Proxy and used to calculate the Internalization Consideration were not reflective of the true operating and financial performance of the Property Managers. Plaintiffs contend that these omissions were material, should have been included in the Proxy, and caused financial injury to the plaintiffs.

Moreover, plaintiffs allege that statements in the Proxy concerning the value of the Advisor and Property Managers, the fairness of the Internalization Consideration, and the fairness of the Internalization were materially false and misleading because they were based on the inflated EBITDAs.  Plaintiffs argue that Shareholders relied on these misleading statements when considering the Internalization and approved the transaction based on the misinformation, resulting in financial injury to themselves and the Shareholders.

Plaintiffs' theories regarding the Advisor's and Property Manager's financial statements and fairness of the Internalization Consideration are obviously limited by the information available at the pleading stage.  However, based on this limited information, the court finds that plaintiffs' allegations sufficiently identify the misleading statements, articulate the reasons why the statements are misleading, and state the facts upon which plaintiffs' knowledge or belief is based.  Accordingly, defendants' motion to dismiss as to these issues is denied.

### (4) The Property Managers' Fees

Plaintiffs allege that the Property Managers' financial statements included in the Proxy failed to report the systematic overcharging of fees to Inland REIT, which misled Shareholders about the actual value of the Property Managers.  Specifically, the Amended Complaint alleges

that payment of a 4.5% Property Management Fee was in excess of what the Property Managers were contractually entitled to receive, and that this systematic overcharging of fees to Inland REIT inflated the amount of Internalization Consideration defendants received.

Although there is disagreement about the effect of the information on the Shareholders, the defendants and plaintiffs agree that the financial statements included in the Proxy materials accurately reflect the fees paid by Inland REIT to the Property Managers. Accordingly, plaintiffs have failed to state a § 14(a) claim as to this issue.

### (5) Purchase Options

Plaintiffs allege that Inland REIT had purchase options, due to ripen in 2008, to acquire the businesses and assets of the Advisor and Property Managers in exchange for approximately 54.1 million shares of Inland REIT stock. According to plaintiffs, defendants included a statement in the Proxy explaining to Shareholders that the Board had decided not to pursue these options because of the $541 million price tag. Plaintiffs further allege that defendants improperly calculated this amount because they relied on false and misleading financial statements and old data that inflated the revenue and income of the Advisor and Property Managers. Plaintiffs argue that, contrary to the Proxy statements, the purchase options in fact presented a better deal than both the $541 million projected by the Board, or the $375 million Internalization Consideration recommended in the Proxy. Defendants' only argument on this point is that plaintiffs fail to explicitly state in the pleadings that these statements were material.

Although plaintiffs do not allege materiality, the court is unwilling to grant the motion to dismiss as to this issue based on this technicality. Viewing the allegations in the light most favorable to plaintiffs, the omissions and misstatements, if true, would be material to

Shareholders in their evaluation of the Proxy recommendation.  Therefore, defendants' motion to dismiss as to this issue is denied.

### *(6)-(7) Independent Auditor's Reports and Fairness Opinion*

Defendants KPMG and William Blair argue respectively that plaintiffs have failed to adequately plead their 14(a) claim as to the auditor's reports and the Fairness Opinion.

"Statements of opinion or belief are actionable only if they are both objectively and subjectively false."  In re JPMorgan Chase, 2007 WL 4531794 at *31 (citing Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1095, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991)). Plaintiffs must plead with particularity to allege the falsity of a statement of opinion.  Id.   "A fairness opinion is objectively false if the subject matter of the opinion is not, in fact, fair, and is subjectively false if the speaker does not, in fact, believe the subject matter of the opinion to be fair."  Id. (quoting Shurkin v. Golden State Vintners, Inc., 2005 WL 1926620 (N.D. Cal. Aug. 10, 2005)).

*Auditor's Reports*

In the instant case, defendant KPMG was hired by Inland REIT and its affiliates to provide two independent auditor reports of the Advisor and Property Managers for inclusion in the Proxy.  Plaintiff's allege that KPMG failed to heed numerous red flags in the financial statements of the Advisor and Property Managers, and that the resulting reports were devoid of credibility or reliability.  KPMG's reports allegedly opined that the Advisor and Property Managers' financial statements were presented fairly, and that their financial positions and the results of their operations and cash flows for the relevant years were "in conformity with U.S. generally accepted accounting principles." According to the pleading, inclusion of these

KPMG's reports in the Proxy misled Shareholders into believing that the Internalization Consideration was supported by independent auditors. Defendants argue that the pleadings fall short of meeting the "subjective" prong of the *Virginia Bankshares* test as to KPMG because plaintiffs' do not actually allege that KPMG subjectively believed that its opinions were false.

Although plaintiffs do not explicitly plead scienter on the part of KPMG, they plead numerous particularized facts – so-called "red flags" in the pertinent financial statements – that strongly suggest that KPMG acted knowingly, or at least recklessly, in issuing its auditor reports. The auditor reports were especially important to Shareholders in evaluating the Proxy because the REIT was not a publically traded entity, the financial statements of the Advisor and Property Managers were not publically available, and investors had little outside information with which to evaluate the proposed Internalization. Subjective knowledge is difficult to plead and even more difficult to prove without the benefit of discovery. Given the importance of the auditors' reports to the Proxy and the numerous particularized facts that plaintiffs have included in their pleading, the court declines to dismiss Count I as to this issue at this stage of the proceedings. Therefore, the court denies KPMG's motion to dismiss for failure to state a 14(a) claim as to this issue.

*Fairness Opinion*

The Proxy also included a Fairness Opinion issued by defendant William Blair, which concluded that the Internalization Consideration was financially fair to Inland REIT. Plaintiffs argue that the inclusion of the Fairness Opinion in the Proxy mislead shareholders by suggesting that a purportedly independent entity had conducted an assessment and approval of the Internalization. Instead, according to plaintiffs, the Fairness Opinion relied on faulty

information without independent verification, omitted material facts, was devoid of credibility and reliability, and was fundamentally misleading.[3] Despite defendants' arguments to the contrary, the pleadings provide sufficient particularized facts to support a § 14(a) claim as to the fairness opinion.

Among the numerous arguments in its motion to dismiss plaintiffs' § 14(a) claim, William Blair argues that the Fairness Opinion was properly based on data provided by Inland REIT, and that it did not have a contractual duty to research the accuracy of these numbers before issuing its opinion. William Blair argues further that its opinion was provided solely to the Special Committee and the Inland REIT Board of Directors, not the shareholders. Finally, it claims that the inclusion of the Fairness Opinion in the Proxy is not legally actionable under § 14 because William Blair did not solicit shareholder approval of the Internalization. The Proxy, however, states that the Fairness Opinion "related ... to the fairness from a financial point of view, to us [the directors] and our stockholders of the consideration to be paid by us in the merger," and goes on to state that the Fairness Opinion does not constitute a "recommendation."

The bottom line is that plaintiffs have alleged that William Blair issued a misleading Fairness Opinion on the financial fairness of the Internalization, the Opinion was foreseeably included in the Proxy, and the Shareholders relied on the Opinion in deciding how to vote on the Internalization. They allege that the Fairness Opinion was based on the inflated financial statements and William Blair's examination of purportedly comparable transactions. Plaintiffs further allege that William Blair was intimately involved in the preparations leading up to the

---

[3]The Amended Complaint includes numerous particularized facts about defendant William Blair's involvement with the negotiation and valuation discussions among all the defendants, which are too lengthy to reproduce here.

Internalization, had knowledge of the Advisor's and Property Managers' businesses, was familiar with "red flags" in the numbers, and was in part compensated on the contingency that the Internalization was consummated. This is enough, at the pleading stage, to support a § 14(a) claim against William Blair. See In re Reliance Securities Litigation, 135 F.Supp.2d 480, 513 (D. Del. 2001). Defendant William Blair's motion to dismiss is denied.

### (8) Strategic Alternatives to the Internalization

Plaintiffs allege that the Proxy failed to name or discuss strategic alternatives to the Internalization considered by the Special Committee convened to assess the Internalization proposal. Plaintiffs argue that without information about the possible negative impact of the Internalization and potential alternative, Shareholders were left without material information important in deciding how to vote. Defendants contend that the Proxy adequately discussed strategic alternatives, including the option to maintain the status quo and obtain services providers to replace the Advisor and Property Managers.

Section 14(a) and Rule 14a-9 do not require corporate officers and directors to present every strategic alternative to the recommended transaction. Instead, the Exchange Act requires that "officials divulge all known material facts so that shareholders can make informed choices." Desaigoudar v. Meyercord, 223 F.3d 1020, 1024 (9th Cir. 2000) (quoting See J.I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 42, 427 (1964) ("'Section 14(a) was designed to "prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation.'").

Despite defendants' arguments to the contrary, plaintiffs allegations are not a laundry list of speculative hypotheticals. The Amended Complaint specifically highlights the fact that the

Proxy does not disclose whether or not the Board sought any third party offers to purchase the REIT's stock or assets. Plaintiffs also allege that the Proxy fails to include information about the potential negative impact of the Internalization. These allegations pinpoint omissions that were directly germane to the Board's recommendation, and failure to include them in the Proxy may have been misleading to Shareholders. Therefore, plaintiffs' have adequately stated a § 14(a) claim as to this issue.

### *(9) Past Performance of the Advisor and the Property Managers*

Plaintiffs allege that the Proxy omitted the performance evaluation criteria specified within Inland REIT's Articles of Incorporation that the Inland REIT Board was to use in determining whether to renew the Advisor and Property Managers' contractual agreements. According to plaintiffs, this information would have been material to Shareholders in considering the Internalization proposal, and the omission of the criteria resulted in Shareholders having an incomplete basis for which to vote in favor of the transaction.

Although Shareholders may have benefitted from the inclusion of the evaluation criteria in the Proxy, there is nothing in Amended Complaint that suggests that omission of the criteria rendered the Proxy false or misleading. Therefore, plaintiffs fail to state a § 14(a) claim as to this issue and defendants' motion to dismiss is granted on this issue.

### *B. Section 20 - Count II*

Section 20(a) of the Exchange Act imposes liability on persons having control over, or aiding and abetting, violators of the Exchange Act. 15 U.S.C. § 78t. It provides in relevant part:

> [E]very person who, directly or indirectly, controls any person liable under any provision of this title ... or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such control person is liable, unless the controlling person acted

in good faith and did not directly or indirectly induce the act or acts constituting the violation of the cause of the action.

Section 20(a) claims are construed liberally and require "only some indirect means of discipline or influence short of actual direction to hold a 'control person' liable." Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 881 (7th Cir. 1992) (quoting First Securities I, 463 F.2d 981, 986 (7th Cir. 1972)). In evaluating a § 20(a) claim the court considers whether plaintiff has alleged: (1) a primary securities violation; (2) that the controlling defendants exercised general control over the operations of Inland REIT; and (3) that each of the controlling defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." In re JP Morgan Chase & Co. Securities Litigation, 2007 WL 4531784, *21-22 (N.D. Ill. 2007) (quoting Harrison, 974 F.2d at 881).

As noted above, plaintiffs have adequately alleged a primary violation of § 14(a) of the Exchange Act. Plaintiffs also allege that with respect to the Proxy, the Advisor, the Property Managers, the Sponsor, the Inland Group, and the Individual Defendants acted as controlling persons of Inland REIT within the meaning of § 20(a). These defendants allegedly had positions of authority as officers and/or directors of Inland REIT, and had the ability to control the activities of the REIT, including the issuance of the Proxy. Plaintiffs further allege that these defendants possessed the power, influence, and authority to cause or prevent the wrongful conduct alleged in the Amended Complaint. Consequently, plaintiffs' § 20(a) claim is sufficiently pled and defendants' motion to dismiss Count II is denied.

### III. Common Law Claims

### A. Demand Requirement and the Demand Futility Doctrine[4]

Counts V through VII of the Amended Complaint allege shareholder derivative claims for breach of fiduciary duty (Count V), unjust enrichment (Count VI), and breach of contract (Count VII) against the Director Defendants pursuant to Maryland common law. Shareholder derivative actions are governed by the law of the state of incorporation. Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 96-97, 111 S.Ct. 1711, 1716-17, 114 L.Ed.2d 152, 164-65 (1991). The parties agree that Maryland law applies because Inland REIT was incorporated in that state. Under Maryland law, before proceeding with a derivative action, "a shareholder must first make a good faith effort to have the corporation act directly and explain to the court why such an effort was not made or did not succeed." Werbowsky v. Collomb, 362 Md. 581, 766 A.2d 123, 133 (Md. 2001). Demand may be excused under the demand futility exception only where: "(1) a demand, or delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgement rule." Id. at 144.

Defendants Parks, Gujral, Catalano, Beard, Gauvreau, Gorski, and Murphy (the "Director Defendants") comprised Inland REIT's Board of Directors at the time of the filing of the initial complaint. Three of the directors – Parks, Gujral, and Catalano – were indisputably conflicted,

---

[4]Under Fed. R. Civ. P. 23.1 a derivative action complaint must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

and the Board formed the Special Committee to take the Internalization proposal under consideration. Plaintiffs claim that they did not make a demand upon the Board before filing the initial complaint because the majority of the Director Defendants, including those on the Special Committee, were so personally and directly conflicted or committed to the decisions in dispute that they could not reasonably have been expected to respond to a demand to act in good faith. Therefore, plaintiffs argue, demand would have been futile or excused under the second prong of Maryland's demand futility exception. Defendants counter that plaintiffs fail to meet the high standards for prong two because they have not pled particularized facts to support these allegations.

The Amended Complaint falls short of meeting either prong of Maryland's demand futility exception. Nothing in plaintiffs' allegations support a showing that a majority of the Board could not reasonably be expected to consider a demand request in good faith because of personal conflict or commitment to the outcome of the Internalization. According to plaintiffs, the Special Committee members were potentially conflicted for numerous reasons, including that they: approved the Internalization; approved and disseminated the allegedly misleading Proxy; violated their fiduciary duties to prevent management self-dealing; received fees for serving as directors; were selected as Board members by non-independent members; and because two of the Special Committee members served on other civic boards with other defendants.

Despite plaintiffs' assertions, these allegations are insufficient to show a conflict. The Maryland Supreme Court has specifically dismissed all of these bases for demand futility in the seminal case of <u>Werbowsky</u>. 766 A.2d at 143 (holding, among other things, that "a majority of directors approved or participated in some way in the challenged transaction or decision" is

irrelevant in evaluating demand futility; See also Scalisi v. Fund Asset Management, L.P., 380 F.3d 133 (2d Cir.2004); Washtenaw Cty. Emp. Ret. Sys. v. Wells Real Estate Inv. Trust, Inc., 2008 WL 2302679 (N.D. Ga. Mar. 31, 2008); In re CNL Hotels & Resorts, Inc. Securities Litigation, 2005 WL 2219283 (M.D. Fla. Sept. 13, 2005). Therefore, Counts V through VII are dismissed for failure to plead particularized facts showing that demand was futile.

### B. Direct versus Derivative Action

In Counts III and IV of the Amended Complaint, plaintiffs allege direct claims for breach of fiduciary duties and for aiding and abetting the breach of fiduciary duties. Defendants dispute plaintiffs' characterization of Counts III and IV as direct, rather than derivative in nature. They argue that the action must be brought by the corporation on behalf of shareholders because Counts III and IV fail under Maryland law since the alleged injuries are not personal to plaintiffs, but common to Inland REIT and all its shareholders. Plaintiffs counter that the Advisor, Property Managers, the Inland Group, the Sponsor, and defendants Goodwin, Parks, Baum, Cosenza, Gujral, and Grimes (the "Fiduciary Duty Defendants") breached their fiduciary duties of loyalty, care, and candor to Inland REIT as well as to the REIT's shareholders when they paid excessive fees to the Property Managers. Therefore, according to plaintiffs, the Shareholders have a distinct injury that can be remedied though a direct suit.

The general rule in Maryland is that "an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder, though the injury may incidentally result in diminishing or destroying the value of the stock." Waller v. Waller, 187 Md. 185, 189, 49 A.2d 449, 452 (Md. 1946). Only where shareholders suffer an injury that is distinct from that of the

corporation, do shareholders have standing to bring a direct suit for redress of that injury.

Strougo v. Bassini, 282 F.3d 162, 171 (2nd Cir. 2002) (relying on Waller). The threshold inquiry then is "whether the shareholders' injury is 'distinct' from that suffered by the corporation." Bassini, 282 F.3d at 170 (quoting Tafflin v. Levitt, 92 Md.App. 375, 381, 608 A.2d 817, 820 (1992)).

Officers and directors owe a fiduciary duty to the corporation and all shareholders. Waller, 187 Md. at 194. Here, the defendants' fiduciary duty to the corporation and shareholders are one and the same. Therefore, an injury to the shareholders caused by a breach in fiduciary duty flows from an injury to the corporation. Consequently, plaintiffs lack standing to bring a direct action for breach of fiduciary duty against the Fiduciary Duty Defendants.

## CONCLUSION

For the reasons explained above, defendants' motion to dismiss Count I is granted as to Issues 4 and 9 and denied as to issues 1,2, 3, 5, 6, 7, and 8. Defendants' motion to dismiss Count II is denied. Defendants' motion to dismiss Counts III through VII is granted. Plaintiffs are directed to file a Second Amended Complaint conforming to this opinion on or before May 1, 2009. Defendants are directed to answer the Second Amended Complaint by June 1, 2009. This case is set for a report on status on June 10, 2009.

**ENTER:**     **April 1, 2009**

_____
**Robert W. Gettleman**
**United States District Judge**